Marc J. Randazza, CA Bar No. 269535
Alex J. Shepard, CA Bar No. 295058
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, Nevada 89117
Telephone: 702-420-2001
ecf@randazza.com

*Attorneys for Defendants,*
*Infowars, LLC and Free Speech Systems, LLC*

**IN THE UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MATT FURIE, <br><br> Plaintiff, <br><br> vs. <br><br> INFOWARS, LLC; FREE SPEECH SYSTEMS, LLC, <br><br> Defendants. | Case No. 2:18-cv-01830-MWF-JPR <br><br> **DEFENDANT INFOWARS, LLC'S AMENDED ANSWER TO PLAINTIFF MATT FURIE'S SECOND AMENDED COMPLAINT FOR COPYRIGHT INFRINGEMENT** <br><br> DEMAND FOR JURY TRIAL <br><br> Case Filed: March 5, 2018 <br> Trial Date: July 16, 2019 |

Infowars, LLC ("Infowars") hereby files its Amended Answer to Plaintiff Matt Furie's ("Plaintiff") Second Amended Complaint ("SAC").

## ANSWER

Infowars answers and avers as follows, with numbered paragraphs corresponding to the like-numbered paragraphs of the SAC. Infowars denies each and every allegation of the SAC unless specifically admitted herein.

## NATURE OF ACTION

1. Admitted that the SAC purports to state a cause of action for copyright infringement. Otherwise denied.

2. Without knowledge, therefore denied.

3. Admitted that a character commonly referred to as "Pepe the Frog" featured prominently in Internet memes by 2014. Otherwise, without knowledge, therefore denied.

4. Without knowledge, therefore denied.

5. Denied as to Infowars. Otherwise without knowledge, therefore denied.

6. Admitted that the allegedly infringing poster (the "Poster") features images of U.S. President Donald Trump. Social and political commentator Ann Coulter, political commentator and public speaker Milo Yiannopoulos, political commentator and radio show host Alex Jones, political commentators and social media personalities Lynette Hardaway and Rochelle Richardson (popularly known as "Diamond and Silk"), political commentator and Youtube personality Paul Joseph Watson, Counselor to the President, President Trump's campaign manager, and

political consultant and commentator Kellyanne Conway, campaign advisor, political consultant, lobbyist, and strategist Roger Stone, political commentator and creator of the Drudge Report Matt Drudge, a likeness of Pepe the Frog, and patriotic imagery including the flag of the United States and the United States Capitol. Admitted that the poster includes the text MAGA. Admitted that "MAGA" is short for the Trump campaign slogan, "Make America Great Again." Denied that Infowars sold the poster. Otherwise denied.

7. Denied.

8. Admitted that the SAC purports to state a cause of action for copyright infringement. Otherwise denied.

## JURISDICTION AND VENUE

9. Admitted that this case purports to be an action under the Copyright Action of 1976, Title 17 U.S.C. § 101 *et seq*. Otherwise denied.

10. Admitted that this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

11. Denied.

12. Admitted that Infowars is a Texas limited-liability company managed by Alex Jones. Denied that Infowars operates an organization that includes nationwide radio programming and the web site infowars.com. Otherwise without knowledge, therefore denied.

13. Denied that Infowars regularly conducts and solicits business in California and this District. Denied that Infowars sells products online, by mail, and by telephone

1 to residents of California and this District and ships those products to buyers in the 2 state. Otherwise without knowledge, therefore denied.

3     14.    Admitted that the SAC purports to attach a list of radio stations that run 4 *The Alex Jones Show* as an exhibit. Otherwise denied.

5     15.    Denied that Infowars has an online store. Denied that Infowars has 6 committed acts of direct infringement in California and this District in violation of 7 Plaintiff's intellectual property rights. Otherwise without knowledge, therefore denied.

8     16.    Denied.

9     17.    Denied.

10     18.    Denied.

11     19.    Denied.

12     20.    Denied.

## **THE PARTIES**

14     21.    Without knowledge, therefore denied.

15     22.    Admitted that Infowars is a Texas limited-liability company organized and 16 existing under the laws of Texas, with a registered address at 100 Congress Avenue, 17 Austin, Texas. Otherwise denied.

18     23.    Without knowledge, therefore denied.

19     24.    Denied.

## **FACTUAL ALLEGATIONS**

21     25.    Without knowledge, therefore denied.

22     26.    Without knowledge, therefore denied.

1     27.     Without knowledge, therefore denied.

2     28.     Without knowledge, therefore denied.

