NANCY SCHROEDER (SBN 280207)
(nancy.schroeder@wilmerhale.com)
WILMER CUTLER PICKERING
    HALE AND DORR LLP
350 S. Grand Ave., Suite 2100
Los Angeles, CA 90071
Telephone: +213 443 5300
Facsimile: +213 443 5400

LOUIS W. TOMPROS (*pro hac vice*)        WILLIAM C. KINDER (*pro hac vice*)
(louis.tompros@wilmerhale.com)           (will.kinder@wilmerhale.com)
STEPHANIE LIN (*pro hac vice*)           WILMER CUTLER PICKERING
(stephanie.lin@wilmerhale.com)               HALE AND DORR LLP
WILMER CUTLER PICKERING                  7 World Trade Center
    HALE AND DORR LLP                    New York, NY 10007
60 State Street                          Telephone: +1 212 230 8800
Boston, MA 02109                         Facsimile: +1 212 230 8888
Telephone: +1 617 526 6000
Facsimile: +1 617 526 5000

*Attorneys for Plaintiff Matt Furie*

## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATT FURIE,<br><br>    Plaintiff,<br><br> vs.<br><br>INFOWARS, LLC; FREE SPEECH SYSTEMS, LLC,<br><br>    Defendants. | 2:18-cv-01830-MWF-JPR<br><br>**PLAINTIFF MATT FURIE'S MEMORANDUM IN SUPPORT OF HIS MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date: May 6, 2019<br>Time: 10:00 a.m.<br>Hon. Michael W. Fitzgerald<br>Case Filed: March 5, 2018<br>Trial Date: July 16, 2019 |

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................1

II.   FACTUAL SUMMARY ...............................................................3

    A.   Furie Creates Pepe the Frog as a "Peaceful Frog Dude"....................3

    B.   The Alt-Right Misappropriates Pepe the Frog...................................4

    C.   Furie Registers and Actively Maintains His Copyrights....................5

    D.   Infowars Sells MAGA Posters Containing an Unauthorized Image of Pepe the Frog ............................................................6

    E.   Pepe the Frog is Not Copied from "El Sapo Pepe"............................8

III.  ARGUMENT.................................................................................8

    A.   Infowars's "Implied or Explicit License" Defense Fails....................8

    B.   Infowars's "Abandonment or Forfeiture" Defense Fails ..................15

    C.   Infowars's "Lack of Copyright" Defense Fails................................17

    D.   Infowars's "Invalid Certificate of Registration" Defense Fails..........19

    E.   Infowars's "*De Minimis* Use" Defense Fails ...................................20

IV.   CONCLUSION ..........................................................................23

# TABLE OF AUTHORITIES

Page(s)

## FEDERAL CASES

*A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001) ............... 10, 15

*Bell v. Moawad Group, LLC*, 326 F.Supp.3d 918 (D. Ariz. 2018) ........................ 15

*DC Comics v. Towle*, 802 F.3d 1012 (9th Cir. 2015) ............................................ 21

*Dolores Press, Inc. v. Robinson*, 2019 WL 1223320 (9th Cir. Mar. 15, 2019) .................................................................................................................. 16

*Done! Ventures, LLC v. Gen. Elec. Co.*, 2011 WL 13217220 (C.D. Cal. Jan. 21, 2011) .................................................................................. 10

*Erickson v. Freddie Mac*, 2011 WL 13225034 (C.D. Cal. Dec. 19, 2011) ........................................................................................................... 12

*Fisher v. Dees*, 794 F.2d 432 (9th Cir. 1986) ................................................ 20, 23

*Florentine Art Studio, Inc. v. Vedet K. Corp.*, 891 F. Supp. 532 (C.D. Cal. 1995) ............................................................................................... 19

*Foad Consulting Grp., Inc. v. Azzalino*, 270 F.3d 821 (9th Cir. 2001) ................... 9

*Funky Films, Inc. v. Time Warner Entm't Co.*, 462 F.3d 1072 (9th Cir. 2006) ........................................................................................................... 18

*Gemcap Lending I, LLC v. Crop USA Ins. Agency, Inc.*, 2014 WL 12589335 (C.D. Cal. Jan. 14, 2014) .......................................................... 13

*Hadady Corp. v. Dean Witter Reynolds, Inc.*, 739 F. Supp. 1392 (C.D. Cal. 1990) .......................................................................................... 16

*Halicki Films, LLC v. Sanderson Sales & Mktg.*, 547 F.3d 1213 (9th Cir. 2008) ......................................................................................................... 21

*Hampton v. Paramount Pictures Corp.*, 279 F.2d 100 (9th Cir. 1960) ................. 15

*Hetland v. Beauchesne*, 2015 WL 13359782 (C.D. Cal. Apr. 7, 2015), *aff'd*, 677 F. App'x 382 (9th Cir. 2017) ...................................................... 12

*Interscope Records v. Time Warner, Inc.*, 2010 WL 11505708 (C.D. Cal. June 28, 2010) .........................................................................9

*Kinney v. Oppenheim*, 2011 WL 13217573 (C.D. Cal. Mar. 3, 2011) ...................13

*Kolodziej v. Mason*, 774 F.3d 736 (11th Cir. 2014)........................................11, 12

*Konik v. Cable*, 2009 WL 10681970 (C.D. Cal. Dec. 2, 2009)...........................12

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197 (C.D. Cal. 2007)...................................................................9, 10, 11

*Morris v. Young*, 925 F. Supp. 2d 1078 (C.D. Cal. 2013)........................................8

*N. Coast Indus. v. Jason Maxwell, Inc.*, 972 F.2d 1031 (9th Cir. 1992)...........17, 18

*Northstar Financial Advisors Inc. v. Schwab Investments*, 779 F.3d 1036 (9th Cir. 2015)....................................................................10

*Ormesher v. Raskin*, 2010 WL 11549656 (C.D. Cal. May 6, 2010) .....................10

*Peer Int'l Corp. v. Luna Records, Inc.*, 887 F. Supp. 560 (S.D.N.Y. 1995) ........................................................................................14

*Rosen v. R & R Auction Co., LLC*, 2016 WL 7626443 (C.D. Cal. Aug. 31, 2016)........................................................................................23

*Schultz v. United Airlines, Inc.*, 797 F. Supp. 2d 1103 (W.D. Wash. 2011) ........................................................................................12

