NANCY SCHROEDER (SBN 280207)
(nancy.schroeder@wilmerhale.com)
WILMER CUTLER PICKERING
    HALE AND DORR LLP
350 S. Grand Ave., Suite 2100
Los Angeles, CA 90071
Telephone: +213 443 5300
Facsimile: +213 443 5400

LOUIS W. TOMPROS (*pro hac vice*)
(louis.tompros@wilmerhale.com)
STEPHANIE LIN (*pro hac vice*)
(stephanie.lin@wilmerhale.com)
WILMER CUTLER PICKERING
    HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: +1 617 526 6000
Facsimile: +1 617 526 5000

WILLIAM C. KINDER (*pro hac vice*)
(will.kinder@wilmerhale.com)
WILMER CUTLER PICKERING
    HALE AND DORR LLP
7 World Trade Center
New York, NY 10007
Telephone: +1 212 230 8800
Facsimile: +1 212 230 8888

*Attorneys for Plaintiff Matt Furie*

## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

MATT FURIE,

          Plaintiff,

   vs.

INFOWARS, LLC; FREE SPEECH
SYSTEMS, LLC,

         Defendants.

2:18-cv-01830-MWF-JPR

**PLAINTIFF MATT FURIE'S
MEMORANDUM IN OPPOSITION
TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT**

Date: May 6, 2019
Time: 10:00 a.m.
Hon. Michael W. Fitzgerald
Case Filed: March 5, 2018
Trial Date: July 16, 2019

# TABLE OF CONTENTS

I.    INTRODUCTION ..................................................................................1

II.   ARGUMENT ........................................................................................1

    A.   Infowars's Summary Judgment Motion Violates the Court's
        Rules ...........................................................................................2

        1.   Infowars's Motion Should Be Denied in Part for Failure
            to Comply with Local Rule 7-3 .................................................2

        2.   Infowars Improperly Relies on Evidence Not Produced
            During Discovery ......................................................................3

    B.   Infowars, LLC is a Proper Defendant ....................................................4

    C.   Infowars is Not Entitled to Summary Judgment on Fair Use ..............6

        1.   Factor One: The Purpose and Character of Infowars's
            Use Was Commercial and in Bad Faith .....................................6

        2.   Factor Two: The Fanciful Nature of the Copyrighted
            Work Does Not Support Fair Use .............................................13

        3.   Factor Three: Infowars's Copying of Nearly All
            Distinctive Features of Pepe Does Not Support Fair Use ........13

        4.   Factor Four: Copying of the Type Infowars Has Done
            Would Adversely Affect the Potential Market for Pepe...........15

    D.   Mr. Furie Did Not Abandon or Grant a License to His
        Copyrights ...............................................................................17

        1.   Mr. Furie Did Not Abandon His Copyrights ............................18

        2.   There Was No License ..............................................................22

    E.   Mr. Furie is Entitled to Statutory Damages and Attorney's Fees .......24

III.  CONCLUSION....................................................................................25

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569 (1994)...............................*passim*

*DC Comics v. Towle*, 989 F. Supp. 2d 948 (C.D. Cal. 2013) ...................................14

*De Forest Radio Tel. & Tel. Co. v. United States*, 273 U.S. 236 (1927)................22

*Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696 (9th Cir.
    2008) ....................................................................................................24, 25

*Englebrick v. Worthington Indus., Inc.*, 2011 WL 13131125 (C.D.
    Cal. Sept. 15, 2011) .....................................................................................5

*Field v. Google, Inc.*, 412 F. Supp. 2d 1106 (D. Nev. 2006) ...............................22

*Fisher v. Dees*, 794 F.2d 432 (9th Cir. 1986) ........................................................6

*Fodor v. Los Angeles Unified Sch. Dist.*, 2014 WL 12235424 (C.D.
    Cal. June 3, 2014) ......................................................................................25

*Grumpy Cat Ltd. v. Grenade Beverage LLC*, 2017 WL 9831408 (Dec.
    1, 2017) ......................................................................................................13

*Hampton v. Paramount Pictures, Corp.*, 279 F.2d 100 (9th Cir. 1960).................18

*Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539
    (1985).........................................................................................8, 14, 15, 16

*Infinity Broad. Corp. v. Kirkwood*, 150 F.3d 104 (2d Cir. 1998)...........................11

*Kolodziej v. Mason*, 774 F.3d 736 (11th Cir. 2014) ..............................................22

*Larin Corp. v. Alltrade, Inc.*, 2008 WL 11338579 (C.D. Cal. Feb. 13,
    2008) ...........................................................................................................5

*Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522 (9th Cir. 2008) ........8, 9, 13, 15

*Marya v. Warner/Chappell Music, Inc.*, 131 F. Supp. 3d 975 (C.D.
    Cal. 2015) ..................................................................................................18

*Monge v. Maya Magazines, Inc.*, 688 F.3d 1164 (9th Cir. 2012)....................*passim*

*Morris v. Young*, 925 F. Supp. 2d 1078 (C.D. Cal. 2013) ...................................2, 13

*Norse v. Henry Holt & Co.*, 847 F. Supp. 142 (N.D. Cal. 1994)..............................6

*Northstar Financial Advisors Inc. v. Schwab Investments*, 779 F.3d
      1036 (9th Cir. 2015) ...................................................................................22

*Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007) .....................6

*Peterman v. Republican National Committee*, 320 F. Supp. 3d 1151,
      1158 (D. Mont. 2018) .................................................................................11

*Rosen v. eBay, Inc.*, 2015 WL 1600081 (C.D. Cal. Jan. 16, 2015) ..........................6

*Satava v. Lowry*, 323 F.3d 805 (9th Cir. 2003) .....................................................14

*Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417
      (1984)..................................................................................................8, 15

*United Feature Syndicate, Inc. v. Koons*, 817 F. Supp. 370 (S.D.N.Y.
      1993) ..........................................................................................................13

*Walt Disney Productions v. Air Pirates*, 581 F.2d 751 (9th Cir. 1978) ......10, 13, 15

*Warner Bros. Inc. v. American Broadcasting Companies, Inc.*, 720
      F.2d 231 (2d Cir. 1983) ..............................................................................14

## STATUTES, RULES, AND REGULATIONS

17 U.S.C. § 504(c)(2)............................................................................................25

17 U.S.C. § 103 ...................................................................................................10

17 U.S.C. § 107 .....................................................................................................6

17 U.S.C. § 412(2) ..........................................................................................24, 25

Fed. R. Civ. P. 26 ..................................................................................................3

Fed. R. Civ. P. 37(c) ..........................................................................................1, 3

Fed. R. Civ. P. 56(a)..............................................................................................2

C.D. Cal. Local Civil Rule 7-3 ........................................................................1, 2, 3

**OTHER AUTHORITIES**

1 Richard A. Lord, Williston on Contracts § 1:5 (4th ed. 2007) ............................22

## I.    INTRODUCTION

Infowars's summary judgment motion ignores the law, misstates the facts, and flouts the rules.  As to fair use, Infowars's willful and bad faith infringement of Mr. Furie's copyrights was the antithesis of fair: Infowars traded intentionally on Pepe, copying his core features to sell a commercial product, causing harm to the potential market for Mr. Furie's works.  As to abandonment and implied license, Infowars mischaracterizes Mr. Furie's public statements and conspicuously omits from its brief the actual words Mr. Furie said—none of which showed intent to abandon or license his rights to Infowars.  And as to Infowars's arguments concerning its corporate structure, statutory damages, and Mr. Furie's entitlement to attorneys' fees, there remain significant factual disputes precluding summary judgment. Moreover, Infowars's motion introduces three previously undisclosed arguments in violation of Local Rule 7-3, and relies on numerous documents that it elected not to produce in discovery, in violation of Rule 37(c).  Given these significant substantive and procedural shortcomings, Infowars's motion should be denied.[1]

