NANCY SCHROEDER (SBN 280207)
(nancy.schroeder@wilmerhale.com)
WILMER CUTLER PICKERING
    HALE AND DORR LLP
350 S. Grand Ave., Suite 2100
Los Angeles, CA 90071
Telephone: +213 443 5300
Facsimile: +213 443 5400

LOUIS W. TOMPROS (*pro hac vice*)          WILLIAM C. KINDER (*pro hac vice*)
(louis.tompros@wilmerhale.com)             (will.kinder@wilmerhale.com)
STEPHANIE LIN (*pro hac vice*)             WILMER CUTLER PICKERING
(stephanie.lin@wilmerhale.com)                 HALE AND DORR LLP
WILMER CUTLER PICKERING                     7 World Trade Center
    HALE AND DORR LLP                      New York, NY 10007
60 State Street                            Telephone: +1 212 230 8800
Boston, MA 02109                           Facsimile: +1 212 230 8888
Telephone: +1 617 526 6000
Facsimile: +1 617 526 5000

*Attorneys for Plaintiff Matt Furie*

## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATT FURIE,<br><br>                         Plaintiff,<br><br>        vs.<br><br>INFOWARS, LLC; FREE SPEECH SYSTEMS, LLC,<br><br>                         Defendants. | 2:18-cv-01830-MWF-JPR<br><br>**PLAINTIFF MATT FURIE'S REPLY IN SUPPORT OF HIS MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date: May 6, 2019<br>Time: 10:00 a.m.<br>Hon. Michael W. Fitzgerald<br>Case Filed: March 5, 2018<br>Trial Date: July 16, 2019 |

# TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................1

II.     ARGUMENT .................................................................................4

      A.      Infowars Cannot Rely on Evidence Not Disclosed During Discovery..............................................................................4

      B.      Infowars's "Implied or Explicit License" Defense Fails ....................7

      C.      Infowars's "Abandonment or Forfeiture" Defense Fails ....................8

      D.      Infowars's "Lack of Copyright" Defense Fails..................................10

      E.      Infowars's "Invalid Certificate of Registration" Defense Fails..........12

      F.      Infowars's "*De Minimis* Use" Defense Fails .......................................15

III.    CONCLUSION...............................................................................19

1
2

# **TABLE OF AUTHORITIES**

3

**Page(s)**

4
5

**Federal Cases**

6

*Apple Computer, Inc. v. Microsoft Corp.*,
  35 F.3d 1435 (9th Cir. 1994) ...............................................................14

7
8

*DC Comics v. Towle*,
  802 F.3d 1012 (9th Cir. 2015) ..............................................15, 18, 19

9
10

*De Forest Radio Tel. & Tel. Co. v. United States*,
  273 U.S. 236 (1927)...............................................................................8

11
12

*Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc.*,
  122 F.3d 1211 (9th Cir. 1997) ...........................................................14

13

*Field v. Google, Inc.*, 412 F. Supp. 2d 1106 (D. Nev. 2006) ....................8

14
15

*Grumpy Cat Ltd. v. Grenade Beverage LLC*,
  2017 WL 9831408 (C.D. Cal. Dec. 1, 2017)......................................18

16
17

*Hampton v. Paramount Pictures Corp.*
  279 F.2d 100 (9th Cir. 1960) ............................................................8, 9

18
19

*James Stewart Entm't, LLC v. L&M Racing, LLC*,
  2013 WL 12248146 (C.D. Cal. June 28, 2013)....................................6

20
21

*Low v. Trump Univ., LLC*,
  2016 WL 6732110 (S.D. Cal. Nov. 15, 2016)......................................6

22
23

*Marya v. Warner/Chappell Music, Inc.*,
  131 F. Supp. 3d 975 (C.D. Cal. 2015)..................................................9

24

*Melchizedek v. Holt*,
  792 F. Supp. 2d 1042 (D. Ariz. 2011) ............................................9, 10

25
26

*Northstar Financial Advisors Inc. v. Schwab Investments*,
  779 F.3d 1036 (9th Cir. 2015) .............................................................7

27
28

*Orellana v. Cty. of Los Angeles*,
  2013 WL 12122692 (C.D. Cal. Apr. 29, 2013) ....................................6

*Rosen v. R & R Auction Co., LLC*,
  2016 WL 7626443 (C.D. Cal. Aug. 31, 2016) ...................................19

*Selznick v. Wells Fargo Bank, N.A.*,
  2016 WL 6267938 (C.D. Cal. Aug. 31, 2016) .....................................5

*United Feature Syndicate, Inc. v. Koons*,
  817 F. Supp. 370 (S.D.N.Y. 1993) ...................................................18

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
  259 F.3d 1101 (9th Cir. 2001) ...........................................................4

*Zhang v. Am. Gem Seafoods, Inc.*,
  339 F.3d 1020 (9th Cir. 2003) ...........................................................5

**State Cases**

*Donovan v. RRL Corp.*,
  26 Cal. 4th 261 (2001), *as modified* (Sept. 12, 2001)............................8

**Federal Statutes**

17 U.S.C. § 103(b) ...............................................................................14

17 U.S.C. § 106(2) ...............................................................................14

**Federal Rules**

Fed. R. Civ. P. 26 ...................................................................................4