3     29.     Without knowledge, therefore denied.

4     30.     Without knowledge, therefore denied.

5     31.     Without knowledge, therefore denied.

6     32.     Without knowledge, therefore denied.

7     33.     Without knowledge, therefore denied.

8     34.     Without knowledge, therefore denied.

9     35.     Without knowledge, therefore denied.

10     36.     Admitted that the SAC purports to attach copies of copyright registrations and applications as exhibits.  Otherwise denied.

12     37.     Without knowledge, therefore denied.

13     38.     Without knowledge, therefore denied.

14     39.     Without knowledge, therefore denied.

15     40.     Without knowledge, therefore denied.

16     41.     Without knowledge, therefore denied.

17     42.     Without knowledge, therefore denied.

18     43.     Without knowledge, therefore denied.

19     44.     Without knowledge, therefore denied.

20     45.     Without knowledge, therefore denied.

21     46.     Without knowledge, therefore denied.

22     47.     Without knowledge, therefore denied.

48.     Without knowledge, therefore denied.

49.     Admitted that Infowars was founded in 2007 and is managed by Alex Jones.  Otherwise without knowledge, therefore denied.

50.     Without knowledge, therefore denied.

51.     Denied that Infowars owns the infowars.com web site or an online store. Otherwise without knowledge, therefore denied.

52.     Denied that Infowars owns the infowarsstore.com web site or an online store.  Otherwise without knowledge, therefore denied.

53.     Denied that Infowars owns the infowarsstore.com web site or an online store.  Otherwise without knowledge, therefore denied.

54.     Denied that Infowars has radio programming, or products that are heavily advertised on its alleged radio programming.  Otherwise without knowledge, therefore denied.

55.     Admitted that the Poster features images of U.S. President Donald Trump. Social and political commentator Ann Coulter, political commentator and public speaker Milo Yiannopoulos, political commentator and radio show host Alex Jones, political commentators and social media personalities Lynette Hardaway and Rochelle Richardson (popularly known as "Diamond and Silk"), political commentator and Youtube personality Paul Joseph Watson, Counselor to the President, President Trump's campaign manager, and political consultant and commentator Kellyanne Conway, campaign advisor, political consultant, lobbyist, and strategist Roger Stone, political commentator and creator of the Drudge Report Matt Drudge, a likeness of

Pepe the Frog, and patriotic imagery including the flag of the United States and the United States Capitol. Admitted that the poster includes the text MAGA. Admitted that "MAGA" is short for the Trump campaign slogan, "Make America Great Again." Denied that Infowars sold the poster. Otherwise denied.

56. Admitted that Plaintiff filed his original complaint on March 5, 2018. Otherwise without knowledge, therefore denied.

57. Admitted that the SAC purports to show that more than one reviewer noted Pepe's presence in the poster. Otherwise without knowledge, therefore denied.

58. Without knowledge, therefore denied.

59. Without knowledge, therefore denied.

60. Without knowledge, therefore denied.

## COUNT ONE

### Copyright Infringement

61. Does not call for a response.

62. Admitted that the SAC purports to attach copies of copyright registrations and applications as exhibits. Otherwise denied.

63. Denied.

64. Denied.

65. Denied.

66. Denied.

## DAMAGES

67. Denied.

## INJUNCTION

68. Denied.

69. Denied.

## PRAYER FOR RELIEF

a. Denied that Plaintiff is entitled to any relief, including monetary damages claimed in section 'a' of his prayer for relief.

b. Denied that Plaintiff is entitled to the injunctive relief claimed in section 'b' of his prayer for relief.

c. Denied that Plaintiff is entitled to any other relief, including costs claimed in section 'c' of his prayer for relief.

## DEMAND FOR JURY TRIAL

Does not call for a response. To the extent a response is required, denied.

## AFFIRMATIVE DEFENSES

Without admitting or acknowledging that it bears the burden of proof as to any of the following affirmative defenses and based upon information and belief to date, Infowars asserts the following affirmative defenses and reserves the right to amend its answer as additional information becomes available.

## FIRST AFFIRMATIVE DEFENSE

### (Lack of Copyright)

1. The character of "Pepe the Frog" existed prior to Plaintiff's allegedly copyrighted works, including but not limited to, in an Argentine television program starting in 1988 that featured a song referring to "El Sapo Pepe" ("Pepe the Toad"). In

the following decades, third parties created numerous adaptations of that song, as well as visual representations of the show's Pepe the Frog character.