*Sprengel v. Mohr*, 2012 WL 12893748 (C.D. Cal. Sept. 24, 2012) ........................9

*Swift Harvest USA, LLC v. Dollar Gen. Corp.*, 2018 WL 7348845 (C.D. Cal. Dec. 28, 2018) ........................................................................13

*UMG Recordings, Inc. v. MP3.Com, Inc.*, 92 F. Supp. 2d 349 (S.D.N.Y. 2000)........................................................................................16

## STATE CASES

*Donovan v. RRL Corp.*, 26 Cal. 4th 261 (Cal. 2001) ....................................10, 11

## STATUTES, RULES, AND REGULATIONS

17 U.S.C. § 411(b)(1) ............................................................................20

17 U.S.C. § 405 ....................................................................................15

Fed. R. Civ. P. 56(a) ..............................................................................8

PLAINTIFF'S MEM. IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
Case No. 2:18-cv-01830-MWF-JPR

## I.    INTRODUCTION

Defendants Infowars, LLC, and Free Speech Systems, LLC (collectively, "Infowars") have repeatedly, willfully, and intentionally infringed Plaintiff Matt Furie's copyrights in the image and character of Pepe the Frog, specifically by selling various versions of what the parties refer to as "the MAGA Poster."  Mr. Furie seeks summary judgment on several of Infowars's baseless defenses to his infringement claim.

Mr. Furie, an artist, created Pepe the Frog in the early 2000s.  Pepe was a "peaceful frog dude" that lived with animal roommates and appeared in the comic book series *Play Time* and *Boy's Club*.  As early as 2008, Pepe began appearing on the internet as a popular meme.  But in late 2015, to Mr. Furie's dismay, white nationalists and members of the alt-right began coopting Pepe by mixing images of Pepe with images of hate, including white supremacist language and symbols, and Nazi insignia.

Following the 2016 election, Infowars—which operates both a store and a far-right conspiracy theory and fake news website—sought to capitalize on Pepe's popularity with its audience.  Infowars began selling the MAGA Posters on its website in April 2017, and its owner Alex Jones promoted MAGA Posters on *The Alex Jones Show*.  To date, Infowars has generated more than $30,000 in revenue from sales of versions of MAGA Posters.  All MAGA Posters feature a prominent—but unauthorized—image of Pepe the Frog.  The artist who created the original poster admitted that he copied Mr. Furie's work, and there is no doubt that the image in the MAGA Posters is a copy of Pepe:

PLAINTIFF'S MEM. IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
Case No. 2:18-cv-01830-MWF-JPR

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**Mr. Furie's Pepe the Frog**



**Pepe the Frog in the MAGA poster**

In the face of this clear evidence of infringement, Infowars has asserted a myriad of baseless affirmative defenses. But after seven months of fact discovery, there is no evidence to support Infowars's first, third, fourth, seventh, and eighth affirmative defenses:

- <u>Implied License</u>:  Infowars baselessly asserts that Mr. Furie and Infowars entered into an implied license agreement. But neither party assented to such a license; in fact, Mr. Furie and Infowars never even communicated with each other prior to this lawsuit.

- <u>Abandonment</u>: Infowars baselessly asserts that Mr. Furie intentionally surrendered his copyrights. But Mr. Furie has never abandoned his rights in Pepe; rather, he has expressly and repeatedly asserted his rights through public statements, licensing, and enforcement activity.

- <u>Lack of Copyright</u>: Infowars baselessly asserts that Mr. Furie copied Pepe the Frog from an Argentine children's cartoon character purportedly known as "El Sapo Pepe" ("El Sapo"). But the uncontradicted evidence is that Mr. Furie had never even heard of (much less saw or copied) El Sapo when he created Pepe the Frog.

- <u>Invalid Certificate of Registration</u>: Infowars baselessly asserts that Mr. Furie's copyright is invalid because he did not create "Pepe in the Blue

2

Shirt."  This is false.  The uncontradicted evidence is that Mr. Furie did, in fact, create "Pepe in the Blue Shirt."

- <u>De Minimis Use</u>:  Infowars baselessly argues that its use of Pepe in the MAGA Posters was *de minimis*.  But the MAGA Posters intentionally include a copy of Pepe that is recognizable as Pepe, that Mr. Jones recognized as Pepe, and that poster purchasers recognized as Pepe.

Mr. Furie is therefore entitled to partial summary judgment resolving each of these affirmative defenses in his favor.

## II.    FACTUAL SUMMARY

### A.    Furie Creates Pepe the Frog as a "Peaceful Frog Dude"

Artist Matt Furie created the Pepe the Frog character in the early 2000s.  SUF ¶ 1.  Pepe is an anthropomorphic frog often depicted with large, rounded red/brown lips, bulging eyes (typically with multiple white dots in the pupils), puffy eyelids, and a human-shaped body.  SUF ¶¶ 2–3.  Mr. Furie first included Pepe in an online publication called *Play Time* in 2003.  SUF ¶ 1.  Then, beginning in 2005, Pepe appeared in Mr. Furie's comic series *Boy's Club*, released both online and in print. *Boy's Club* first appeared online in 2005, and *Boy's Club 1* was produced in print in 2006.  SUF ¶¶ 4–5.  *Boy's Club 1* introduces Pepe as "a cool, chill frog dude that likes to hang with his friends and drink pop and watch TV."  Ex. 15 at FSS00255.

Pepe also first used his famous catch phrase, "feels good, man" in *Boy's Club 1*. SUF ¶ 13.

 

Ex. 10 at FURIE_INFO_00000121; Ex. 14 at FURIE_INFO_00000193.

Buena Ventura Press published *Boy's Club* 2 in 2008, and *Boy's Club 3* in 2009. SUF ¶¶ 6–7. Pigeon Press published *Boy's Club 4* in 2010. SUF ¶ 8. And in 2016, Fantagraphics Books released a compilation of all of the *Boy's Club* comics. SUF ¶ 9. Pepe featured prominently in all of the *Boy's Club* editions. SUF ¶¶ 4, 11.

As early as 2008, Mr. Furie's Pepe character began being widely shared as an internet meme. SUF ¶ 14. Users began by posting Pepe's face with his catch phrase, "feels good, man." SUF ¶ 15. By 2015, Pepe was the most reblogged meme on Tumblr. SUF ¶ 16. As a NY Magazine article put it in 2016, "His name is Pepe. You know Pepe. He's that forest green, anthropomorphic frog with the maroon lips; the one from all the memes." SUF ¶ 17. Furie took advantage of Pepe's popularity by licensing his copyrights in the character to several companies, which produced— among other things—Pepe plush dolls and mobile applications ("apps") featuring Pepe. SUF ¶¶ 19–20.