## II.    ARGUMENT

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

---

[1] Defendants Infowars, LLC and Free Speech Systems, LLC's (collectively "Infowars") Memorandum of Points and Authorities, Dkt. 88-1 ("Infowars Br.") and Statement of Uncontroverted Facts, Dkt. 88-3 ("Infowars SUF") also include many other baseless, misquoted, or outright false statements which Mr. Furie does not address in detail in this brief.  For example, Infowars alleges that Mr. Furie published his copyrighted "Pepe in a Blue Shirt" in 2016 purportedly "in order to plan for this litigation campaign."  Infowars Br. at 1 (citing Infowars SUF ¶ 7). That is false: Mr. Furie published "Pepe in a Blue Shirt" long before Infowars even began selling the posters at issue in this litigation.  *Compare* Furie SUF (Dkt. 87) ¶ 33 *with* Furie SUF (Dkt. 87) ¶ 43. This brief cannot and does not attempt to correct all of Infowars's baseless or false statements.

matter of law." *Morris v. Young*, 925 F. Supp. 2d 1078, 1082 (C.D. Cal. 2013) (quoting Rule 56(a)).  Viewing the evidence in the light most favorable to Mr. Furie, there are (at minimum) genuine disputes of material fact precluding summary judgment in Infowars's favor.

### A.   Infowars's Summary Judgment Motion Violates the Court's Rules

#### 1.   *Infowars's Motion Should Be Denied in Part for Failure to Comply with Local Rule 7-3*

Infowars represented—and Mr. Furie expected—that Infowars would bring a motion for summary judgment addressing ***solely*** the issues of fair use and lack of copyright because of alleged copying of the Argentinian character "El Sapo Pepe" ("El Sapo").  *See* Tompros Decl. ¶¶ 4-10; Furie Ex. 92[2] at 2.  But Infowars sprung three additional issues on Mr. Furie in its motion: Infowars LLC's status as a defendant, abandonment/implied license, and statutory damages/attorneys' fees.

Local Rule 7-3 requires counsel contemplating filing a motion to "contact opposing counsel to discuss thoroughly, preferably in person, the substance of the contemplated motion."  C.D. Cal. L.R. 7-3.  Counsel for Infowars emailed counsel for Mr. Furie proposing a time for that conference, and stated specifically that Infowars was moving for summary judgment on only two "predictable" bases: "I think it is safe to predict that you're not going to agree to our motion. ***The basis for it is pretty predictable -- 1)  He ripped off Pepe from the Argentine version, 2) fair use***."  Furie Ex. 92 at 2 (emphasis added).  Counsel conferred by phone that same day.  Tompros Decl. ¶¶ 6-7.  In that conference, the **only** bases counsel for Infowars

---

[2] For convenience, the exhibits submitted in support of Mr. Furie's opposition to Infowars's motion for summary judgment (Dkt. 88) are numbered and paginated sequentially with the exhibits submitted in support of Mr. Furie's motion for partial summary judgment (Dkt. 84-87).  All exhibits submitted by Mr. Furie in support of his summary judgment papers are referred to as "Furie Ex."  Exhibits submitted by Infowars are referred to as "Infowars Ex."

articulated for its motion were fair use and (potentially) copying of El Sapo. *Id.* ¶¶ 8 - 9. Infowars's counsel made no mention of any argument that Infowars was not a proper defendant, abandonment, implied license, statutory damages, or attorneys' fees.[3] *Id.* The Court therefore can and should deny Infowars's motion (as to everything other than fair use) on this basis alone.

## 2. *Infowars Improperly Relies on Evidence Not Produced During Discovery*

Infowars also violated Federal Rule 37(c) by relying in its motion on evidence that it has not previously disclosed to Mr. Furie. Infowars's filing includes fifteen exhibits (Infowars Exs. 10-13, 15-21, 26, 27, 37, and 43) that were not produced before the close of discovery. While some of these documents appear to be new versions of articles that were produced in different form, at least five—Infowars Exhibits 11-13, 27, and 43—are entirely new. Rule 37(c) provides that if a party fails to disclose or supplement discovery as required by Rule 26, "the party is not allowed to use that information or witness to supply evidence on a motion . . . unless the failure was substantially justified or is harmless." *See also* Dkt. 77 [Order] at 7 ("All parties are reminded that they must update their initial disclosures, as appropriate. In other words, you can't use something at trial that wasn't timely disclosed."). Infowars did not seek leave to introduce new evidence, nor has it given any reason why its submission is justified or harmless. To the contrary, Mr. Furie's

---

[3] Infowars's decision not to reveal its additional bases for summary judgment is particularly surprising given this Court's admonition just two months ago—in an order finding that Infowars had failed to strictly comply with Local Rule 7-3 (though Mr. Furie was not prejudiced by that failure)—that "All parties are expected to scrupulously observe the Local Rules in the future." *See* Dkt. 77 at 5. There is greater prejudice here: given the seven-day response time for motions for summary judgment, it was unfair for Infowars to introduce multiple new complex issues—including the factually complicated question of operations of Infowars, LLC, and the legally complex question of availability of statutory damages.

PLAINTIFF'S MEM. IN OPP. TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Case No. 2:18-cv-01830-MWF-JPR

ability to respond is prejudiced by Infowars's late disclosure of new evidence well after the close of fact discovery.[4]  The Court should strike Infowars Exs. 10-13, 15-21, 26, 27, and 43.

**B.     Infowars, LLC is a Proper Defendant**

Infowars argues that Infowars, LLC played no role in the infringing conduct. Infowars Br. at 9.  This is at best a disputed issue of fact.  ***First***, Alex Jones—the manager of Infowars, LLC—publicly displayed the MAGA Posters on *The Alex Jones Show* and advertised them as available on the Infowars store website.  *See, e.g.*, Furie Ex. 71 [Alex Jones Dep. Tr. at 51:10-12] ("Q. When you plugged it, did you show the poster on your video program? A. Yes."); Furie Ex. 52 at -1910 ("So, the last ones that we have are available right now at infowarsstore.com . . .").  According to the records of the Texas Secretary of State, Alex Jones is the manager of Infowars, LLC.  Furie Ex. 85 at -4752.

***Second***, Infowars, LLC, at the time of at least some infringements, operated websites on which the MAGA Posters were marketed.  *Infowars.com* and *prisonplanet.com*—websites on which MAGA Posters were advertised (*see* Furie Ex. 61 (Dkt. 85-61) at 8)—listed Infowars, LLC as the sites' owner and operator as recently as December 2018.  *See* Furie Ex. 79 at -4768 (infowars.com terms of service page, dated 10/9/2018, defining "We," "us," and "our" to mean "Infowars, LLC, a Texas limited liability company"); Furie Ex. 80 (prisonplanet.com terms of service page, dated 12/14/2018, titled "Infowars LLC, Terms of Use & Privacy Policy" and defining "We," "us," and "our" to mean "Infowars, LLC, a Texas limited liability company").

Infowars argues that the listings on both, separate websites were "mistakes."

---

[4] For example, one of the newly disclosed documents, Exhibit 43, appears to provide the ***sole*** support for Infowars' assertions about the history and characteristics of El Sapo Pepe ("El Sapo").  *See* Infowars SUF (Dkt. 88-3) at ¶ 69.