Fed. R. Civ. P. 37(c)........................................................................3, 4, 7

**Other Authorities**

Nimmer on Copyright § 3.05 (1993) ....................................................15

## I.      INTRODUCTION

Defendants Infowars, LLC and Free Speech Systems, LLC (collectively "Infowars") rest their opposition to Plaintiff Matt Furie's motion for partial summary judgment primarily on two key claims: (1) that Mr. Furie copied Pepe the Frog from the Argentinian character El Sapo Pepe ("El Sapo"); and (2) that "[t]he *actual* origin of Pepe in Blue Shirt" was "a user on the online forum <bodybuilding.com>" in 2009.  Infowars's Opposition (Dkt. 95) ("Opp.") at 2–3, 5–6.  Both claims are untrue.

***First***, even a cursory comparison of ***any*** Pepe drawing by Mr. Furie and ***any*** of the El Sapo images that Infowars alleges Mr. Furie copied shows that—apart from being amphibians—they do not resemble each other at all.  Take, for example, the images of Pepe and El Sapo that Infowars itself featured in its brief:

        

Pepe (2003)              Pepe (2006)              El Sapo (2010)[1]

Infowars argues—nonsensically—that it "strains credulity" to think that both Pepes are anything other than a copy of El Sapo.  Opp. at 2.  To the contrary, it "strains

---

[1] Infowars does not reveal the date that the El Sapo image on which it relies was actually published.  It appears that Infowars is relying on an image of El Sapo from the cover of a book entitled *El Sapo Pepe Salta Las Olas [Pepe the Toad Jumps the Waves]*, which, according to its ISBN number, appears to have been published in December 2010—well after the date of Mr. Furie's creation of Pepe.  But it was Infowars's burden (as the party asserting the affirmative defenses that are the subject of this motion) to identify a date.

PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
Case No. 2:18-cv-01830-MWF-JPR

credulity" to think that either of the two Pepes—or any Pepe that Mr. Furie ever drew—is a copy of El Sapo.  Pepe is drawn with three-dimensional perspective (not flat, like El Sapo), has puffy lips (rather than a mouth without lips), and has bulging upper and lower eyelids—features that make it (in both his original 2003 incarnation and his later 2006 incarnation) distinctly different from El Sapo.  And Mr. Furie's uncontroverted testimony was that he had never even seen El Sapo before this litigation; the best Infowars can say in response is that El Sapo was popular in Argentina and Mr. Furie once visited Mexico.

*Second*, Infowars is wrong to claim that the sad version of Pepe originated with the "not good man" image posted to *bodybuilding.com* in 2009, or that Mr. Furie copied a *bodybuilding.com* image in his own *Pepe in Blue Shirt*.  According to Infowars, "[t]he 'not good man' image differed significantly from Mr. Furie's prior drawings of Pepe the Frog."  Opp. at 12.  But Infowars is wrong: the 2009 "not good man" image is itself a colorized ***copy of an image that Mr. Furie drew*** in the very first *Boys Club*, published in 2006:







Mr. Furie's Pepe in *Boys Club #1* (2006)       *bodybuilding.com* "not good man" image (2009)       Mr. Furie's *Pepe in Blue Shirt* (2016)

PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
Case No. 2:18-cv-01830-MWF-JPR

*Compare* Infowars Ex. 2 (Dkt. 88-6) at FURIE_INFO_00000131 (Pepe in *Boys Club #1*) *with* Opp. at 6 ("not good man" image and *Pepe in Blue Shirt*).[2]   Just like Mr. Furie's own *Pepe in Blue Shirt*—and just like the Pepe in the infringing MAGA Posters—the Pepe in Mr. Furie's *Boys Club #1* has three white dots in his eyes, puffy lips, and bulging upper and lower eyelids.  Mr. Furie's *Pepe in Blue Shirt* is thus a derivative **of Mr. Furie's own prior work**—and fully entitled to copyright protection (as is his original).

Nor do any of Infowars's other arguments have merit.  For its "implied or explicit license" defense, Infowars does not even attempt to dispute that there is no evidence of mutual assent or consideration.  Opp. at 17.  For its "abandonment or forfeiture" defense, Infowars concedes that it is Mr. Furie's "verbatim" quotes that matter, but once again does not actually quote them—because they are nowhere near "unambiguously" abandoning his rights as Infowars contends.  Opp. at 19.  For its "*de minimis* use" defense, Infowars doubles down on its (wrong) claim that Mr. Furie did not draw a "sad" Pepe and misapplies the factors for copyright in characters (all of which favor Mr. Furie).  Opp. at 13.  And throughout its brief, Infowars improperly relies on evidence that it failed to produce, in violation of Rule 37(c).

Unfortunately, Infowars did not stop there.  Instead, Infowars used its brief to air baseless, inflammatory, and false allegations targeting Mr. Furie personally, claiming that he "lied to the Copyright Office," "stole someone else's rendition," made "brazen misrepresentations," "perjured himself," and—perhaps most cruelly—"spent his artistic career appropriating other artists' works."  Opp. at 1, 5,

---

[2] Infowars cannot reasonably claim not to have known that the "sad frog" originated with the image in Mr. Furie's *Boys Club*, rather than the "not good man" image (which copied Mr. Furie's image three years later).  ***Infowars itself*** submitted *Boys Club #1*—the issue in which the sad version of Pepe appears—as an exhibit in support of its own motion for summary judgment.  *See* Infowars Ex. 2 (Dkt. 88-6) at 18.