2. The "El Sapo Pepe" character looks identical to "Pepe the Frog."

3. On information and belief, Plaintiff was aware of this pre-existing character and its visual representations when he created his alleged works that were allegedly infringed by Infowars.

4. Because Plaintiff's "Pepe the Frog" character itself either infringes on the copyright of the pre-existing Pepe character, or at least is an unauthorized derivative work of the pre-existing Pepe character, Plaintiff does not have any valid copyright interest in his expression of Pepe the Frog.

## **SECOND AFFIRMATIVE DEFENSE**

### **(Fair Use)**

5. Plaintiff's claims are barred by the doctrine of fair use pursuant to 17 U.S.C. § 107.

6. The purpose and character of Pepe's use in the poster is highly "transformative," more than satisfying the first non-exclusive "fair use" factor.

7. The poster's use transforms Plaintiff's expression of the Pepe character into one with new expression, aesthetic, or meaning.

8. The commentary is upon the history of the United States, and its cultural tradition of choosing leaders through elections.

9. This tradition is represented by the United States flag and U.S. Capitol Building.

10. The use of Pepe's head is a commentary upon the significant impact of a meme that contributed to the highly improbable election of Donald Trump.

11. Graphical historical commentary has a longstanding Western tradition, ranging from the Bayeux Tapestry, to using thumbnails of Grateful Dead posters to chart the band's cultural history.

12. "Meming" is transformative, as it comments upon key insights using graphics, an increasingly preferred means of communication, as readers move away from text.

13. Love him or hate him, the transformed Pepe was a historical factor in the election.

14. The poster graphically answers the question, "who caused the election of a TV-personality with a 12% chance of winning?"

15. Given that Pepe the Frog was a key figure in the 2016 election, it was proper and necessary to include Pepe as a figure when illustrating the key figures in the election.

16. The transformative commentary also conjures up at least in part parodic elements of Plaintiff's expression of Pepe.

17. Plaintiff's expression of Pepe is innocent, carefree, and does whatever "feels good, man," irrespective of its effect upon others.

18. Using these characteristics as raw materials, the transformed Pepe becomes knowing, cares that the status quo was not good, still supports Trump because it "feels good, man," and does not care what others think.

19. The right-of-center commentators shown are also unapologetic for their views and advocacy, as was the candidate himself. By including Pepe, the poster comments on the nature of the character, and how it compares with the attributes of the individuals on the poster, including Donald Trump. All characters are depicted as they are, not celebratory or smug.

20. This transformative commentary is striking by the subtle and incongruous background placement of Pepe's anthropomorphic frog image juxtaposed with humans and American iconography.

21. While some may find the posing of a frog alongside humans, and retention of a key attribute of Plaintiff's version of Pepe, "[my support of Trump] feels good, man," to be amusing, a commentary need not be amusing to qualify as a parody. Pepe's transformed use is an implicit rebuke to post-moderns placing subjective feelings as the highest value in selecting a candidate.

22. Plaintiff pleads that Pepe was used in the election by the candidate's family itself. The poster was created after the election and, rather than exploiting Pepe, it included just enough of the character to enable commentary on it.

23. The poster uses only an altered version of Pepe's face, because the character's face most readily conjures up Plaintiff's expression of the character. Furthermore, Pepe's face is given a new coloring and shading to add to the new aesthetic, meaning, and message the character is being infused with in the poster. The new coloring and shading is shared with the individuals on the poster, as part of an overall theme tying them together.

24. By unifying the individuals through common coloring and shading, the poster furthers the message of commonality between Pepe and the others. Additionally, the materiality of the use to the overall poster is limited, as Pepe is not the primary focus of the poster—Donald Trump is.

25. Pepe does not dominate the poster, is not in the center, and is a small overall portion.

26. Finally, the amount and substantiality used of Plaintiff's expression of Pepe is less important owing to the widespread use of Pepe elsewhere, as Plaintiff repeatedly pleads.

27. The poster does not substitute for Plaintiff's alleged works, such as *Boys Club* comics. The purpose of the character's use is distinct from any of the alleged works put forth by Plaintiff, and Plaintiff's pleading strongly implies that he would not have licensed Pepe's use to the poster's creator.

28. As "moral rights" in the United States do not extend to graphic images, Plaintiff has not suffered a cognizable harm under copyright law simply because he does not like certain individuals included on the poster or disagrees with the poster's message.