## B.    The Alt-Right Misappropriates Pepe the Frog

But in late 2015, white nationalists and members of the alt-right began coopting Pepe by mixing images of Pepe with images of hate—including white supremacist language and symbols, Nazi symbols, and other offensive imagery.

SUF ¶ 21.  On October 13, 2015, an unauthorized image of Pepe dressed as then candidate Donald Trump and standing behind the Presidential seal appeared on Twitter.  And on September 16, 2016, Donald Trump Jr. posted to Instagram an image that featured Pepe standing behind Donald Trump, alongside other supporters of Trump's presidential campaign.  SUF ¶ 22.

On September 27, 2016, the Anti-Defamation League identified Pepe the Frog as a hate symbol, noting that the "cartoon character [was] used by haters on social media to suggest racist, anti-Semitic or other bigoted notions."  SUF ¶ 23.  The misappropriation of Pepe by far-right entities harmed Furie's ability to license Pepe. SUF ¶ 24.

### C.    Furie Registers and Actively Maintains His Copyrights

Mr. Furie registered copyrights for *Play Time* and the *Boy's Club* comics in September 2017.[1]  SUF ¶¶ 25–31.  Also in September 2017, Furie registered a copyright for "Pepe in the Blue Shirt."  SUF ¶ 32.  Mr. Furie created a digital version of "Pepe in the Blue Shirt" on April 12, 2016.  SUF ¶ 33.  Mr. Furie submitted this 2016 version with his copyright application.  SUF ¶ 34.

Even before registering his copyrights, Mr. Furie actively maintained his copyrights in Pepe the Frog.  Furie prominently displayed copyright notices in *Boy's Club 2* (2008), *Boy's Club 3* (2009), *Boy's Club 4* (2010), and in the 2016 compilation of all four *Boy's Club* comics.  SUF ¶ 35.  And in a September 2016 article—during the period in which the alt-right began misappropriating his work— Mr. Furie stated unambiguously that "Pepe the Frog is copyrighted by me."  SUF ¶ 72.  Mr. Furie also actively licensed Pepe the Frog for use in games, phone chargers,

---

[1] The effective date of Mr. Furie's registrations in "Boy's Club 1 zine," "Boy's Club 1," "Boy's Club 2," "Boy's Club 3," and "Boy's Club Collective Edition" is September 1, 2017.  The effective registration date for "Boy's Club 4" is January 17, 2018.  SUF ¶¶ 25–31.

and other items.  SUF ¶¶ 19–20.  Then, beginning in Fall 2017, Furie began taking legal action to enforce his copyrights in Pepe the Frog, including through cease-and-desist letters, Digital Millennium Copyright Act ("DMCA") notices, and infringement litigation.  SUF ¶ 36.

### D.   Infowars Sells MAGA Posters Containing an Unauthorized Image of Pepe the Frog

In January 2017, artist Jon Allen created the first MAGA Poster.  SUF ¶ 43. The poster included a prominent but unauthorized depiction of Pepe the Frog in the upper left section of the poster:



**MAGA Poster**

SUF ¶ 44; Ex. 2 [Allen_Furie_0000033].

To create the image of Pepe the Frog, Mr. Allen traced a photo of Pepe he found on the internet using Adobe Illustrator.  SUF ¶ 45; Ex. Ex. 5 [Allen Dep. Tr.

at 25:19–26:3, 31:5–32:6] ("[T]he photo serves as reference, and then everything is drawn on top."). He intentionally made the image recognizable as Pepe the Frog. SUF ¶ 46. He was successful: multiple Infowars customers recognized and commented on Pepe's inclusion in MAGA Posters. SUF ¶ 53; Ex. 53 [Complaint, Dkt. 1, Ex. B1] at 25 ("Beautifully colored poster! Love Pepe the frog in it!"). Even Alex Jones himself admitted that he recognized Pepe the Frog the very first time he saw a MAGA Poster. SUF ¶ 54; Ex. 57 [Alex Jones Dep. Tr. at 30:19–21] ("Q. Did you notice Pepe the Frog on it when you first reviewed the poster? A. I did.").

Mr. Allen offered MAGA Poster to Infowars to sell on the Infowars online store. SUF ¶ 47. Infowars thought that MAGA Posters would be a hit with its audience. SUF ¶ 50; Ex. 57 [Alex Jones Dep. Tr. at 30:19–24] ("Q. Did you notice Pepe the Frog on it when you first reviewed the poster? A. I did. I mean, I had just a flash . . . in my head about, oh, that's that stupid frog, but I guess people like it, so whatever."). Seeking to capitalize on the popularity of Pepe, Infowars offered MAGA Posters for sale on the Infowars online store. SUF ¶ 51. Infowars promoted the posters on *The Alex Jones Show* and on its various websites. SUF ¶ 52. Infowars ultimately made $31,407.44 in revenue from sales of various iterations of MAGA Posters. SUF ¶ 55.

Infowars did not have a license to use Pepe the Frog. SUF ¶ 56. Mr. Furie never offered a license to Infowars, nor did Infowars ever accept any offer from Mr. Furie for a license. SUF ¶ 57; Ex. 6 [David Jones Dep. Tr. at 136:9–11] ("Q. Did Mr. Furie ever communicate [a verbal offer] directly to Free Speech Systems? A. Not to my knowledge."). Infowars never even attempted to contact Mr. Furie to obtain a license. SUF ¶ 60. In fact, Infowars has never communicated with Mr. Furie in any way. SUF ¶ 59; Ex. 57 [Alex Jones Dep. Tr. at 81:2–81:4] ("Q. . . . . [Y]ou've never communicated in any way with Matt Furie; right? A. No."); Ex. 6 [David Jones Dep. Tr. at 135:8–21] (same); Ex. 3 [Furie Dep. Tr. at 192:19–20] ("Q.

You never spoke with Mr. Jones?  A. No.").  And Mr. Furie has not received any benefit from Infowars in exchange for a license to Pepe the Frog.  SUF ¶ 63.