PLAINTIFF'S MEM. IN OPP. TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Case No. 2:18-cv-01830-MWF-JPR

1   Infowars Br. at 9.  But Mr. Furie's counsel made Infowars aware of the listing as
2   early as May 2018—when Infowars's prior counsel originally suggested that
3   Infowars, LLC was not a proper defendant.  *See* Furie Ex. 91 at 1, 3, 6.  Infowars
4   then dropped the issue, and it left the terms of service pages listing Infowars, LLC
5   in place on both *infowars.com* and *prisonplanet.com* **for nearly seven months**.  Until
6   this motion, Infowars made no formal request to remove Infowars, LLC from this
7   case and instead repeatedly filed motions and served discovery on its behalf.  This
8   conduct raises triable fact questions as to the role of Infowars, LLC in the
9   infringement.  *See Englebrick v. Worthington Indus., Inc*., 2011 WL 13131125, at
10   *3 (C.D. Cal. Sept. 15, 2011) (defendant's sustained and active participation in
11   litigation indicated that it was properly named as a party)[5]  Infowars's motion on
12   this ground should therefore be denied.  *See id.* at *3 (denying summary judgment
13   where there was "controverting evidence" of defendant's claim that it was not a

---

15   [5] The deposition testimony of David and Alex Jones undermines Infowars's
16   suggestion that Infowars, LLC was not involved in the marketing and sale of the
17   MAGA Posters.  David Jones—the business manager and 30(b)(6) witness for Free
18   Speech Systems—expressed uncertainty as to the relationship between Infowars,
19   LLC and the websites through which the MAGA Posters were advertised.  *See*
20   Furie Ex. 72 [David Jones Dep. Tr. at 148:16-18] ("Q. Why would someone who
21   prepared this think that Infowars, LLC was the correct entity to use [on the terms
22   of service for prisonplanet.com]?  A.  I have no idea.").  Alex Jones, the 30(b)(6)
23   witness for Infowars, LLC, was even less sure what Infowars, LLC does.  *See*
24   Furie Ex. 71 [Alex Jones Dep. Tr. at 109:14-18]  ("I don't want to say something
25   wrong [about what Infowars, LLC does].  Gives me a headache when I meet with
26   the lawyers.  I have good lawyers on like corporate stuff, and we have the simplest
27   things set up, and I can't understand it.").  The Joneses' equivocal testimony only
28   raises further questions about Infowars's position that Infowars, LLC was
   erroneously listed on the websites' terms of service.  *See Larin Corp. v. Alltrade,
   Inc*., 2008 WL 11338579, at *3 (C.D. Cal. Feb. 13, 2008) (denying summary
   judgment request to dismiss one corporate defendant where record lacked
   "definitive evidence to show that [the company was] not so intertwined" with
   related corporate co-defendant).

PLAINTIFF'S MEM. IN OPP. TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Case No. 2:18-cv-01830-MWF-JPR

1    proper defendant).

2    **C.    Infowars is Not Entitled to Summary Judgment on Fair Use**

3        Fair use under 17 U.S.C. § 107 is a highly fact-specific affirmative defense

4    that "must be dealt with on a case by case basis."  *Rosen v. eBay, Inc.*, 2015 WL

5    1600081, at *14 (C.D. Cal. Jan. 16, 2015); *see also Campbell v. Acuff-Rose Music,*

6    *Inc.*, 510 U.S. 569, 577 (1994) ("[T]he statute, like the doctrine it recognizes, calls

7    for case-by-case analysis.").  It is Infowars—not Mr. Furie—that "bears the burden

8    of proof" on fair use.  *Monge v. Maya Magazines, Inc.*, 688 F.3d 1164, 1170 (9th

9    Cir. 2012).

10       Infowars's use of Pepe was anything but fair.  Infowars infringed willfully

11   and in bad faith, intentionally exploiting Pepe's popularity for commercial gain.  The

12   MAGA Posters are neither "transformative" nor a "parody" as Infowars suggests.

13   Rather, they are commercial products that feature the distinctive features of a

14   protected cartoon character of the type that, if unrestricted, would impair the market

15   for licensed Pepe products.  As a result, all four fair use factors counsel against a

16   finding of fair use, and certainly preclude summary judgment in Infowars's favor.

17   *See* 17 U.S.C. § 107.

18       **1.  *Factor One: The Purpose and Character of Infowars's Use***

19           ***Was Commercial and in Bad Faith***

20           a.    Infowars's Bad Faith Precludes a Finding of Fair Use

21       "In evaluating the 'purpose and character' factor, [the Ninth Circuit] appl[ies]

22   'the general rule that a party claiming fair use must act in a manner generally

23   compatible with principles of good faith and fair dealing.'"  *Monge*, 688 F.3d at 1173

24   n.6 (quoting *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1164 n.8 (9th Cir.

25   2007)).  Put more directly, an infringer's "[b]ad faith can bar the fair use defense."

26   *Norse v. Henry Holt & Co.*, 847 F. Supp. 142, 147 (N.D. Cal. 1994) (citing *Fisher*

27

28

*v. Dees*, 794 F.2d 432, 437 (9th Cir. 1986)).

Infowars's conduct epitomizes bad faith.  Mr. Furie filed his original complaint in this action on March 5, 2018, identifying the then-sold edition of the MAGA Poster as infringing.  *See* Complaint (Dkt. 1) at ¶ 6.  **The very next day**, Infowars released a "New Limited Edition" MAGA Poster, again prominently featuring Pepe.  *See* Furie Ex. 86 at -86; Furie Ex. 52 (Dkt. 85-52) at 6:10-17] (Alex Jones plugging new limited edition MAGA Poster on March 6, 2018).  Remarkably, in its advertising for the new version of the MAGA Poster, Infowars admitted it would be forced to stop selling it (presumably because of its infringement): "Limited edition MAGA poster . . . There's only a few hundred left on this final run - **we'll be forced to take it down forever when we run out, so make sure you get this collectable poster today**!"  Furie Ex. 86 at -86 (emphasis in original); *see also* Furie Ex. 72 [David Jones Dep. Tr. at 120:11-15] (conceding that Infowars sold MAGA posters "even when it knew there were allegations of copyright infringement").  Even more remarkably, that same day, Infowars began to sell the new limited edition at **nearly twice the price** of the original MAGA poster—openly trading off of the publicity that Infowars's infringement of Mr. Furie's copyright had generated.  *Compare* Furie Ex. 86 ($29.95 on March 29, 2018) *with* Furie Ex. 59 (Dkt. 85-59) ($17.76 on January 19, 2018).

Infowars's sole shareholder and 30(b)(6) corporate designee Alex Jones admitted that Infowars charged this increased price precisely **because** of the publicity its infringement and this action had generated:

> Q.  So you increased the price of the poster after the lawsuit was filed; right?

> A.  Yes.  That still didn't work.

> Q.  And you increased it because the poster was in the news and now people might buy it?

A.  Yeah. They didn't.  They didn't.  It didn't do anything.

Q.  You were the one that made the decision to increase the price?

A.  Yes.  I said, "How many of this God damn thing do we have left?"
They told me.  I forget what it was.  I said, "Increase the price, you
know.  Maybe people want to buy this thing now." . . .