8, 11.  It is a shame that Infowars and its counsel elected to stoop this low.  But it is all the more reason why Mr. Furie's motion should be granted.  Infowars should not be allowed to use its affirmative defenses—for which it has no actual evidence—as an excuse to put Mr. Furie's personal and artistic integrity on trial in what should be a straightforward copyright infringement case.  Instead, the Court should grant summary judgment in Mr. Furie's favor on Infowars's baseless claims of implied or explicit license, abandonment or forfeiture, lack of copyright, invalid certificate of registration, and *de minimis* use.

## II.   ARGUMENT

### A.   Infowars Cannot Rely on Evidence Not Disclosed During Discovery

Infowars has violated Federal Rule 37(c) by relying on evidence that it did not previously disclose to Mr. Furie while discovery was open.  Rule 37(c) provides that if a party fails to disclose or supplement discovery as required by Rule 26, "the party is ***not allowed to use that information*** or witness to supply evidence on a motion . . . unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c) (emphasis added).  The exclusion of 37(c) is "self-executing" and "automatic" to "provide a strong inducement for disclosure of material."  *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001); *see also* Dkt. 77 [Order] at 7 ("All parties are reminded that . . . you can't use something at trial that wasn't timely disclosed.").

The overwhelming majority of the eighteen exhibits ("Infowars Opp. Ex.") filed by Infowars in support of its opposition (Infowars Opp. Exs. 2–12, 14, 15, 17, 18) were not produced during discovery.  These exhibits form the sole basis of Infowars's new theory—advanced for the first time in Infowars's opposition brief and "Statement of Additional Undisputed Facts"—that *Pepe in Blue Shirt* and Pepe's distinctive characteristics originated not with Mr. Furie, but with the "not good man" image purportedly posted on *bodybuilding.com* in 2009.  *See* Infowars SAUF (Dkt.

95-1) at ¶¶ 1–17.[3]  As explained *infra*, Infowars's new theory is wrong.  But it should be rejected in the first instance for Infowars's failure to disclose the new evidence on which it is based.

Mr. Furie's discovery requests specifically asked for "All documents concerning . . . the contentions in [Infowars's] Answer that . . . U.S. Copyright Registration No. VA0002074461 [*Pepe in Blue Shirt*] is invalid" and requested that Infowars "state the basis for any contention that . . . Plaintiff's claims are barred to the extent they rely on U.S. Copyright Registration No. VA0002074461."  Furie Ex. 94 at 21, 22; *see also* Furie Ex. 95 at 14, 15.  But Infowars chose not to produce the supposed "*actual* origin" image at all during fact discovery—nor did it ever identify or produce any of what it now includes as exhibits 2–12, 14 15, 17, or 18 to its opposition motion.  Instead, Infowars argued that Mr. Furie's requests were purportedly "an improper attempt to obtain an advance copy of a forthcoming motion for summary judgment."  Furie Ex. 95 at 14, 15.

As this Court and the Ninth Circuit have made clear, absent some explanation (and Infowars offers none), evidence that a party did not timely disclose should be automatically excluded.  *See Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1028 (9th Cir. 2003) (holding that, absent "substantial justification" for not disclosing relevant documents, district court may exclude evidence not produced in discovery under Federal Rule of Civil Procedure 37(c)(1)); *Selznick v. Wells Fargo Bank, N.A.*, 2016 WL 6267938, at *5 (C.D. Cal. Aug. 31, 2016) (rejecting introduction of new evidence at summary judgment (citing *Zhang*, 339 F.3d at 1028)).  Infowars is not excused from this requirement on the basis that Exhibits 2–12, 14, 15, 17, and 18

---

[3] Infowars's "Composite Exhibit 18" (*see* Infowars SAUF (Dkt. 95-1) at ¶ 18) purports to support its claims about El Sapo.  This document is also new and should be excluded for the same reasons as those related to the "not good man" image theory.

were (purportedly) publicly available, because the rules still require Infowars to "tell the opposing party which documents may be used at trial." *Orellana v. Cty. of Los Angeles*, 2013 WL 12122692, at *25 n.100 (C.D. Cal. Apr. 29, 2013) (rejecting argument that untimely production was harmless because documents were already in defendants' possession); *see also Low v. Trump Univ., LLC*, 2016 WL 6732110, at *8 (S.D. Cal. Nov. 15, 2016) ("[T]he fact that exhibits were publicly available does not justify Defendants' untimely disclosure.").