29. As transformative commentary providing new information, new aesthetics, new insights and understandings, with some parodic elements borrowed from Plaintiff's expression of the Pepe character, the poster is the very type of use that the "fair use" doctrine intends to protect for the enrichment of society.

30. Given the fact that "fair use" is the bargain that we make with Copyright law in order to give breathing room to free expression, attempts to suppress free expression by mis-using copyright law should not only be rejected, but should result in an award of attorneys' fees against a plaintiff. This is such a case, and not only should the cliam be dismissed, but fees should be awarded, in their entirety, against Plaintiff and in favor of Defendants.

### THIRD AFFIRMATIVE DEFENSE

### (Abandonment or Forfeiture)

31. Before the alleged infringement commenced, Plaintiff abandoned or forfeited at least some, if not all, copyrights he may have had in and to Pepe the Frog through one or more overt acts, including, without limitation, making public statements in interviews with one or more publications, which independently or collectively constitute one or more overt acts indicative of a purpose to surrender his rights in and to Pepe the Frog and to allow the public to copy Pepe the Frog.

32. For example, in an August 2010 interview with the online publication KnowYourMeme.com, Plaintiff was asked: "How about the people that actually crop out Pepe's face and use it, how do you feel about people remixing your work?"[1] Plaintiff responded: "I don't really mind. . . . I was like it doesn't look the greatest but I don't care."

33. Further, in a July 2015 interview with the online publication Vice.com, Plaintiff was asked: "You don't feel weird about [Pepe the Frog] being

---

[1] *See* "Q&A with Matt Furie," http://knowyourmeme.com/blog/interviews/qa-with-matt-furie.

completely removed from its original context in your comics?"[2] Plaintiff responded: "I don't really see it as being something that's negative. . . . I don't really care."

34.  In yet another published interview, this time with New York Magazine's online publication *Select/All*, Plaintiff stated: "I've realized that Pepe is beyond my control . . . . He's like a kid, he grew up and now I have to set him free to live his life. It's all good."[3] Plaintiff went on to state: "I just sit back, relax and let the Pepes fall where they land[.]"[4]

35.  Further, Plaintiff acquiesced with full knowledge to the publication of a vast number of copies of the allegedly infringed work without copyright notice.

36.  Accordingly, Plaintiff's claims are barred or unenforceable based on the doctrine of copyright abandonment or forfeiture.

## FOURTH AFFIRMATIVE DEFENSE

### (Implied or Explicit License)

37.  As explained in the Second Affirmative Defense, Plaintiff on multiple occasions prior to the creation of the Poster stated publicly that he was aware of numerous unauthorized derivative works based on his expression of the Pepe the Frog character.  Plaintiff stated that he did not care about these derivative works, and would not attempt to enforce any copyright interests he had against the creators of these

---

[2] *See* "The Creator of Pepe the Frog Talks About Making Comics in the Post-Meme World," available at: https://www.vice.com/en_us/article/avy3aj/feels-good-man-728.
[3] *See* "What Happens When Hillary Clinton Calls Your Cartoon Frog Racist," available at: http://nymag.com/intelligencer/2016/09/pepe-the-frogs-creator-matt-furie-discusses-trump-memes.html?mid=twitter_nymag.
[4] *Id.*

derivative works.  He additionally stated that he was aware of these creators making a profit off their derivative works, and that he was fine with this practice.

38.  In an interview with The Daily Dot, Plaintiff said, in response to a question about third parties profiting from Pepe, "I believe in supporting people's decisions to profit off of Pepe in order to provide them with the most positive business experience possible.  I strive to be an advocate for Pepe in both love and enterprise and hope to help business people to have an empowering and joyful experience while making an ocean of profits as limitless as the universe."[5]  In a subsequent interview, Plaintiff stated, in response to the question "How do you feel about Pepe's use in so many pro-Trump memes, especially the more racist-xenophobic variations we've seen," that "It's just a phase, it's not the first time Pepe has been reclaimed for evil, and no one will care about it come November.  I predict that his sly, lovable, and charming status will be intact as early as next week."[6]

39.  Plaintiff made various public statements over multiple years approving of and even encouraging third parties to make derivative works based on his expression of Pepe the Frog.  Through these statements, Plaintiff provided a non-exclusive license to the general public to use his expression of the Pepe the Frog character for profit. The sale and distribution of the Poster falls within conduct permitted by this license.

## FIFTH AFFIRMATIVE DEFENSE

**(Innocent Infringement)**

---

[5] "4chan's Pepe the Forg is bigger than ever – and his creator feels good, man," available at: https://www.dailydot.com/unclick/4chan-pepe-the-frog-renaissance/.