### E.   Pepe the Frog is Not Copied from "El Sapo Pepe"

Infowars baselessly alleges (among other things) that Mr. Furie copied Pepe the Frog from a character in an Argentine children's television program, El Sapo. But Pepe and the other characters in the *Boy's Club* series were inspired by people in Mr. Furie's life, not by any literary or other characters.  SUF ¶ 77.  El Sapo was not an inspiration for Pepe the Frog in any way.  SUF ¶ 79; Ex. 3 [Furie Dep. Tr. at 144:4–5] ("I've never seen El Sapo Pepe.  And it's not an inspiration for Pepe whatsoever.").  Mr. Furie had never seen El Sapo until this litigation.  SUF ¶ 80.  In fact, Mr. Furie has never even been to Argentina.  SUF ¶ 81.

## III.   ARGUMENT

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *Morris v. Young*, 925 F. Supp. 2d 1078, 1082 (C.D. Cal. 2013) (citing Fed. R. Civ. P. 56(a)).  Even when viewing the evidence in the light most favorable to Infowars (*see id.*), there are no genuine disputes of material fact precluding summary judgment on Infowars's first, third, fourth, seventh, and eighth affirmative defenses.

### A.   Infowars's "Implied or Explicit License" Defense Fails

Infowars's fourth affirmative defense wrongly asserts that Mr. Furie gave the general public an "implied or explicit license" to use Pepe the Frog.  *See* Affirmative

Defenses, Dkt. 69 ("Affirmative Defenses") ¶ 37.[2]  Infowars bears the burden of proving the existence of an enforceable license.  *See Sprengel v. Mohr*, 2012 WL 12893748, at *2 (C.D. Cal. Sept. 24, 2012).  It is undisputed that the parties did not enter into an express license agreement.  SUF ¶ 56; Ex. 6 [David Jones Dep. Tr. at 136:12–14] ("Q. Has Free Speech Systems ever signed an agreement with Mr. Furie? A. I don't believe so.").  Instead, Infowars contends that Mr. Furie's public statements created an implied, non-exclusive license for ***anyone*** to use Pepe the Frog.  *See* Affirmative Defenses ¶ 39.  Infowars is wrong.

"[T]he Ninth Circuit has explained that the implied license doctrine in copyright cases is to be very narrowly construed."  *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1226 (C.D. Cal. 2007).  The existence of an implied copyright license "is ultimately a question of [state] contract law." *Interscope Records v. Time Warner, Inc.*, 2010 WL 11505708, at *3 (C.D. Cal. June 28, 2010); *see also Foad Consulting Grp., Inc. v. Azzalino*, 270 F.3d 821, 827 (9th Cir. 2001) (same).  To survive summary judgment, then, Infowars must identify evidence establishing a dispute of material fact on "the same elements necessary to evidence an express contract: mutual assent or offer and acceptance, consideration, legal capacity and lawful subject matter."  *Northstar Financial Advisors Inc. v.*

---

[2] For convenience, this brief refers to the Affirmative Defenses in the Amended Answers filed by Free Speech Systems, LLC (Dkt. 69).  The relevant Affirmative Defenses filed by Infowars, LLC (Dkt. 70) are identical.  Free Speech Systems, LLC is the operating business for the media platform known as "Infowars," which includes multiple websites, online stores, and *The Alex Jones Show.*  SUF ¶ 48. Free Speech Systems owns and operates the websites through which MAGA Posters were sold.  SUF ¶ 49.

*Schwab Investments*, 779 F.3d 1036, 1050–51 (9th Cir. 2015) (quoting 1 Richard A. Lord, Williston on Contracts § 1:5 at 37–38 (4th ed. 2007).[3]

### 1. *There Was No Implied License*

It is hornbook law that "[a]n essential element of any contract is the consent of the parties, or mutual assent." *Donovan v. RRL Corp.*, 26 Cal. 4th 261, 270–271 (Cal. 2001). Equally vital to an enforceable license is the presence of consideration. *See Ormesher v. Raskin*, 2010 WL 11549656, at *2 (C.D. Cal. May 6, 2010) (consideration is a "required element to form a binding contract"). Thus, courts have consistently rejected implied license defenses in copyright cases where there was no evidence of offer and acceptance or consideration between the parties. *See, e.g.*, *id.* (granting summary adjudication of copyright infringement). Both basic contractual requirements are missing here.

#### a.   There Was No Mutual Assent

There is no evidence that the parties mutually assented to any license. Mutual assent requires "an offer communicated **to the offeree** and an acceptance communicated **to the offeror**." *Done! Ventures, LLC v. Gen. Elec. Co.*, 2011 WL 13217220, at *5 (C.D. Cal. Jan. 21, 2011) (emphasis added). Neither is present.

**First**, there is no evidence of a valid offer. As Infowars admits, Mr. Furie never actually communicated an offer to the Defendants. SUF ¶ 62; Ex. 6 [David

---

[3] Because the implied license doctrine in copyright cases is "very narrowly construed," *Metro-Goldwyn-Mayer Studios*, 518 F. Supp. 2d at 1226, courts in the Ninth Circuit have typically found implied copyright licenses only in the "narrow circumstance[]" in which "one party created a work at [the other's] request and handed it over, intending that [the other] copy and distribute it." *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1026 (9th Cir. 2001) (internal quotation marks omitted). Infowars plainly has no implied license to use Pepe the Frog under this typical application of implied copyright license. SUF ¶ 61; Ex. 6 [David Jones Dep. Tr. at 135:22–24] ("Q. Free Speech Systems never asked Matt Furie to create Pepe the Frog. Correct? A. That is correct.").

1  Jones Dep. Tr. at 136:9–11] ("Q. Did Mr. Furie ever communicate [a verbal offer]
2  directly to Free Speech Systems? A. Not to my knowledge.").[4]  Infowars instead
3  points to various statements that Mr. Furie made in interviews regarding Pepe the
4  Frog's popularity as a meme.   Affirmative Defenses ¶ 39.   But statements
5  "disseminated to the public at large" are presumed only to be "an invitation to
6  consider, examine, and negotiate"—not an offer.  *Donovan v. RRL Corp.*, 26 Cal.
7  4th 261, 271 (2001), as modified (Sept. 12, 2001).  They cannot constitute an offer
8  unless the language "invite[s] the performance of a specific act without further
9  communication and leave[s] nothing for negotiation." *Id.* at 272; *see also* 3 Nimmer
10  on Copyright § 10.03[A][7] ("[A]n implied license requires more than a general
11  intent of the author regarding disposition of his work. . . . [T]he terms—including
12  identity of the licensee—should be reasonably clear.").