Furie Ex. 71 [Alex Jones Dep. Tr. at 61:14-62:2].  Mr. Jones admitted further that
the increase "would all be profit."  *Id.* at 65:12-17.  Having publicly admitted
infringement ("we'll be forced to take it down forever") and raised the price
"because the poster was in the news" as a result of Infowars's infringement, Mr.
Jones then went on *The Alex Jones Show* to plug the new "Limited edition" of the
MAGA Poster, and promised to "sign the last one hundred" MAGA Posters.  Furie
Ex. 52 (Dkt. 85-52) at 6:12-13]. Infowars thus infringed knowingly, willfully, and
deliberately—all for pure commercial gain.  Because it did not "act in a manner
generally compatible with principles of good faith and fair dealing," its fair use
defense is barred.  *Monge*, 688 F.3d at 1173 n.6.

b.    Infowars's Use of Pepe Was Commercial

The "fact that a publication was commercial as opposed to nonprofit is a
separate factor that tends to weigh against a finding of fair use." *Campbell*, 510 U.S.
at 585 (quoting *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539,
562 (1985)); *see also Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 530 (9th
Cir. 2008) ("[C]ommercial use of copyrighted material is 'presumptively an unfair
exploitation of the monopoly privilege that belongs to the owner of the copyright.'")
(quoting *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 451
(1984)).

Infowars sold MAGA Posters featuring Pepe for the purpose of making
money.  As Mr. Jones admitted, he was "irritated that more got ordered," because

"it wasn't a good seller."  Furie Ex. 71 [Alex Jones Dep. Tr. at 30:7-8].  Likewise, the *sole* reason that Infowars stopped selling the MAGA Posters was that they did not make money.  *Id.* at 105:25-106:5 ("You can't give them away.").  Moreover, Infowars knew that including Pepe in MAGA Posters would boost sales.  Mr. Jones himself admitted that, when he was evaluating a MAGA Poster for the first time, he "notice[d] Pepe the Frog," and he thought "oh, that's that stupid frog, but *I guess people like it*."  *Id.* at 30:19-24 (emphasis added).  Moreover, Infowars developed banner ads for Infowars.com to promote sales of MAGA Posters (*id.* at 54:21-55:1), and those banner ads featured Pepe prominently:



Furie Ex. 17 (Dkt. 85-17) at -4872.  Mr. Jones himself reviewed and approved the banner ad featuring Pepe to sell MAGA Posters.  Furie Ex. 71 [Alex Jones Dep. Tr. at 55:19-22].  Finally, purchasers of MAGA Posters commented (positively) on Pepe's appearance in MAGA Posters, in online reviews that Infowars displayed on its store website.  *See, e.g.*, Furie Ex. 59 (Dkt. 85-59) at -81 (reviewer commenting "Beautifully colored poster!  Love Pepe the frog in it!").  Thus, Pepe was intended to be, was promoted as, and was received as a driver for commercial sales of MAGA Posters.  That kind of "commercial use of copyrighted material" is "presumptively an unfair exploitation"—the antithesis of fair use.  *Leadsinger*, 512 F.3d at 530.

### c.    The MAGA Posters Do Not "Transform" Pepe

Infowars spends the bulk of its fair use analysis of factor one arguing that its use of Pepe in the MAGA Posters is supposedly "transformative," both "physical[ly]" and "contextual[ly]."  Infowars Br. at 11-13.  But it is neither.

PLAINTIFF'S MEM. IN OPP. TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Case No. 2:18-cv-01830-MWF-JPR

Physically, Pepe in the MAGA Posters was not meaningfully "transformed" from the original character and images. Jon Allen—the person who designed the original MAGA Poster—cut and pasted an online image of Pepe the Frog for it.[6] *See* Furie Ex. 73 [Allen Dep. Tr. at 23:19-21] ("Q. And where did the images of the different faces on the poster come from?  A. Online."); *id.* at 24:4-6 ("Q.  It's a digital cut-and-paste kind of thing?  A. Yes. . . ."); *id.*at 31:5-23 ("Q. Can you tell us what this is?  A. That is an image of Pepe.  Q. And where did you get this image? A. Again, same process: Google Image search. . . . Q. This is the image you used to get Pepe's likeness into your collage?  A. Yes.").  Infowars argues that Mr. Allen made various "alterations to the shading"—but "[m]inor changes . . . do not necessarily transform a work."  *Monge*, 688 F.3d at 1174.  Here, the image in the MAGA Posters was intended to depict Pepe, is instantly recognizable as Pepe, and was in fact recognized as Pepe by both Infowars's employees and customers.[7]  *See*

---

[6] The fact that Mr. Allen copied an "image of Pepe drawn by a third party" (Infowars Br. at 11) rather than one of Mr. Furie's original drawings is not relevant.  Infowars does not dispute that the image that Mr. Allen directly copied was, itself, derived from an image created by Mr. Furie.  *See* Infowars Br. at 11 (conceding that Pepe in MAGA Posters is "a derivative work of a derivative work").  Mr. Furie's copyrights extend to derivative works.  *See* 17 U.S.C. § 103 (copyright "includes compilations and derivative works").

[7] In fact, Alex Jones himself testified that part of the supposed "originalness" of the MAGA Posters was that the characters were modified to have a "stoned look." Furie Ex. 71 [Alex Jones Dep. Tr. at 79:1-2].  That "stoned look" is a key part of Pepe's character.  *See, e.g.*, Furie Ex. 8 (Dkt. 85-8) (describing Pepe as "stoner-eyed"); Furie Ex. 16 (Dkt. 85-16) (describing Pepe as a "stoned bro-phibian").  Thus, to the extent that Mr. Allen's "alterations to the shading" physically transformed Pepe at all, it only emphasized one of his key character traits.  *See Walt Disney Prods. v. Air Pirates*, 581 F.2d 751, 758 (9th Cir. 1978) (rejecting fair use defense to copying of cartoon character where "the copying of the graphic image appears to have no other purpose than to track Disney's work as a whole as closely as possible").

---

1  Furie Ex. 73 [Allen Dep. Tr. at 129:19-24] ("Q. Pepe is recognizable as Pepe the
2  Frog in your image; right?  A. Yes.  Q. It's important that Pepe be recognizable in
3  your poster; right?  A. Yes."); Furie Ex. 72 [David Jones Dep. Tr. at 64:5-9] ("Q.
4  You recognize this to be Pepe the Frog. Correct?  A. I recognize Pepe about the
5  degree I would recognize some of the other more obscure characters. . . ."); Furie
6  Ex. 59 (Dkt. 85-59) at -81 (reviewer recognizing Pepe).  A visual comparison
7  confirms that any physical transformation was minimal:

 

13  Infowars's "contextual" transformation argument is likewise flawed.  Merely
14  using Pepe for a different purpose in a different context is not "transformative" use
15  for purposes of copyright law.  "A 'difference in purpose is not quite the same thing
16  as transformation . . . .'"  *Peterman v. Republican Nat'l Comm.*, 320 F. Supp. 3d
17  1151, 1158 (D. Mont. 2018) (quoting *Infinity Broad. Corp. v. Kirkwood*, 150 F.3d
18  104, 108 (2d Cir. 1998)).  Rather, "the 'heart' of a claim for transformative use is
19  'the use of some elements of a prior author's composition to create a new one that,
20  at least in part, ***comments on that author's works***.'"  *Monge*, 688 F.3d at 1175
21  (quoting *Campbell*, 510 U.S. at 580) (emphasis added).  But Infowars itself has
22  conceded that the MAGA Posters are ***not*** a comment on Pepe.  Specifically, David
23  Jones—speaking as the 30(b)(6) corporate representative of Defendant Free Speech
24  Systems, LLC on the topics of "The MAGA poster, including any creation [and]
25  design" and Infowars's "knowledge and/or awareness of Pepe the Frog"— stated
26  unequivocally that the MAGA Posters were not about Pepe the Frog:  "Q. Is this
27  poster about Pepe the Frog? A. No." Furie Ex. 72 [David Jones Dep. Tr. at 62:12-