Infowars's failure to disclose Exhibits 2–12, 14, 15, 17, and 18 is thus neither justified nor harmless.  Infowars admits that the exhibits are new.  *See* Infowars SAUF (Dkt. 95-1) at ¶¶ 3–11, 13, 15, 17, 18 (acknowledging exhibits were "last accessed Apr. 15, 2019").  But it offers no explanation for why it failed to produce them during discovery.  To the contrary, the fact that these documents were publicly available well before this litigation commenced means that Infowars has no excuse for not producing them in response to Mr. Furie's discovery requests.  *See, e.g.*, *Low*, 2016 WL 6732110, at *8.  The harm posed by Infowars's new evidence is particularly great here, where it forms the basis of false and inflammatory allegations about Mr. Furie's personal and professional reputation.  Moreover, allowing Infowars to supplement its evidence ***after*** Mr. Furie's motion has identified the holes in Infowars's defenses—which Mr. Furie could only do based on the record at the time fact discovery closed—undermines Mr. Furie's ability to fairly litigate summary judgment arguments.  *See James Stewart Entm't, LLC v. L&M Racing, LLC*, 2013 WL 12248146, at *4–5 (C.D. Cal. June 28, 2013) (excluding documents not timely produced because plaintiffs would have been "forced to review documents well after the discovery cutoff, forcing plaintiffs to also have to prepare for defendants' use of this late-produced document does prejudice them").  The Court should therefore exclude Infowars's Opposition Exhibits 2–12, 14, 15, 17, and

18 as an "automatic" consequence of Infowars's failure to produce them under Rule 37(c), and disregard all of Infowars's arguments that rely on them.

### B. Infowars's "Implied or Explicit License" Defense Fails

Infowars does not dispute that, to prevail on its "implied or explicit license" defense, it bears the burden of showing "the same elements necessary to evidence an express contract: mutual assent or offer and acceptance, consideration, legal capacity and lawful subject matter." *Northstar Financial Advisors Inc. v. Schwab Investments*, 779 F.3d 1036, 1050–51 (9th Cir. 2015) (quoting 1 Richard A. Lord, Williston on Contracts § 1:5 at 37–38 (4th ed. 2007)).  Nor does Infowars dispute that Mr. Furie never had any communications with Alex Jones or Jon Allen that could serve as either an offer, mutual assent or consideration.  *See* Infowars Memo in Support of Motion for Summary Judgment (Dkt. 88-1) ("Infowars Br.") at 7 (citing Infowars SUF (Dkt. 88-3) at ¶ 45) ("[w]hen he made the MAGA Poster, Mr. Allen . . . was not aware of Mr. Furie's existence."); Furie SUF (Dkt. 87) at ¶ 62; Furie Ex. 6 (Dkt. 85-6) [David Jones Dep. Tr. at 136:9–11] ("Q. Did Mr. Furie ever communicate [a verbal offer] directly to Free Speech Systems? A. Not to my knowledge."); Furie SUF (Dkt. 87) at ¶ 59; Furie Ex. 57 (Dkt. 85-57) [Alex Jones Dep. Tr. at 81:2–81:4] ("Q. . . . [Y]ou've never communicated in any way with Matt Furie; right?  A. No."); Furie Ex. 6 (Dkt. 85-6) [David Jones Dep. Tr. at 135:8–21] (same); Furie Ex. 3 (Dkt. 85-3) [Furie Dep. Tr. at 192:19–20] ("Q. You never spoke with Mr. Jones? A. No.").

Infowars instead argues that it relied on public statements made by Mr. Furie in 2015 (Opp. at 16), but statements "disseminated to the public at large" are only "an invitation to consider, examine, and negotiate"—not an offer.  *Donovan v. RRL Corp.*, 26 Cal. 4th 261, 271 (2001), *as modified* (Sept. 12, 2001).  Infowars does not even bother to engage with the numerous cases cited by Mr. Furie regarding its license defense, instead selectively quoting from two cases that involved direct

PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
Case No. 2:18-cv-01830-MWF-JPR

communications between the purportedly contracting parties—a critical fact not present here.  *See* Opp. at 17 (citing *De Forest Radio Tel. & Tel. Co. v. United States*, 273 U.S. 236, 239–40 (1927) and *Field v. Google, Inc.*, 412 F. Supp. 2d 1106, 1116 (D. Nev. 2006), cases which concerned parties with contractual relationships engaged in direct communication).  Mr. Furie is therefore entitled to summary judgment on Infowars's "implied or explicit license" defense.

### C.   Infowars's "Abandonment or Forfeiture" Defense Fails[4]

Infowars's opposition—like its own motion for summary judgment—again emphasizes the importance of analyzing "verbatim" Mr. Furie's statements to determine whether there is "an overt act indicative of a purpose to surrender the rights and allow the public to copy."  Opp. at 16, 19 (citing *Hampton v. Paramount Pictures Corp.* 279 F.2d 100, 104 (9th Cir. 1960).  But just as it did in its own summary judgment motion, ***Infowars failed to quote "verbatim" a single one of Mr. Furie's actual statements***.  The reason for this is obvious: had Infowars quoted any of Mr. Furie's actual words in its brief, it could not have credibly argued that those words "unambiguously abandon copyright" as it contends.  Opp. at 19.