[6] "Pepe the Frog creator says pro-Trump memes 'just a phase,'" available at: https://www.dailydot.com/unclick/matt-furie-pepe-the-frog-alt-right/.

40. Prior to the filing of the Original Complaint on March 5, 2018, Infowars was not aware that its acts constituted alleged infringement of Plaintiff's alleged copyright and Infowars had no reason to believe that its acts constituted alleged infringement of Plaintiff's alleged copyright.

## SIXTH AFFIRMATIVE DEFENSE

**(Unavailability of Statutory Damages and Attorney's Fees)**

41. Plaintiff is barred by 17 U.S.C. § 412 from claiming statutory damages or attorney's fees under the Copyright Act in that any alleged acts of infringement occurred before first registration of Plaintiff's alleged work.

## SEVENTH AFFIRMATIVE DEFENSE

**(Invalid Certificate of Registration)**

42. Plaintiff's claims are barred to the extent they rely on U.S. Copyright Registration No. VA0002074461, purportedly covering the work entitled "Pepe in the Blue Shirt," because it does not satisfy the requirements of 17 U.S.C. § 411. The certificate of registration contains inaccurate information that was included on the application for copyright registration with the knowledge that it was inaccurate. This inaccuracy, if known, would have caused the Register of Copyrights to refuse registration.

43. Plaintiff's application for copyright registration, submitted on or about September 1, 2017, stated that Plaintiff is the author of the work. However, Plaintiff admitted during an interview with Vice.com in 2015 that he was not the author of "Pepe

in Blue Shirt."[7]  Plaintiff's admission demonstrates that the application for copyright registration was made with Plaintiff's knowledge of the inaccuracy in authorship.  The Register of Copyrights would have refused registration if it had known of the inaccuracy in the authorship.

## EIGHTH AFFIRMATIVE DEFENSE

### (*De Minimis* Use)

44.  Plaintiff alleges infringement of "Plaintiff's copyright interests" without qualification in paragraph 65, after pleading in paragraph 62 that the underlying basis of the claim is allegedly copyrighted books, rather than copyright interests exclusively in the characer and image of Pepe the Frog, and Infowars' alleged use in comparison to entire books was *de minimis*.

## DEFENSES

45.  Without admitting or acknowledging that it bears the burden of proof as to any of the following defenses and based upon information and belief to date, Infowars asserts the following defenses and reserves the right to amend its answer as additional information becomes available:

## FIRST DEFENSE

### (Lack of Personal Jurisdiction)

46.  This Court does not have personal jurisdiction over Infowars to enter a judgment against Infowars.

---

[7] *See* "The creator of Pepe the Frog Talks About Making Comics in the Post-Meme World," available at: https://www.vice.com/en_us/article/avy3aj/feels-good-man-728 (Plaintiff stating "But there are two things I don't like about [Pepe being removed from its original context in the comics] . . . Two, he's got, randomly, a blue shirt and brown lips, and that's his accepted outfit now.  Those are the two things that kind of pisse me off about it.  Other than that, I don't really care").

## SECOND DEFENSE

### (Improper Venue)

47. Venue is improper in this Court.

## JURY DEMAND

In accordance with Rule 38 of the Federal Rules of Civil Procedure and this Court's Local Rules, Infowars respectfully demands a jury trial of all issues triable to a jury in this action.

## PRAYER FOR RELIEF

WHEREFORE, Defendant Infowars, LLC respectfully requests that this Court enter an order:

a. Dismissing Plaintiff's SAC with prejudice;

b. Finding that Plaintiff shall take no relief from his complaint herein;

c. Awarding Infowars its costs and attorneys' fees incurred herein; and

d. Granting Infowars such further and other relief the Court deems fair and just.

Dated: November 2, 2018           Respectfully submitted,

RANDAZZA LEGAL GROUP, PLLC

/s/ Marc J. Randazza
Marc J. Randazza
Alex J. Shepard
2764 Lake Sahara Drive, Suite 109
Las Vegas, NV 89117

*Attorneys for Defendants,*
*Infowars, LLC and*
*Free Speech Systems, LLC*

Case No. 2:18-cv-01830-MWF-JPR

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November 2, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I further certify that a true and correct copy of the foregoing document is being served via transmission of Notice of Electronic Filing generated by CM/ECF.

Respectfully submitted,

s/ *[signature]*
Employee,
Randazza Legal Group, PLLC