13      Infowars cannot identify any statements by Mr. Furie that overcome this
14  presumption.  None of Mr. Furie's interview comments clearly set out terms of a
15  purported copyright license, sought payment or other promises in exchange for the
16  license, stated the identity of a potential licensee, or could reasonably be construed
17  as evidencing an intent to contract with Infowars.  SUF ¶¶ 65–68.  Mr. Furie's
18  interview statements therefore do not constitute an offer.

19      Courts have routinely rejected the argument that statements to the general
20  public comparable to Mr. Furie's amount to a contractual offer.  *See, e.g.*, *Kolodziej
21  v. Mason*, 774 F.3d 736, 739, 742–46 (11th Cir. 2014) (holding that a public promise
22  in interview to "pay [] a million dollars" was not a valid offer); *Metro-Goldwyn-
23  Mayer*, 518 F. Supp. 2d at 1226 (finding "simply no evidentiary basis" to conclude
24  that plaintiff's conduct in allowing third parties to distribute copyrighted music

---

[4] This fact is particularly telling in light of Mr. Furie's extensive record of
negotiating licenses for Pepe the Frog directly with other third parties.  SUF ¶ 19.
Infowars does not and cannot contend that Mr. Furie ever made such an offer to it.

PLAINTIFF'S MEM. IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
Case No. 2:18-cv-01830-MWF-JPR

created a copyright license for the defendant and general public); *Schultz v. United Airlines, Inc.*, 797 F. Supp. 2d 1103, 1107 (W.D. Wash. 2011) (language on defendant's website expressing "intention to deliver baggage in a timely manner" fell "far short of evincing an intent to contract"); *Konik v. Cable*, 2009 WL 10681970, at *5 (C.D. Cal. Dec. 2, 2009) (no valid offer where advertisement did "not contain plain and clear language or specific terms").

*Second*, there is no evidence that Infowars accepted any offer or communicated any acceptance to Mr. Furie.  SUF ¶ 58.  To the contrary, all parties agree that Mr. Furie and Infowars have *never communicated* with each other.  SUF ¶ 59; Ex. 57 [Alex Jones Dep. Tr. at 81:2–81:4] ("Q. . . . [Y]ou've never communicated in any way with Matt Furie; right?  A. No."); Ex. 6 [David Jones Dep. Tr. at 135:8–21] (same); Ex. 3 [Furie Dep. Tr. at 192:19–20] ("Q. You never spoke with Mr. Jones? A. No.").  There is no evidence that Mr. Furie even knew of Infowars's intended use of Pepe the Frog until *after* MAGA Posters went on sale. *See Kolodziej*, 774 F.3d at 743 (lack of contact between parties demonstrates no mutual assent).

### b.    There Was No Consideration

Nor is any alleged license supported by consideration.  Consideration is a promise that "confer[s] a benefit to the recipient or a detriment to the promise" and must "be bargained for as part of the exchange."  *Erickson v. Freddie Mac*, 2011 WL 13225034, at *3 (C.D. Cal. Dec. 19, 2011).  A promise "is bargained for if it is sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise."  *Hetland v. Beauchesne*, 2015 WL 13359782, at *2 (C.D. Cal. Apr. 7, 2015), *aff'd*, 677 F. App'x 382 (9th Cir. 2017) (nonprecedential).  Consideration also requires "mutuality of obligation" between the parties.  *See Gemcap Lending I, LLC v. Crop USA Ins. Agency, Inc.*, 2014 WL 12589335, at *4

(C.D. Cal. Jan. 14, 2014); *Swift Harvest USA, LLC v. Dollar Gen. Corp.*, 2018 WL 7348845, at *4 (C.D. Cal. Dec. 28, 2018) ("Under California law, consideration requires a return act or promise.").

There is no evidence that Mr. Furie received any benefit or Infowars suffered any detriment in exchange for the supposed license.  There is no evidence that Infowars bargained with Mr. Furie for the ability to use Pepe the Frog.  SUF ¶¶ 63–64 (the parties have never communicated with each other).  And there is no evidence that Infowars had any reciprocal obligations under any purported agreement or provided any return promise.  SUF ¶¶ 65–68 (none of Mr. Furie's public statements sought payment or any other promise in exchange for the right to use Pepe the Frog).  Without a bargained-for agreement imposing some obligation on Infowars, there can be no consideration and therefore no license.  *Gemcap Lending I, LLC v. Crop USA Ins. Agency, Inc.*, 2014 WL 12589335, at *4 (C.D. Cal. Jan. 14, 2014) (no consideration where party "obtained no discernable benefit in return").

## 2. *Implied Licenses Without Consideration Are Revocable*

Even if an implied license existed between the parties, the license was revoked.  *Kinney v. Oppenheim*, 2011 WL 13217573, at *4 (C.D. Cal. Mar. 3, 2011) ("[N]onexclusive licenses are revocable absent consideration.") (quoting 3–10 Nimmer on Copyright § 10.02[B][5]).  Any implied license created by Mr. Furie's public statements was revoked by his repeated public statements making clear that he owned the copyright in Pepe the Frog and sought to end the misappropriation of his work:

- September 28, 2016:  Mr. Furie stated publicly in an *esquire.com* article that "Pepe the Frog is copyrighted by me."  SUF ¶ 72.

- October 14, 2016:  Mr. Furie and the Anti-Defamation League issued a press release stating they have partnered to end the misappropriation of Pepe the Frog.  SUF ¶ 73.

- August 28, 2017:  *Motherboard* reported that Mr. Furie "will aggressively enforce his intellectual property, using legal action if necessary, to end the misappropriation of Pepe the Frog."  SUF ¶ 74.

- September 18, 2017:  Mr. Furie issued a press release stating he has expanded enforcement efforts to end the misappropriation of Pepe by taking legal action against additional infringers.  SUF ¶ 75.

Moreover, it is undisputed that Infowars knew of Mr. Furie's enforcement activities and nonetheless continued to sell MAGA Posters:

- September 17, 2017:  Alex Jones hosted Mike Cernovich on *The Alex Jones Show* to discuss a cease-and-desist letter from Mr. Furie demanding that Mr. Cernovich stop using Pepe the Frog.  SUF ¶ 76.