PLAINTIFF'S MEM. IN OPP. TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Case No. 2:18-cv-01830-MWF-JPR

13].  The MAGA Posters' designer, Mr. Allen, confirmed this.  *See* Furie Ex. 73 [Allen Dep. Tr. at 122:15-16] ("Q. So is the poster about Pepe?  A. No. It's just a part of it.").  Infowars essentially concedes as much in its brief, when it admits that the use of Pepe in the MAGA Posters "is a commentary on the nature of and key players in the 2016 election" (not apparently a comment on Mr. Furie or his works) and is in fact "entirely different from any work of Mr. Furie's."  Infowars Br. at 13. Given these admissions, Infowars cannot satisfy the requirement that a transformative use "comment[] on [the] author's works."  *Monge*, 688 F.3d at 1175.

Finally, Infowars's commercial use significantly undercuts its "transformative use" argument.  *See id.* at 1177 ("Maya's minimal transformation of the photos is substantially undercut by its undisputed commercial use.")  At minimum, there are disputed issues of fact precluding a finding that the MAGA Poster's use was "transformative" at the summary judgment stage.

### d.    The MAGA Posters Are Not Parodies of Pepe

Infowars also argues in passing (and confusingly) that the MAGA Posters are not a "direct parody," but nonetheless "parody" Pepe.  Infowars Br. at 13.  Like transformative use, the key to a claim of parody is that the parody comment on the original work—not merely that it use the original work to make a separate point. *See, e.g.*, *Campbell*, 510 U.S. at 580; *see also id. at* 597 (Kennedy, J., concurring) ("[P]arody may qualify as fair use only if it draws upon the original composition to make humorous or ironic commentary about that same composition.  It is not enough that the parody use the original in a humorous fashion, however creative that humor may be.").  As discussed above, the MAGA Posters—by Infowars's own admission—do not comment on Pepe.  *See supra* § II(C)(1)(c).  And in any event, Infowars's corporate designee conceded that the MAGA Posters are not parodies: "Q. Okay. Is the use of Pepe in the MAGA poster parody?  A. I don't think so."

12

Furie Ex. 72 [David Jones Dep. Tr. at 172:2-4].

### 2. Factor Two: The Fanciful Nature of the Copyrighted Work Does Not Support Fair Use

Infowars tries to diminish the significance of factor two (*see* Infowars Br. at 14), presumably because the factor so obviously counsels against a finding of fair use here. But the law is clear: "the more creative a work, the more protection it should be accorded from copying." *Leadsinger*, 512 F.3d at 531 (quoting 4 Nimmer on Copyright § 13.05[A][2][a]). Pepe is a fictional cartoon character, created from the mind of Matt Furie. This factor thus *heavily* favors Mr. Furie. *See, e.g.*, *United Feature Syndicate, Inc. v. Koons*, 817 F. Supp. 370, 380 (S.D.N.Y. 1993) ("'Odie' is a fictional character created by James R. Davis as part of the Garfield comic strip, in anticipation of financial return. Moreover, 'Odie' clearly must be classified as a creative and imaginative character and, thus, the second factor weighs heavily in plaintiff's favor."); *see also Walt Disney*, 581 F.2d at 756 (rejecting fair use defense in case involving comic characters).

Infowars argues that Pepe has been the subject of "meme-ification" and invites the Court to conclude that, as a result, Pepe has "traveled deeply into the public domain." Infowars Br. at 14. Notably, Infowars cites no authority for the proposition that "meme-ification" of an image or character somehow destroys—or even diminishes—the original author's copyright interest. To the contrary, an author's copyright in a meme can be and regularly are held, licensed, and enforced. The very case that Infowars cites as authoritative on memes—*Grumpy Cat Ltd. v. Grenade Beverage LLC*, 2017 WL 9831408 (Dec. 1, 2017)—itself involved a license agreement to a meme copyright. Put simply, "meme-ification" is not a thing.

### 3. Factor Three: Infowars's Copying of Nearly All Distinctive Features of Pepe Does Not Support Fair Use

"The taking of the 'heart' of the work generally weighs against a finding of

PLAINTIFF'S MEM. IN OPP. TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Case No. 2:18-cv-01830-MWF-JPR

fair use." *Morris v. Young*, 925 F. Supp. 2d 1078, 1087 (C.D. Cal. 2013). That is precisely what the MAGA Posters' use of Pepe has done. Pepe is typically depicted as an anthropomorphic frog with large, rounded red/brown lips, bulging eyes (often with multiple white dots in the pupils), puffy eyelids, and a human-shaped body. Furie SUF (Dkt. 87) at ¶¶ 2, 3, 17. The copy of Pepe that appears in the MAGA Posters includes every one of these characteristics except for Pepe's body (which is cropped out). This is presumably why everyone who has been asked about the MAGA Posters immediately recognized the frog as Pepe. *See supra* at 10.

Infowars argues that the copied characteristics of Pepe are "standard, stock, or common to a particular subject matter." Infowars Br. at 15 (citing *Satava v. Lowry*, 323 F.3d 805, 810 (9th Cir. 2003)). But apart from perhaps bulging eyes, none of these characteristics are typical of frogs. In fact, the El Sapo that Infowars (wrongly) accuses Mr. Furie of copying features none of them—its lips are not large or red/brown, its eyes do not have multiple dots, and its eyelids are not puffy. *See* Furie Br. (Dkt. 86) at 18 (comparing Pepe and El Sapo). There is nothing "stock" about what Infowars copied.[8] Finally, Infowars argues that Pepe appears in "fewer than half" of the pages of the Boy's Club comics. Infowars Br. at 16. But this too is irrelevant: Mr. Furie's copyrights each encompass the character of Pepe, not just any one singular image of Pepe. *See DC Comics v. Towle*, 989 F. Supp. 2d 948, 965 (C.D. Cal. 2013) ("The owner of a copyright in various works embodying a character can acquire copyright protection for the character itself."); *Warner Bros. Inc. v. American Broad. Co., Inc.*, 720 F.2d 231, 235 (2d Cir. 1983) ("Plaintiffs own the

---

[8] Infowars argues that "there is relatively little of Mr. Furie's work used" in the MAGA Posters as a whole. Infowars Br. at 15. But the fact that Pepe is only one of several characters on the poster is not relevant to the analysis of this factor. "As the statutory language indicates, a taking may not be excused merely because it is insubstantial with respect to the *infringing* work." *Harper & Row*, 471 U.S. at 565.

copyrights in various works embodying the character Superman and thereby have acquired copyright protection for the character itself."); *see also Walt Disney*, 581 F.2d at 758 (rejecting fair use defense to copying of cartoon character where "the copying of the graphic image appears to have no other purpose than to track Disney's work as a whole as closely as possible").

### 4. *Factor Four: Copying of the Type Infowars Has Done Would Adversely Affect the Potential Market for Pepe*

On the fourth factor, Infowars is wrong on both the law and the facts. Preliminarily, "when 'the intended use is for commercial gain,' the likelihood of market harm 'may be presumed.'" *Leadsinger*, 512 F.3d at 531 (quoting *Sony*, 464 U.S. at 451). Infowars's infringement was intended for and resulted in commercial gain, and therefore market harm can be presumed.[9] *See supra* § II(C)(1)(b).