Instead, Infowars paraphrased Mr. Furie's interview statements as supposedly "tell[ing] the world that he consents to the copying, modifying, and distributing of Pepe the Frog, even with commercial use of the character."  Opp. at 20 (citing nothing).  As explained in detail in Mr. Furie's opposition to Infowars's Motion for Summary Judgment, none of Mr. Furie's ***actual words*** are "indicative of a purpose to surrender [his] rights." *Hampton v. Paramount Pictures, Corp.*, 279 F.2d 100, 104 (9th Cir. 1960); *see* Furie Opp. (Dkt. 92) at 18–21 (quoting Mr. Furie's words verbatim).  And, contrary to Infowars's repeated assertion that Mr. Furie did not

---

[4] Infowars's Opposition does not address forfeiture at all, and it is unclear whether they are maintaining that defense or have abandoned it.

PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
Case No. 2:18-cv-01830-MWF-JPR

enforce his copyrights, Mr. Furie made clear public statements confirming that he owned and would enforce his copyrights in Pepe. *See* Furie Br. (Dkt. 86) at 13–14 (collecting enforcement evidence).

Infowars's reliance on the *Marya* "Happy Birthday" case is misplaced for several reasons. ***First***, the *Marya* court **did not find abandonment** based on statements reported by *Time* Magazine; it expressly declined to decide this issue at summary judgment. *Marya v. Warner/Chappell Music, Inc.*, 131 F. Supp. 3d 975, 992–93 (C.D. Cal. 2015). This was precisely because the language on which the abandonment defense relied "could have been paraphrasing"—rather than addressing the copyright holder's statement verbatim. *Id.* at 993.

***Second***, the public statement considered by the *Marya* court was made specifically in the context of the speaker's property rights in the copyrighted *Happy Birthday* song. *Id.* (analyzing "a passage from a *Time* magazine article reporting on the *As Thousands Cheer* lawsuit."). As paraphrased in the *Time* article, the statement itself was that the copyright holder agreed that she "long ago resigned herself to the fact that her ditty had become common ***property of the nation***." *Id.* (emphasis added).

Infowars also cites *Melchizedek*, which involved the following statements, again specifically concerning the plaintiff's copyrights:

- "Some people believe that I am ***protecting my copyrights*** and don't understand that ***there are more important issues than copyrights***. The most important issue is the proper transmission of [the copyrighted material]."

- "So I had one of my workshops videoed and let the video go out to the world unrestrained. ***No control on the copyrighted material***."

- "Now, as far as my 'copyrighted material,' this was necessary in order for a publisher to publish a book . . . . But at the same time, personally ***I have never cared about the copyrights***."

- "*I don't care about copyrights* or any of that stuff."

*Melchizedek v. Holt*, 792 F. Supp. 2d 1042, 1047–48 (D. Ariz. 2011) (emphases added).  By contrast, none of Mr. Furie's statements relied on by Infowars for its abandonment defense are made in the context of his copyrights.  *See* Furie Opp. (Dkt. 92) at 17–21.  When Mr. Furie did speak publicly about his copyrights, it was to unambiguously express the opposite of what Infowars contends.  Mr. Furie said unequivocally, "Pepe the Frog is copyrighted by me."  Furie SUF (Dkt. 87) at ¶ 72.  Mr. Furie is therefore entitled to summary judgment on Infowars's "abandonment or forfeiture" defense.

### D.    Infowars's "Lack of Copyright" Defense Fails

Infowars's attempts to cast doubt on whether Mr. Furie created Pepe by pointing to El Sapo—a character purportedly from an Argentinean television program.  Opp. at 8; Infowars Ex. 43 (Dkt. 88-47).[5]  But instead of genuine disputes of material fact, Infowars offers only misstatements, speculation, and personal attacks.

Infowars asserts—without any citations—that the "only explanation" for changes in Pepe between his first appearance in *Playtime* and his second appearance in *Boys Club #1* "is Mr. Furie's visit to Mexico, where Pepe the Toad was popular and Mr. Furie was likely to have seen [El Sapo]."  Opp. at 8.  This is wholly unsupported by any actual evidence.  ***First***, Infowars appears to confuse Argentina with Mexico.  Infowars cites no evidence that El Sapo was ever seen—much less "popular"—in Mexico (or anywhere else outside of Argentina).  *Cf.* Infowars Ex. 43 (Dkt. 88-47) ("Pepe was born in 1988, in the program of Carlitos Bala that was

---

[5] To the extent Infowars's arguments regarding its "Lack of copyright" defense rely on Infowars Ex. 43 (Dkt. 88-47) or Infowars Opp. Ex. 18 (Dkt. 95-20), these arguments and exhibits should be disregarded, as explained *supra* § II.A. and Furie Opp. (Dkt. 92) § II.A.2.

PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
Case No. 2:18-cv-01830-MWF-JPR

broadcast by ATC [Argentina Televisora Color]. . . . together with Las Pepas, he plans to travel, as every year, Greater Buenos Aires, Federal Capital on winter vacations, and the interior of Argentina, from Tierra del Fuego to Jujuy . . . .”). ***Second***, there is no evidence that Mr. Furie was “likely to have seen” El Sapo in Mexico when he visited Tijuana and San Felipe in the summer of 2004. *See* Infowars SUF (Dkt. 88-3) at ¶ 70. Infowars offers no explanation for why a then-childless, 24-year-old artist would “likely” have been watching Argentinian children’s television programming on a summer trip to Tijuana. And of course, Mr. Furie testified unequivocally that he never saw El Sapo. *See* Furie SUF (Dkt. 87) at ¶ 80.