- March 5, 2018:  Mr. Furie filed this lawsuit against Infowars (Dkt. 1); the following day Alex Jones discussed the lawsuit on *The Alex Jones Show*, and continued to offer MAGA Posters for sale.  SUF ¶ 41.

Mr. Furie's sustained and public enforcement activities demonstrate that—if there were any license—he terminated it at least by September 28, 2016.  *Peer Int'l Corp. v. Luna Records, Inc.*, 887 F. Supp. 560, 566 (S.D.N.Y. 1995) (summary judgment of copyright infringement where plaintiff's enforcement activity demonstrated intent to terminate license).

For all of these reasons, Mr. Furie is entitled to summary judgment on Infowars's fourth affirmative defense.

### B.     Infowars's "Abandonment or Forfeiture" Defense Fails

In its third affirmative defense, Infowars alleges that Mr. Furie's interview statements mean that he abandoned or forfeited[5] some or all of his copyrights in the image and character of Pepe the Frog.  *See* Affirmative Defenses ¶ 31.  However, "in copyright, waiver or abandonment of copyright occurs only if there is an intent by the copyright proprietor to surrender rights in his work."  *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1026 (9th Cir. 2001) (internal quotation marks omitted); *Bell v. Moawad Group, LLC*, 326 F.Supp.3d 918, 929 (D. Ariz. 2018) (granting summary judgment of no waiver, even though copyrighted material was shared free online, went semi-viral, and was not enforced for seven months).  Abandonment "must be manifested by some overt act indicative of a purpose to surrender the rights and allow the public to copy."  *Hampton v. Paramount Pictures Corp.*, 279 F.2d 100, 104 (9th Cir. 1960) (emphasis added).

There is no evidence of the type of clear, decisive conduct required to establish that Mr. Furie intended to surrender his rights in Pepe.  It is undisputed that Mr. Furie's comic books are marked with copyright notices.  *See* SUF ¶ 35.  Infowars has identified certain public statements made by Mr. Furie regarding others' use of Pepe the Frog as evidence of "overt acts" indicating his intent to surrender his rights in Pepe.  But even viewed in the light most favorable to Infowars, none of Mr. Furie's statements can be construed as the type of unequivocal conduct evidencing an intent to waive his copyrights.  None of the statements on which Infowars relies references copyrights or commercial use of Pepe the Frog at all, and none was even in the

---

[5] To the extent Infowars asserts this defense according to a theory of "forfeiture," it fails as a matter of law.  "Forfeiture" has not been an available defense to copyright for any works published since 1988, when the Berne Convention Implementation Act of 1988 went into effect.  *See Charles Garnier, Paris v. Andin Int'l, Inc.*, 36 F.3d 1214, 1219 (1st Cir. 1994); 17 U.S.C. § 405.

context of a discussion of Mr. Furie's copyrights.  *Compare Hampton v. Paramount Pictures Corp.*, 279 F.2d 100, 104 (9th Cir. 1960) (finding no abandonment where copyright owner did not give permission to sell copyrighted prints for commercial exhibition, even though copyright owner took no action for 25 years), *with Hadady Corp. v. Dean Witter Reynolds, Inc.*, 739 F. Supp. 1392, 1399 (C.D. Cal. 1990) (finding abandonment where plaintiff's weekly newsletter included a copyright notice stating the copyright would last for two days).  Rather, each of the statements on which Infowars relies was made in the context of derivative uses of Pepe in internet memes.  SUF ¶¶ 37–39; *see, e.g.*, Ex. 47 [FSS000322] ("remixing" Mr. Furie's work in memes); Ex. 9 [FSS000333] ("creat[ing] that kind of meme success"); Ex. 8 [FURIE_INFO_00001370] (discussing Google analytics for mentions of Pepe the Frog).

By contrast, where Mr. Furie actually ***did*** speak about his copyrights in Pepe the Frog, he was direct and unequivocal: "Pepe the Frog is copyrighted by me."  SUF ¶ 72.  In addition, Mr. Furie has repeatedly asserted the copyrights in his works, through public statements, licensing to third parties, and legal action.  SUF ¶ 40; *see also supra* Section III.A.2.  Upon being notified of Infowars's infringing sales, Mr. Furie promptly brought this action, and he has pursued it diligently ever since.  SUF ¶ 41.  Courts routinely find that such conduct defeats a claim of abandonment as a matter of law.  *See e.g.*, *Dolores Press, Inc. v. Robinson*, 2019 WL 1223320, at *4 (9th Cir. Mar. 15, 2019) (affirming summary judgment in favor of copyright owner on claim of abandonment where copyright was enforced); *UMG Recordings, Inc. v. MP3.Com, Inc.*, 92 F. Supp. 2d 349, 353 (S.D.N.Y. 2000) ("The abandonment defense must also fall since defendant has failed to adduce any competent evidence of an overt act indicating that plaintiffs, who filed suit against MP3.com shortly after MP3.com launched its infringing My.MP3.com service, intentionally abandoned their copyrights.").  This is more than enough to grant summary judgment of no

abandonment. *See Bell*, 326 F. Supp. at 929 (granting summary judgment to plaintiff on abandonment defense where he "marks his books, website, and authorized works with copyright symbols, and he pursues infringers").

Mr. Furie is therefore entitled to summary judgment on Infowars's third affirmative defense.

## C.   Infowars's "Lack of Copyright" Defense Fails

In its first affirmative defense, Infowars further asserts that Mr. Furie does not have a valid copyright because Pepe the Frog was supposedly copied from a pre-existing Argentinian character, El Sapo. *See* Affirmative Defenses ¶ 1. The undisputed facts show that Mr. Furie did not copy El Sapo. There is no factual basis whatsoever for Infowars's allegation of copying—Infowars simply made it up.

To meet its burden on this defense, Infowars must demonstrate that Pepe the Frog "is not original but copied from another's work." *N. Coast Indus. v. Jason Maxwell, Inc.*, 972 F.2d 1031, 1033 (9th Cir. 1992). "'Original' in reference to a copyright work means that the particular work 'owes its origin' to the 'author.' No large measure of novelty is required." *Id.* (internal citations omitted). Infowars's contention that Pepe the Frog lacks originality because it was copied is governed by the same analysis as allegations of copyright infringement: "defendant must show that [1] plaintiff had access to the prior work and [2] that plaintiff's work is substantially similar to the prior work in both ideas and expression." *Id.* at 1033–34. There are no facts supporting either element.