Even if it could not be presumed, under this factor, courts must consider "'whether unrestricted and widespread conduct of the sort engaged in by the defendant . . . would result in a substantially adverse impact on the potential market' for the original." *Campbell*, 510 U.S. at 590 (quoting Nimmer on Copyright § 13.05[A] [4]). "[T]o negate fair use one need only show that if the challenged use should become widespread, it would adversely affect the *potential* market for the copyrighted work." *Monge*, 688 F.3d at 1182 (quoting *Harper & Row*, 471 U.S. at 568) (emphasis in the original). "The enquiry 'must take account not only of harm to the original but also of harm to the market for derivative works.'" *Campbell*, 510 U.S. at 590 (quoting *Harper & Row*, 471 U.S. at 568).

Here, Mr. Furie has an active practice of licensing Pepe for use in derivative works. As Infowars itself concedes, Mr. Furie has licensed Pepe for a clothing line, a stuffed animal, a phone charging device, a film, a card game, and a set of emoji

---

[9] This presumption is weaker when the use is "transformative"—but as discussed above, Infowars's use was not. *See supra* § II(C)(1)(c).

symbols.  *See* Infowars's SUF ¶¶ 30-37.  These license agreements show that there is a market for these derivative works.  Mr. Furie is also a working artist, who has made and sold posters featuring characters that he created—suggesting that there is a market for posters featuring his work.  *See, e.g.*, Furie Ex. 89; Furie Ex. 90; Furie Ex. 70 [Furie Dep. Tr. at 99:10-17] (describing black light poster that Mr. Furie designed with different characters); *id.* at 115 (explaining that Mr. Furie sold copies of the blacklight poster).  Each of these "market[s] for derivative works" would be potentially harmed by the "unrestricted and widespread" sale of unlicensed posters featuring Pepe, like the MAGA Posters.  *See Campbell*, 510 U.S. at 590.

Moreover, the MAGA Poster's association of Pepe with widely despised public figures—including Alex Jones himself—harms the market for derivative works featuring Pepe.  Infowars argues that "an unwelcome political association is not market harm recognized under this factor."  Infowars Br. at 18 (citing nothing).  But no law says that market substitution is the only kind of cognizable economic harm; rather, an author has the right to decide "whether and in what form to release his work."  *Monge*, 688 F.3d at 1172, 1182 (explaining that use that "infringes the copyright holder's interests in confidentiality and creative control is difficult to characterize as 'fair'") (quoting *Harper & Row*, 471 U.S. at 564).  Mr. Furie has already been harmed by Pepe's (wrongful) connection with entities that he specifically does not approve of.  For example, sales of the "Pepe Official" clothing line were hurt by Pepe's affiliation with hate groups.  *See* Furie Ex. 31 (Dkt. 85-31) at -89 (confirming that distributor "Zumiez" dropped "Pepe Official" clothing line because of "the hate symbol thing").

The MAGA Posters place Pepe side-by-side with public figures that are widely despised, diminishing the value of Pepe.  Chief among those despised figures is Alex Jones.  Mr. Jones admitted that he personally—and Infowars more generally—have been the subject of "negative press attention."  Furie Ex. 71 [Alex

Jones Dep. Tr. at 108:4-9].  More specifically, Mr. Jones admitted that videos of *The Alex Jones Show* were removed from various public platforms following allegations that he had assaulted a child—though he contended that this was "fake news" put forward by the "countering disinformation propaganda center at the CIA" (whatever that is).  *Id.* at 38:17-25.  Mr. Jones also admitted that he was removed from the Twitter social media platform for bullying.  *Id.* at 40:4-13.  The MAGA Posters also associate Pepe with Roger Stone, who has been indicted on obstruction, lying to Congress, and witness tampering charges.  *See* Furie Ex. 93.  Given the harm that alt-right use of Pepe has already caused, the association of Pepe with widely despised figures of the type depicted in the MAGA Posters would, if "unrestricted and widespread," adversely affect the potential market for derivative works.

Finally, Infowars argues that this factor supports it because Mr. Furie has not "disclosed an expert who could opine" on potential harm.  Infowars Br. at 18.  But Infowars misunderstands the burden: "the defendant bears the burden of proof" on fair use.  *Monge*, 688 F.3d at 1170.  Thus, it was ***Infowars*** that had the obligation to come forward with evidence concerning the relevant markets.  In fact, in the *Campbell* case, the Supreme Court relied on the ***defendant's*** failure to introduce evidence concerning the relevant markets to conclude that summary judgment on fair use was unavailable.  "Since fair use is an affirmative defense, its proponent would have difficulty carrying the burden of demonstrating fair use without favorable evidence about relevant markets."  *Campbell*, 510 U.S. at 590 (footnotes omitted).  Infowars is in an even worse position than the defendant in *Campbell*: Infowars conceded that there is a "***lack of evidence of effect on the market***." Infowars Br. at 20.  This concession is fatal where Infowars bears the burden.

### D.    Mr. Furie Did Not Abandon or Grant a License to His Copyrights

It is Mr. Furie—not Infowars—that should be granted summary judgment on

PLAINTIFF'S MEM. IN OPP. TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Case No. 2:18-cv-01830-MWF-JPR

Infowars's defenses of abandonment and implied license. *See* Furie Br. (Dkt. No. 86) at 8-17.

### 1. *Mr. Furie Did Not Abandon His Copyrights*

Infowars rightly concedes that whether a public statement can result in abandonment depends on the "specific words" of the speaker. Infowars Br. at 20 n.13 (discussing *Marya v. Warner/Chappell Music, Inc.*, 131 F. Supp. 3d 975 (C.D. Cal. 2015)). Yet Infowars's brief never once quotes the "specific words" it is relying on. That is because none of Mr. Furie's "specific words" are "indicative of a purpose to surrender the rights" to Mr. Furie's work, as would be required for abandonment. *See Hampton v. Paramount Pictures, Corp.*, 279 F.2d 100, 104 (9th Cir. 1960).

Here is what he actually said:

**April 12, 2015 *Daily Dot* Article (Infowars SUF 19):**

> *I believe in supporting people's decisions to profit off of Pepe in order to provide them with the most positive business experience possible. I strive to be an advocate for Pepe in both love and enterprise and hope to help business people to have an empowering and joyful experience while making an ocean of profits as limitless as the universe.*

This article is a sarcastic joke interview (akin to an article published through *The Onion* humor website). Its tone would make clear to anyone who actually read it that it is a joke: for example, in the same article, Mr. Furie is quoted as saying, "As your God, my hope is to enhance your Pepe birthing experience by empowering you through it. Obey Pepe. Obey Me. Bow down to your leader. Worship me. Give me genital love or non-genital love. Both are wonderful." Furie Ex. 64 (Dkt. 88-64) at -348.[10] In his email to the article's author, Mr. Furie made his humorous intent clear: "I hope you enjoy reading my answers as much as I enjoyed writing them."

---

[10] Another of the articles Infowars relies on refers to this interview as "deep sarcasm." *See* Infowars Ex. 18 (Dkt. 88-22) at 3.

Furie Ex. 74 at -989.  Mr. Furie has testified repeatedly that the article was sarcastic.  *See e.g.*, Infowars Ex. 14 (Dkt. 88-18) at 6 ("Plaintiff further states that, in context, this statement was made sarcastically"); Furie Ex. 70 [Furie Dep. Tr. at 158:3] (characterizing Daily Dot Article as "satire").