Infowars speculates “if we believe that this was just a big coincidence, then why did Pepe the Frog all of a sudden transform to become so similar to Pepe the Toad following Mr. Furie’s visit to Mexico? This is suspicious . . . .” Opp. at 9. But it is not at all “suspicious” because Pepe did ***not*** “transform to become so similar” to El Sapo—***they do not look similar at all***. There is no similarity between El Sapo and Pepe, either before 2004 (when El Sapo itself looked quite different than it does as depicted in Infowars’s brief) or after:[6]

---

[6] Infowars’s theory appears to be that Mr. Furie’s character changed to resemble the 2010 version of El Sapo after his 2004 trip to Mexico. But Infowars offers no explanation as to how Mr. Furie somehow saw the 2010 version six years before it existed. Opp. at 2.

PLAINTIFF’S REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
Case No. 2:18-cv-01830-MWF-JPR

1
2
3
4
5
6
7
8
9
10
11





El Sapo (2003) ( Infowars Opp. Ex. 18 (Dkt. 95-20) at 4)          El Sapo (2010) (Opp. at 2)          Pepe (2006) (Infowars First Ex. 2 (Dkt. 88-6) at -0121)

12      There is no actual evidence that Mr. Furie saw, knew of, or copied El Sapo.
13 He is therefore entitled to summary judgment on Infowars's "lack of copyright"
14 defense.

15      **E.      Infowars's "Invalid Certificate of Registration" Defense Fails**

16      Infowars argues that Mr. Furie's Certificate of Registration No.
17 VA0002074461 for *Pepe in Blue Shirt* (the "'461 registration") is invalid because,
18 according to Infowars, the work was "not an original work of Mr. Furie's" but
19 instead "a literal copy of the 2009 'not good man' image."  Opp. at 9, 11.
20 Specifically, Infowars claims that the "*actual* origin" of the image registered in the
21 '461 registration was an image purportedly published on *bodybuilding.com* in 2009.
22 *Id.* at 5.  Infowars is wrong.[7]

23      The *bodybuilding.com* image is not the "*actual* origin" of the image registered

24

25   [7] Infowars's arguments supporting its "Invalid certificate of registration" defense
26 rely exhibits on Infowars Opp. Exs. 2–12, 14, 15, 17, 18—none of which were
produced in discovery.  *See supra* § II.A.  Its arguments can and should therefore be
27 rejected on that basis alone.

28

PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
Case No. 2:18-cv-01830-MWF-JPR

in the '461 registration, and Infowars is demonstrably wrong to claim that the *bodybuilding.com* image "differed significantly from Mr. Furie's prior drawings of Pepe." Opp. at 5, 12. To the contrary, Mr. Furie himself drew and published a black-and-white version of that very image in 2006, in *Boy's Club #1*:







| Mr. Furie's Pepe in *Boys Club* (2006) | *bodybuilding.com* "not good man" image (2009) | Mr. Furie's *Pepe in Blue Shirt* (2016) |

Plainly, the "anonymous user" on *bodybuilding.com* that Infowars claims posted the "not good man" image (Infowars SAUF (Dkt. 95-1) at ¶ 3) copied Mr. Furie's image from *Boys Club #1*. The expression is the same. The eyes are the same (including the three dots). The puffy lips are the same. The disappointed face is the same. It is even possible to see at the bottom of the frame that the *bodybuilding.com* image showed Pepe's left shirt sleeve (which is depicted identically in Mr. Furie's *Boys Club #1* image). The *bodybuilding.com* image was a copy of Mr. Furie's own *Boys Club #1* image—just filled in with color, and with the addition of the "not good man" caption.

Moreover, Mr. Furie has never hidden the fact that his *Pepe in Blue Shirt* is

PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
Case No. 2:18-cv-01830-MWF-JPR

an expansion on his earlier drawing of Pepe in *Boys Club #1*.  Mr. Furie specifically identified this image from *Boys Club #1* in response to Infowars's interrogatory asking for his factual basis for authorship of the '461 application.  *See* Furie Ex. 96 at 12.  It is therefore surprising that—having reviewed that 2006 *Boys Club #1* drawing—Infowars would not only claim that Mr. Furie's later *Pepe in Blue Shirt* was based on a 2009 copy (rather than on his own original), but also go so far as to call Mr. Furie a liar for saying that it was his own work.  *See* Opp. at 5 (baselessly claiming that Mr. Furie's representation that *Pepe in Blue Shirt* "was his original work" "was a lie").