Infowars asserts that "plaintiff was aware of this pre-existing character." *See* Affirmative Defenses ¶¶ 2–3. Mr. Furie unequivocally denies that El Sapo was an inspiration for Pepe the Frog in any way. In fact, Mr. Furie's uncontroverted testimony establishes that he had never heard of or seen El Sapo before this lawsuit. SUF ¶ 80. Infowars has produced no evidence to the contrary. Nor could Mr. Furie reasonably have been aware of an Argentine cartoon character when the

17

uncontroverted evidence shows he never traveled to Argentina (or any Latin American country) prior to creating Pepe the Frog.  *See* SUF ¶ 81.  Rather, the undisputed evidence is that Mr. Furie's inspiration for Pepe (and the other characters in the *Boys Club* comics) were his own friends and family.  *See* SUF ¶ 77.  For this reason alone, Infowars's lack of copyright defense must fail.

Infowars also alleges that El Sapo is "identical" to Pepe the Frog—but even a cursory examination shows that they are not even "substantially similar . . . in both ideas and expression," much less identical.  *See N. Coast Indus.*, 972 F.2d at 1033. Summary judgment of no copying may be granted where there are "insufficient objective similarities between the works."  *See Funky Films, Inc. v. Time Warner Entm't Co.*, 462 F.3d 1072, 1077 (9th Cir. 2006) (granting summary judgment of no copying).  And visually, the characters are plainly not "identical":



**Furie's "Pepe in the                          El Sapo
Blue Shirt"**

SUF ¶ 83; Ex. 1 [FURIE_INFO_00000166]; Ex. 68 [Dkt. 71-2 at 2–3].

Moreover, El Sapo is missing several of Pepe's distinct visual characteristics, including his puffy eyelids, red/brown lips, bulging eyes, and multiple white dots in

his pupils.   These major visual differences are alone enough to find that the characters lack substantial similarity.  *Florentine Art Studio, Inc. v. Vedet K. Corp.*, 891 F. Supp. 532, 536 (C.D. Cal. 1995) (finding lack of substantial similarity of plaster swan statues because defendant's "differ[ed] from plaintiff's in the beak, which extends to the wings, in its larger tail, and in the lines at the base").  As if that were not enough, El Sapo is not even a frog.  *See* Affirmative Defenses ¶ 1 (defining El Sapo as a toad).  As a result, the two characters cannot, as a matter of law, be substantially similar.

Mr. Furie is therefore entitled to summary judgment on Infowars's first affirmative defense.

### D. Infowars's "Invalid Certificate of Registration" Defense Fails

In its seventh affirmative defense, Infowars alleges that Mr. Furie knowingly applied for his Certificate of Registration No. VA0002074461 for "Pepe in the Blue Shirt" (the "'461 registration") with inaccurate information.  *See* Affirmative Defenses ¶ 42.  This is false.  There is no evidence to suggest that Mr. Furie's Certificate of Registration for "Pepe in the Blue Shirt" is inaccurate or in any way fails to satisfy the statutory requirements for a valid copyright registration.[6]

It is undisputed that Mr. Furie created the deposit material submitted with the application for the '461 registration.  SUF ¶¶ 32, 34.  Mr. Furie created the "Pepe in the Blue Shirt" image that was submitted to the Copyright Office on his computer on April 12, 2016.  SUF ¶ 33.  His application was entirely accurate.

Infowars bases its defense on a quote from a 2015 *Vice.com* article, in which Mr. Furie stated that he was unhappy that the Pepe meme's "standard outfit" now

---

[6] 17 U.S.C. § 411(b)(1) provides that a certificate of registration satisfies statutory requirements unless (1) the applicant knowingly included inaccurate information; and (2) the inaccuracy would have caused the Copyright Office to refuse registration.

includes "randomly, a blue shirt and brown lips."  *See* Affirmative Defenses ¶ 43. But this 2015 quote—by its own terms—does not state that Mr. Furie is not the creator of the "Pepe in the Blue Shirt" work submitted to the Copyright Office.  SUF ¶ 42; Ex. 54 [Pl.'s Jan. 14, 2019 Response to Request for Admission 12] ("[H]e's got, randomly, a blue shirt and brown lips, and that's his accepted outfit now. . . . [T]hat kind of piss[es] me off about [Pepe the Frog having become an internet meme].").  Nor could it.  The 2015 quote pre-dates the '461 registration application. And there is no reasonable interpretation of the 2015 quote (or any other evidence) that contradicts Mr. Furie's verified discovery response that he created "Pepe in the Blue Shirt."

Mr. Furie is therefore entitled to summary judgment on Infowars's seventh affirmative defense.

### E.     Infowars's "*De Minimis* Use" Defense Fails

Infowars's eighth affirmative defense alleges that the MAGA Posters' depiction of Mr. Furie's copyrighted work is *de minimis*.  In order to prevail on this defense, Infowars must establish that the infringing use of Pepe the Frog "is so meager and fragmentary that the average audience would not recognize the appropriation" of Mr. Furie's copyrighted work.  *Fisher v. Dees*, 794 F.2d 432, 434 n.2 (9th Cir. 1986).  According to Infowars, Mr. Furie's copyrighted works are only comic books, not the character and image of Pepe the Frog.  Infowars asserts that the MAGA Posters' use of Pepe the Frog "in comparison to the entire books" was therefore *de minimis* and does not constitute copyright infringement.  Ex. 62 [Dkt. 70 at ¶ 44].  Infowars is wrong.

As an initial matter, Infowars's assertion that Mr. Furie has only copyrighted comic books is incorrect.  As discussed above, Mr. Furie owns a valid copyright registration in the "Pepe in the Blue Shirt" image.  SUF ¶¶ 32–34.

But Infowars's *de minimis* use argument fails even as to Mr. Furie's registered copyrights for his comic books. Infowars's theory depends on the premise that Mr. Furie's copyrights in the comic books do not create protectable interests in their characters. This is incorrect. "[C]opyright protection extends not only to an original work as a whole, but also to 'sufficiently distinctive' elements, ***like comic book characters***, contained within the work." *DC Comics v. Towle*, 802 F.3d 1012, 1019–20 (9th Cir. 2015) (emphasis added) ("Although comic book characters are not listed in the Copyright Act, we have long held that such characters are afforded copyright protection."); *Halicki Films, LLC v. Sanderson Sales & Mktg.*, 547 F.3d 1213, 1224 (9th Cir. 2008). For a comic book character to receive copyright protection, it must (1) have "physical as well as conceptual qualities;" (2) be so "'sufficiently delineated' to be recognizable as the same character whenever it appears;" and (3) be "especially distinctive" and "contain some unique elements of expression." *DC Comics*, 802 F.3d at 1021.