**August 2010 *Know Your Meme* Article (Infowars SUF 18):**

> *I don't really mind . . . I was like it doesn't look the greatest but I don't care.*
>
> *I think it kind of just took a life of its own.  I do think it's kind of an interesting phenomenon that out of anything else in the comic it took off.  Seems kind of random.  But I am happy that it has.*

Nowhere in this article does Mr. Furie (or the interviewer) mention rights, copyrights, or commercial uses of Mr. Furie's work at all.  He is asked instead specifically about being a "meme creator" and his "influence on the social web." Furie Ex. 47 at -323.  Later in the article, Mr. Furie specifically states, "I'm glad I'm getting some kind of credit" for creating Pepe.  *Id.*

**July 28, 2015 *Vice* Article (Infowars SUF 20):**

> *I don't really see it as being something that's negative.  It's almost post-capitalist kind of success.  I'm not making any money off of it.  But it has just become its own thing like an internet culture . . . I'm just flattered by it.  I don't really care.  I think it's cool.  In fact, I'm getting kind of inspired by all the weird interpretations of it.  I wanna use it to my own advantage and try to come up with comics based on people's interpretations of it.*
>
> *No, because I do art outside of Boy's Club, and I reference Terminator or Ronald McDonald or other pop-cultural stuff that I didn't come up with. If I see someone selling something on Etsy, like a Pepe pin or something, I just ask them to send me some. I have a little collection of bootleg Pepe stuff, some t-shirts and a necklace and an earring and some pins and things like that.*

This article likewise makes no mention of copyrights.  *See* Furie Ex. 9 (Dkt.

85-9).  Infowars pulls a portion of Mr. Furie's quote—"I don't really see it as being something that's negative.  It's this post-capitalist kind of success."—out of context. The entire quote makes clear that Mr. Furie is speaking of "janky" drawings that look "like little kids are using MS Paint to do it or something," and "meme success." *Id.* at 4-5.  Infowars also relies on Mr. Furie's statement that "If I see someone selling something on Etsy, like a Pepe pin or something, I just ask them to send me some." *Id.* at 6.  But if anything, this is a statement that Mr. Furie requests compensation for sales of Pepe merchandise, not that he has abandoned his rights.  Nor does Mr. Furie's statement that he references "other pop cultural stuff" in his art have any bearing on his rights to Pepe.

**September 13, 2016 *New York Magazine* Article (Infowars SUF 21)**

> *I've realized that Pepe is beyond my control . . . He's like a kid, he grew up and now I have to set him free to live his life.  It's all good.*

This article again does not reference commercial use or copyright.  The statement is anything but an overt expression of intent to abandon—even the article's author prefaces it with "These days, it's still hard to tell how [Furie] feels about what's happened to his most famous character."  Furie Ex. 8 at -1370.

**September 13, 2016 *Daily Dot* Article (Infowars SUF 22)**

> *It's just a phase, it's not the first time Pepe has been reclaimed for evil, and no one will care about it come November.  I predict that his sly, lovable, and charming status will be intact as early as next week.*

This statement was made in response to a question about pro-Trump memes— not commercial use or Mr. Furie's copyright.  Infowars Ex. 19 (Dkt. 88-23) at 3. And it cannot be (seriously) taken as any kind of express statement of abandonment. If anything, it is intended as humorous: later in the article, Mr. Furie says, "Pepe is a shape-shifter that will soon save humanity and the whales and the frogs and the bees and bring people together in love and friendship and peace."  *Id.* at 4.

PLAINTIFF'S MEM. IN OPP. TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Case No. 2:18-cv-01830-MWF-JPR

**September 13, 2016 *The Atlantic* Article (Infowars SUF 23)**

> *It's never bothered me. In fact, it's been kind of inspiring to me seeing how mostly kids and teenagers and the kind of youthfulness of Pepe is what I'm attracted to. And it's been an inspiration, and something that I'm proud of.*

> *My feelings are pretty neutral. This isn't the first time that Pepe has been used in a negative weird context. I just think that people reinvent him all these different ways. It's kind of blank slate. It's just out of my control what people are doing with it. My thoughts on it are more of amusement.*

> *I don't have any regrets about anything. I do my own thing. And if, anything, it's been kind of interesting to see all the evolutions of Pepe. Yeah, no regrets.*

None of Mr. Furie's statements in this article (on which Infowars relies) make any reference to his copyright. But later in the article, Mr. Furie ***does*** reference his right to enforce his copyright in Pepe: "I get emails pretty regularly, from kids, from high schools, ***who need my permission to use Pepe*** in their senior shirts, or their clarinet club, or their photography clubs, and I tell them to go ahead as long as they sell me a shirt." Furie Ex. 75 at -343 (emphasis added).

Remarkably, Infowars also relies—twice, once in bold—on a statement ***that was not even made by Mr. Furie*** about Pepe being "part of the public domain." Infowars Br. at 5, 22; Infowars SUF 27. A third party unconnected to Mr. Furie cannot abandon Mr. Furie's copyrights. Moreover, contrary to Infowars's assertions, Mr. Furie made clear public statements confirming that he owned and would enforce the copyright in Pepe. *See* Furie Br. (Dkt. 86) at 13-14 (collecting enforcement evidence, including Mr. Furie's 2016 statement in an *esquire.com* article that "Pepe the Frog is copyrighted by me."); Furie SUF (Dkt. 87) ¶ 72. Infowars's motion should be denied.

## 2. *There Was No License*

Infowars devotes a single sentence of its brief to the argument that these same statements created an implied license permitting the general public to use Pepe. Infowars Br. at 23. For Infowars to prevail on this defense at summary judgment, it bears the burden of identifying undisputed facts establishing "the same elements necessary to evidence an express contract: mutual assent or offer and acceptance, consideration, legal capacity and lawful subject matter." *Northstar Financial Advisors Inc. v. Schwab Investments*, 779 F.3d 1036, 1050-51 (9th Cir. 2015) (quoting 1 Richard A. Lord, Williston on Contracts § 1:5 at 37-38 (4th ed. 2007)).[11] Infowars does not even try to argue that Mr. Furie's statements meet *any* of the basic requirements of an implied contract. Thus, it is Mr. Furie—not Infowars—that should be granted summary judgment on license. Furie Br. (Dkt. 86) at 8-13.[12]

Infowars further suggests that both Jon Allen and Alex Jones "reasonably

---

[11] The cases Infowars selectively quotes (*see* Infowars Br. at 21) do not establish that an implied license defense may proceed on any lesser showing. In *De Forest Radio*, the plaintiff engaged in direct negotiations with the U.S. military and ultimately allowed it to use its patented device. *See De Forest Radio Tel. & Tel. Co. v. United States*, 273 U.S. 236, 239-40 (1927). Similarly, in *Field v. Google*, the plaintiff knew that tagging his webpage in a particular way would communicate to Google that he permitted Google to access and use his copyrighted material. *See Field v. Google, Inc.*, 412 F. Supp. 2d 1106, 1116 (D. Nev. 2006). Thus, in both cases, the parties were engaged in a direct contractual relationship and knew of the defendants' intended use. Not so here, where all parties agree that Mr. Furie and Infowars have *never communicated* with each other (*see* Furie SUF (Dkt. 87) at ¶ 59), and there is no evidence that Mr. Furie even knew of Infowars's intended use of Pepe the Frog until *after* MAGA Posters went on sale. *See Kolodziej v. Mason*, 774 F.3d 736, 739, 743 (11th Cir. 2014) (lack of contact between parties demonstrates no mutual assent).