Infowars's brief also gets the law wrong on derivative works.  17 U.S.C. § 106(2) states clearly that a copyright owner has the right "to prepare derivative works based upon [a] copyrighted work."  Here, *Pepe in Blue Shirt* is an expansion and coloration of Mr. Furie's own prior drawing of Pepe in *Boys Club #1*.  Citing *Entertainment Research Group*, Infowars argues that the expanded torso and coloring of Pepe are "merely trivial" and therefore not subject to copyright protection.  Opp. at 11 (citing *Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1220 (9th Cir. 1997)).  But Infowars overlooks the key part of the Ninth Circuit's decision in *Entertainment Research Group*: its test applies only when the original work is itself copyrighted by a different author.  As the Ninth Circuit put it, "in deciding whether to grant copyright protection to a derivative work, courts must be concerned about the impact such a derivative copyright will have on the copyright privileges and rights of the owner of the underlying work." *Id.* at 1219 (citing 17 U.S.C. § 103(b)).  Here, the rights to *Pepe in Blue Shirt* and the rights to the "underlying work," *Boys Club #1*, **both** reside with Mr. Furie.  *See Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1447–48 (9th Cir. 1994) (holding that Apple owned copyrights in, and therefore could allege infringement of, **both** an original work and a derivative of that work. (citing Nimmer on Copyright § 3.05, at

3–32.2 (1993)).  It is unnecessary to decide whether adding color and a torso would or would not be "merely trivial"—because Mr. Furie is the author of both works. Mr. Furie is entitled to summary judgment on Infowars's "invalid certificate of registration" defense.

Finally, Infowars included a graphic representation of what it characterized as Mr. Furie's conduct "in meme form"—again (wrongly) accusing Mr. Furie of copying the *bodybuilding.com* image.  *See* Opp. at 10.  It appears that Infowars and its counsel do not take this case seriously.  But Mr. Furie does.  Infowars copied Mr. Furie's character for its posters, sold tens of thousands of dollars' worth of those posters, sold a new limited edition of the poster at an increased price to try to profit off of Mr. Furie's infringement allegations, and contributed to the association of Pepe with messages of hate.  Infowars and its counsel then compounded this misconduct by filing a brief falsely accusing Mr. Furie of lying, stealing, perjury, and "appropriating other artists' works."  Opp. at 1, 5, 8, 11.  Infowars may want to treat this case as a joke.  But its willful infringement and false allegations are no joke to Mr. Furie.

## F.  Infowars's "*De Minimis* Use" Defense Fails

In support of its *de minimis* use defense, Infowars argues that Pepe's internet popularity somehow eliminated Mr. Furie's copyrights in his own character. Infowars's analysis is unmoored from the facts and the law and should be rejected.

For a comic book character to receive copyright protection, it must (1) have "physical as well as conceptual qualities;" (2) be so "'sufficiently delineated' to be recognizable as the same character whenever it appears;" and (3) be "especially distinctive" and "contain some unique elements of expression."  *DC Comics v. Towle*, 802 F.3d 1012, 1021 (9th Cir. 2015).  As explained in Mr. Furie's opening brief, Mr. Furie's comic book character meets each of these requirements.  Furie Br. (Dkt. 86) at 21–23.  Pepe is a peaceful, frog-dude with a human body, puffy eyelids,

PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
Case No. 2:18-cv-01830-MWF-JPR

large bulging eyes (often with multiple white dots in the pupil as appearing in *Boy's Club #1*), and puffy lips. *See* Furie Ex. 10 (Dkt. 85-10) at FURIE_INFO_00000131; Furie Ex 7 (Dkt. 85-7); Furie Ex. 15 (Dkt. 85-15) at FSS000255; Furie Ex. 16 (Dkt. 85-16) at FSS000360. Pepe is widely recognizable, and widely recognized as a creation of Mr. Furie. *See* Furie Ex. 3 (Dkt. 85-3) [Furie Dep. Tr. at 148:3–9]; Furie Ex. 8 (Dkt. 85-8) at FURIE_INFO_00001368–00001369 ("His name is Pepe. You know Pepe. . . . [H]is creator [is] cartoonist Matt Furie."). And Pepe has unique elements of expression, such as a signature catch phrase: "feels good man." *See* Furie Ex. 14 (Dkt. 85-14) at FURIE_INFO_00000193; Furie Ex. 8 (Dkt. 85-8) at FURIE_INFO_00001368. Infowars does not dispute these facts, at least as they apply to Mr. Furie's character. *See* Infowars SGDF (Dkt. 95-1) at ¶¶ 2–3, 5–18. Nonetheless, Infowars maintains that Pepe's popularity as a meme has given the character a "different meaning" and thus stripped Pepe of copyright protection. Opp. at 13–15.

Infowars is wrong. ***First***, Infowars is wrong when it says that the purported "meme-Pepe" is "imbued with an entirely different meaning" than Mr. Furie's character. Infowars points to the *bodybuilding.com* image of Pepe as the primary example of the meme having distinct characteristics from *Boy's Club* Pepe. *Id.* But as explained above in sections I and II.D, the *bodybuilding.com* image ***is a direct copy of Boy's Club Pepe***:





Mr. Furie's Pepe in *Boys Club* (2006)    *bodybuilding.com* "not good man" image (2009)

*Compare* Furie Ex. 10 (Dkt. 85-10) at FURIE_INFO_00000131 *with* Infowars Opp. Ex. 2 (Dkt. 95-4) at 4.