Pepe the Frog undisputedly satisfies each prong of this test. ***First***, Pepe has both physical and conceptual qualities. He is consistently depicted as a green, anthropomorphic frog with large bulging eyes (often with multiple white dots in the pupil), reddish brown lips, puffy eyelids, and a human-shaped body. SUF ¶¶ 2–3. Pepe's character in the *Play Time* and *Boy's Club* comics also has distinct conceptual features. Pepe's character is a "peaceful frog-dude"—a kind and blissful cartoon character who enjoys junk food and hanging out with his three animal roommates. SUF ¶¶ 10–12; Ex. 15 [FSS000255] (Pepe is "a cool, chill frog dude that likes to hang with his friends and drink pop and watch TV."); Ex 16 [FSS000360] ("Pepe the Frog started his life as a happy, stoned bro-phibian living in an apartment with his three best buds . . . he smokes pot, freezes giant turds, plays computer games, and hangs out in his underwear.").

***Second***, Pepe is "'sufficiently delineated' to be recognized wherever he appears. Following his creation, Pepe became a popular meme, appearing throughout social media, online message boards, and other internet and media sources. SUF ¶ 14; Ex. 3 [Furie Dep. Tr. at 148:3–9] ("I created Pepe the Frog, the character, in Boy's Club. It became a popular internet meme[.]"); Ex. 8 (Select All / NY Mag Article) ("His name is Pepe. ***You know Pepe***. He's that forest green, anthropomorphic frog with the maroon lips; ***the one from all the memes***.") (emphasis added). Even Infowars admits that Pepe the Frog is widely known throughout various sources of media. SUF ¶ 14; Ex. 6 [David Jones Dep. Tr. at 50:21—51:5] (Q. . . . Dr. Jones, you just said that the head looks like Pepe. What did you mean by that? A. From what has been in the media, everywhere from Hillary Clinton to the – the cartoons – you know, . . . I think there was something yesterday that had Pepe the Frog that was on mainstream TV. But it's just – it's just one of those things that you see out there on the right and the left.").

***Third***, Pepe the Frog exhibits "especially distinctive" characteristics and "unique elements of expression." The *Boy's Club* comics celebrate the lives of Pepe and three other animal roommates as "20-something bros" who enjoy antics involving "junk food, catchphrases, and bodily fluids." SUF ¶ 11; Ex. 9 at FSS000329. *Boy's Club 1* included a full-page profile of the Pepe character identifying some of his distinctive attributes: he likes "pop[,]" "pizza[,]" and "talking on his cell." SUF ¶ 12; Ex. 10 at FURIE_INFO_00000121. Pepe even has a signature catch-phrase—"***feels good man***." SUF ¶ 13; Ex. 14 at FURIE_INFO_00000193; Ex. 8 at FURIE_INFO_00001368 ("Sometimes, he looks blissed out and stoner-eyed while uttering the phrase "'feels good man'"). Infowars can point to no evidence establishing that Pepe the Frog lacks distinctive characteristics or unique elements of expression. Mr. Furie's copyrights in *Play*

PLAINTIFF'S MEM. IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
Case No. 2:18-cv-01830-MWF-JPR

*Time* and the *Boy's Club* comics therefore protect not only the comic books, but the image and character of Pepe the Frog within them.

Moreover, the MAGA Posters contain enough of Pepe the Frog for the average audience to "recognize the appropriation." *Fisher*, 794 F.2d at 434 n.2. The evidence uniformly establishes that that the MAGA Posters' depiction of Pepe the Frog is recognizable as Pepe. The posters depict Pepe's entire face, which contains the most prominent of Pepe's physical features: his bulging eyes (with light-colored dots in the pupils), eyelids, and lips. SUF ¶ 70. The artist who created the first MAGA Poster admitted that he intentionally made Pepe recognizable. SUF ¶ 46; Ex. 5 [Allen Dep. Tr. at 129:19–24] ("Pepe is recognizable as Pepe the Frog in your image; right? Yes. Q. It's important that Pepe be recognizable in your poster; right? A. Yes."). And multiple Infowars customers recognized Pepe in the MAGA Posters. SUF ¶ 53; *see. e.g.*, Ex. 53 [Complaint Ex. B1] at 25 ("Beautifully colored poster! Love Pepe the frog in it!"). Even Alex Jones admitted that he recognized Pepe the Frog *the very first time* he saw a MAGA Poster. SUF ¶ 54; Ex. 57 [Alex Jones Dep. Tr. at 30:19–21] ("Q. Did you notice Pepe the Frog on it when you first reviewed the poster? A. I did.").

Therefore, Mr. Furie is entitled to summary judgment on Infowars's eighth affirmative defense of *de minimis* use. *See Rosen v. R & R Auction Co., LLC*, 2016 WL 7626443, at *11 (C.D. Cal. Aug. 31, 2016) (summary judgment for plaintiffs on *de minimis* use defense where defendants intentionally depicted copyrighted photo "in a collage of six pictures" and presented no evidence that it was unrecognizable to reasonable consumers).

## IV.   CONCLUSION

For the foregoing reasons, the Court should enter summary judgment in favor of Mr. Furie on Infowars's first, third, fourth, seventh, and eighth affirmative defenses.

1    Dated: April 8, 2019

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

By: /s/ *Louis W. Tompros*

**Wilmer Cutler Pickering Hale and Dorr LLP**
Nancy Schroeder (SBN 280207)
350 S. Grand Ave. Suite 2100
Los Angeles, CA 90071
Tel.: (213) 443-5300
Fax: (213) 443-5400
nancy.schroeder@wilmerhale.com

Louis W. Tompros (*pro hac vice*)
Stephanie Lin (*pro hac vice*)
60 State Street
Boston, MA 02109
Tel.: (617) 526-6000
Fax: (617) 526-5000
louis.tompros@wilmerhale.com
stephanie.lin@wilmerhale.com

William C. Kinder (*pro hac vice*)
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Tel.: (212) 295-6509
Fax: (212) 230-8888
will.kinder@wilmerhale.com

*Attorneys for Plaintiff*
MATT FURIE