[12] Even to the extent any implied license existed, the record is replete with evidence that Mr. Furie's public enforcement activities revoked that license as early as September 28, 2016. *See* Furie Br. (Dkt. 86) at 13-14.

---

22

believed" that Mr. Furie had "impliedly licensed" Pepe when they created and decided to sell the MAGA Posters.  Infowars Br. at 22.  Apart from not being the test for implied license, Infowars's factual claim is demonstrably false.  Earlier in its own brief, Infowars unequivocally admits that "[w]hen he created the MAGA Poster, Mr. Allen . . . was not aware of Mr. Furie's existence."  Infowars Br. at 7 (citing Infowars SUF ¶ 45).  It is incongruous for Infowars then to argue, fifteen pages later, that "[d]ue to [Mr. Furie's] public statements and lack of enforcement efforts, Allen . . . reasonably believed that Furie had abandoned his rights to the public and otherwise had impliedly licensed its use."  Infowars Br. at 22.  If Mr. Allen did not even know of Mr. Furie's *existence* at the time he created the MAGA poster, how could he have any belief that Mr. Furie had granted a license?  This blatant contradiction in Infowars's own theory suggests that its abandonment and license defenses were created *post hoc* for purposes of this litigation.

As for Alex Jones, his testimony that he read, remembered, and relied on Mr. Furie's statements in the 2015 *Daily Dot* article (Ex. 71 [Alex Jones Dep. Tr. at 14:10-14; 19:13-25]) is an obvious fabrication.  *First*, Mr. Jones could not describe a single other *Daily Dot* article that he read during the same time period.  Ex. 71 [Alex Jones Dep. Tr. at 22:3-6] ("Q. What other Daily Dot articles do you remember from the 2015 timeframe?   A.   There have been some about just news, about computers, about politics.").  *Second*, as explained above, Mr. Furie's comments in the April 2015 Daily Dot article were obviously a joke (and would have been understood that way by anyone who actually read the article).  *See supra* § II(D)(1). The idea that Mr. Jones read the article in which Mr. Furie claimed to be "God," demanded "[w]orship," and referred to the "Pepe birthing experience"—and took it seriously and remembered it two years later when presented with a MAGA Poster featuring Pepe—strains credibility beyond the breaking point.  *Third*, there is no evidence at all corroborating Mr. Jones's claim that he read and relied on the *Daily*

*Dot* article.  The ***only*** contemporaneous evidence suggests the exact opposite.  The day after Mr. Furie filed this lawsuit, Mr. Jones discussed it on *The Alex Jones Show* and described in detail why he believed that the First Amendment (not any license) supposedly permitted his use of Pepe the Frog.  *See* Furie Ex. 52 (Dkt. 85-52) at 2:5-20 ("That's total freedom of speech.  It's political speech.  It's totally protected.").  Not once on that show did Mr. Jones suggest that he believed he had a license to use Pepe (based on the *Daily Dot* article or otherwise).  *Id.*  This omission indicates that Mr. Jones's new position and "memory" is litigation driven and not believable.

### E.   Mr. Furie is Entitled to Statutory Damages and Attorney's Fees

As to statutory damages, Infowars has the law right but the facts wrong.  Under 17 U.S.C. § 412(2), statutory damages and attorneys' fees are available only for acts of infringement that are "commenced" after registration.  As Infowars concedes, where a defendant commits some infringements before registration, and others after, the availability of statutory damages turns on whether any of the post-registration infringements are "sufficiently different from the initial act."  Infowars Br. at 24.  More specifically, the issue is whether there is any "legally significant difference between [the infringer's] pre and post-registration infringement."  *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 701 (9th Cir. 2008).

Infowars argues that "[t]here is no evidence that FSS sold more than one version of the poster" (Infowars Br. at 23)—but that is wrong.  Pre-registration, Infowars sold a first version of the MAGA Poster for $17.76.  Furie Ex. 59 (Dkt. 85-59) at -79.  Post-registration—and, more specifically, immediately after it was notified of its copyright infringement—Infowars sold a new "Limited edition MAGA poster," which it expressly marketed as infringing ("**we'll be forced to take it down**"), which it advertised as now including Alex Jones's autograph, and for which it charged $29.95.  *See* Furie Ex. 86 (noting poster is new "limited edition," indicating $29.95 price, and claiming that "**we'll be forced to take it down**

1   **forever**"); Furie Ex. 71 [Alex Jones Dep. Tr. at 61:14-62:2] (admitting $29.95 price

2   was because of lawsuit alleging infringement); Furie Ex. 52 (Dkt. 85-52) at 6:12-13

3   (explaining that Jones would "sign the last one hundred" of the New edition MAGA

4   Posters).  This "Limited edition," signed, higher priced MAGA poster is a different

5   "version," and thus the "commencement" of a new infringement for purposes of

6   § 412(2).  *See, e.g.*, *Fodor v. Los Angeles Unified Sch. Dist.*, 2014 WL 12235424, at

7   *15 & n.19, 17 (C.D. Cal. June 3, 2014) (finding plaintiff entitled to statutory

8   damages for post-registration edition of infringing book, but not for pre-registration

9   edition).  At minimum, whether the pre- and post-registration MAGA Posters are

10  sufficiently different is a disputed issue of fact.

11        Moreover, the availability of statutory damages turns not on differences

12  between the infringing works, but rather on whether there is a "legally significant

13  difference" between the "pre and post-registration *infringement*."  *Derek Andrew*,

14  528 F.3d at 701 (emphasis added).  Here, there are legally significant differences.

15  Pre-registration and pre-suit, Infowars contends that its behavior was innocent.  *See,*

16  *e.g.*, Dkt. 69, at ¶ 40 (asserting "Innocent Infringement" defense solely for

17  infringement "[p]rior to the filing of the Original Complaint on March 5, 2018").

18  But after this suit was filed, Infowars willfully and intentionally infringed by selling

19  the new "Limited edition" version.  *See supra* § II(C)(1)(a).  There is a "legally

20  significant difference" between Infowars's allegedly "innocent" pre-registration

21  infringement and its willful post-registration infringement.  *See, e.g.*, 17 U.S.C.

22  § 504(c)(2) (authorizing award of $150,000 per each willful infringement).  Infowars

23  is therefore not entitled to summary judgment on Mr. Furie's claim to statutory

24  damages and attorneys' fees.

25  **III.   CONCLUSION**

26        For the foregoing reasons, the Court should deny Infowars's motion for

27  summary judgment.

28

Dated: April 15, 2019

Respectfully submitted,

By: /s/ *Louis W. Tompros*

**Wilmer Cutler Pickering Hale and Dorr LLP**
Nancy Schroeder (SBN 280207)
350 S. Grand Ave. Suite 2100
Los Angeles, CA 90071
Tel.: (213) 443-5300
Fax: (213) 443-5400
nancy.schroeder@wilmerhale.com

Louis W. Tompros (*pro hac vice*)
Stephanie Lin (*pro hac vice*)
60 State Street
Boston, MA 02109
Tel.: (617) 526-6000
Fax: (617) 526-5000
louis.tompros@wilmerhale.com
stephanie.lin@wilmerhale.com

William C. Kinder (*pro hac vice*)
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Tel.: (212) 295-6509
Fax: (212) 230-8888
will.kinder@wilmerhale.com

*Attorneys for Plaintiff*
MATT FURIE