Other features of *Boy's Club* Pepe are undisputedly present in the Pepe meme. For example, *Boy's Club* Pepe's signature catch phrase is "feels good man."  *See* Infowars SGDF (Dkt. 95-1) at ¶ 13 (undisputed by Infowars).  And the Pepe meme commonly appears with this same catch phrase.  *Id.* at ¶ 15 (undisputed by Infowars). Even Infowars's own (untimely) exhibits indicate that Mr. Furie's character is not distinct from the meme.  *See* Infowars Opp. Ex. 3 (Dkt. 95-5) at 1 ("The original Sad Frog artwork is ***based on Matt Furie's drawing*** of Pepe the Frog." (emphasis added)); Infowars Opp. Ex. 4 (Dkt. 95-6) at 1 ("The original Sad Frog drawing is ***based on Matt Furie's artwork*** of Pepe the frog" (emphasis added)); Infowars Opp. Ex. 8 (Dkt. 95-10) at 1 (Pepe is "popular on anonymous messaging board 4chan for . . . the catchphrase "Feels good man"); *id.* at 4 (describing Mr. Furie as the "creator" of the Pepe meme).  There is thus no factual basis for Infowars to argue that the purported "meme version" of Pepe is distinct from Mr. Furie's work.

***Second***, Infowars is wrong on the law.  At bottom, Infowars asserts that because Mr. Furie ***succeeded*** in creating a popular viral character, he somehow loses

copyright protection in his own creation.  But a character's copyright protection does not diminish with its increasing popularity.  Infowars's argument was soundly rejected in *United Feature Syndicate, Inc. v. Koons*, 817 F. Supp. 370 (S.D.N.Y. 1993), where the defendant argued that the "Garfield" cartoon characters were entitled to "less protection under the copyright laws" because they were so commercially successful and "pervasive" in society.  *Id.* at 380.  The Court disagreed, observing that the "popularity and commercial success of the Garfield characters" cannot diminish their copyright protection.  *Id.* "No matter how popular a character may become, the copyright owner is entitled to guard against the unauthorized commercial exploitation of that character." *Id.*  So too here.  Pepe's status as a popular internet meme does not lessen Mr. Furie's copyright interests in that character.  Infowars cites no cases for its contrary view—because no court has so held.[8]  Such a ruling "would thwart a fundamental purpose of the Copyright Act which is to foster creativity by assuring the creator of an original work that he or she will reap the exclusive benefits generated from the commercial success of the work." *Id.*  And contrary to Infowars's view, courts have routinely recognized copyrights in well-known and widely popular characters, including memes.  *See Grumpy Cat Ltd. v. Grenade Beverage LLC*, 2017 WL 9831408 (C.D. Cal. Dec. 1, 2017) (involving license to grumpy cat meme); *see also D.C. Comics*, 802 F.3d at 1020 (collecting

---

[8] Nor does Infowars cite any facts or authority for its unsupported (and nonsensical) claim that Mr. Furie's failure to "control" his character is to blame for Pepe "losing any conceptual distinctiveness the character may once had."  Opp. at 15.  The Court should reject this argument.

PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
Case No. 2:18-cv-01830-MWF-JPR

cases involving copyrights in famous characters, including Godzilla, Batman, and James Bond).[9]

Once this theory falls away, Infowars's *de minimis* use defense does too. Infowars admits that the MAGA Posters depict enough of Pepe for the character to be recognized.  *See* Infowars SGDF (Dkt. 95-1) at ¶¶ 44–46, 69, 70; Opp. at 13 (conceding that Pepe appears in the MAGA Posters).  Mr. Furie is therefore entitled to summary judgment on this defense.  *See Rosen v. R & R Auction Co., LLC*, 2016 WL 7626443, at *11 (C.D. Cal. Aug. 31, 2016) (summary judgment for plaintiffs on *de minimis* use defense where no evidence that image was unrecognizable to reasonable consumers).

## III.   CONCLUSION

For the foregoing reasons, the Court should enter summary judgment in favor of Mr. Furie on Infowars's first, third, fourth, seventh, and eighth affirmative defenses.

---

[9] Infowars cites *DC Comics v. Towle*, 802 F.3d 1012 (9th Cir. 2015) for the proposition that Pepe is not entitled to copyright protection because the meme "lack[s] conceptual consistency."  Opp. at 15.  But *DC Comics* stands for the exact opposite principle, and only strengthens Mr. Furie's claims.  In that case, the Ninth Circuit noted that a "a character may be protectable if it has distinctive character traits and attributes, even if the character does ***not*** maintain the same physical appearance in every context."  *Id*. at 1020 (emphasis added).  In each of the meme examples Infowars cites (Opp. at 13, citing Infowars Ex. 14 (Dkt. 88-14)), Pepe retains the same physical features that make him readily identifiable as Pepe.

Dated: April 22, 2019

Respectfully submitted,

By: /s/ *Louis W. Tompros*

**Wilmer Cutler Pickering Hale and Dorr LLP**
Nancy Schroeder (SBN 280207)
350 S. Grand Ave. Suite 2100
Los Angeles, CA 90071
Tel.: (213) 443-5300
Fax: (213) 443-5400
nancy.schroeder@wilmerhale.com

Louis W. Tompros (*pro hac vice*)
Stephanie Lin (*pro hac vice*)
60 State Street
Boston, MA 02109
Tel.: (617) 526-6000
Fax: (617) 526-5000
louis.tompros@wilmerhale.com
stephanie.lin@wilmerhale.com

William C. Kinder (*pro hac vice*)
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Tel.: (212) 295-6509
Fax: (212) 230-8888
will.kinder@wilmerhale.com

*Attorneys for Plaintiff*
MATT FURIE