UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 18-1830-MWF (JPRx)                    Date:  May 16, 2019
Title:      Matt Furie v. Infowars, LLC, et al.

Present:   The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

            Deputy Clerk:                          Court Reporter:
            Rita Sanchez                           Not Reported

            Attorneys Present for Plaintiff:       Attorneys Present for Defendant:
            None Present                           None Present

Proceedings (In Chambers):        ORDER RE: PLAINTIFF'S MOTION FOR
                                  PARTIAL SUMMARY JUDGMENT [84];
                                  DEFENDANTS' MOTION FOR SUMMARY
                                  JUDGMENT [88]

     Before the Court are two motions for summary judgment filed on April 8, 2019:

     First, there is Plaintiff Matt Furie's Motion for Partial Summary Judgment (the "Furie Motion").  (Docket No. 84).  Defendants Infowars, LLC ("Infowars") and Free Speech Systems, LLC ("FSS") filed an Opposition on April 15, 2019.  (Docket No. 95).  Plaintiff filed a Reply on April 22, 2019.  (Docket No. 107).

     Second, there is Defendants' Motion for Summary Judgment (the "Infowars Motion").  (Docket No. 88).  Plaintiff filed his Opposition on April 15, 2019.  (Docket No. 92).  On April 22, 2019, Defendants filed their Reply.  (Docket No. 102).

     The Court read and considered the papers submitted on the two motions and held a hearing on May 6, 2019.

     For the reasons discussed below, the motions are ruled upon as follows:

- The Furie Motion is **GRANTED *in part*** and **DENIED *in part***.  As to the affirmative defenses of abandonment and de minimis use, the parties have presented conflicting evidence and summary judgment is therefore inappropriate.  As to the affirmative defenses of lack of copyright, invalid

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.**  CV 18-1830-MWF (JPRx)                    **Date:  May 16, 2019**
Title:      Matt Furie v. Infowars, LLC, et al.

certificate of registration, and implied license, Defendants fail to rebut the undisputed evidence presented by Plaintiff.

- The Infowars Motion is **GRANTED** *in part* and **DENIED** *in part*.  On summary judgment, Defendants fail to establish that no rational jury could conclude that Infowars was incorrectly named as a Defendant.  And as in most cases, it is for the jury to determine whether Defendants have proven the defense of fair use.  Defendants, however, have presented undisputed evidence to show that Plaintiff is not entitled to statutory damages and attorneys' fees.

## I.    BACKGROUND

On March 5, 2018, Plaintiff commenced this copyright infringement action. (*See generally* Complaint (Docket No. 1)).

The following facts are based on the evidence, as viewed in the light most favorable to the non-moving party, either Plaintiff or Defendants where appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (On a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his [or her] favor.").

### A.    The Origin of Pepe the Frog

On November 18, 2003, Plaintiff first published an online comic book called *Play Time* that features Pepe the Frog as one of several characters.  (Plaintiff's Response to Defendants' Statement of Uncontroverted Facts ("DSUF") No. 1 (Docket No. 93); Defendants' Response to Plaintiff's Statement of Uncontroverted Facts ("PSUF") No. 1 (Docket No. 95-1)).  Pepe the Frog is not drawn in color in any panel within the comic and is typically depicted with large bulging eyes and multiple white dots in his pupils.  (DSUF No. 1; PSUF No. 2).  On some of the front and back covers, Pepe the Frog is drawn in color and is presented as having green lips and puffy eyelids. (PSUF No. 3).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 18-1830-MWF (JPRx)                    Date:  May 16, 2019
Title:       Matt Furie v. Infowars, LLC, et al.

Beginning in 2006, Pepe the Frog appeared in a series of comic books called *Boy's Club* that was published online and in print.  (*Id.* No. 4).  Like *Play Time*, *Boy's Club* featured Pepe the Frog as one of several characters.  (DSUF Nos. 2–6).

Between April and July 2007, Plaintiff published in print *Boy's Club 1*.  (PSUF No. 5; DSUF No. 2).  Only one drawing of Pepe the Frog is in color, which shows him with green lips.  (DSUF No. 2).  He is also shown as having one dot, two dots, or three dots in each eye in various panels throughout the comic.  (*Id.*).  He appears in 21 of the comic's 44 pages.  (*Id.*).

 On June 30, 2008, Plaintiff published in print *Boy's Club 2*.  (PSUF No. 6; DSUF No. 3).  Only two drawings of Pepe the Frog are in color, which shows him with green lips similar to how he was depicted in *Boy's Club 1*.  (DSUF No. 3).  He is shown as having one dot or three dots in each eye in various panels.  (*Id.*).  He appears in 26 of the comic's 44 pages.  (*Id.*).

On August 30, 2009, Plaintiff published in print *Boy's Club 3*.  (PSUF No. 7; DSUF No. 4).  Pepe the Frog is not drawn in color in this comic and is depicted as having only one dot in each eye.  (DSUF No. 4).  He appears in 17 of the comic's 44 pages.  (*Id.*).

On September 30, 2010, Plaintiff published in print *Boy's Club 4*.  (PSUF No. 8; DSUF No. 5).  Only one drawing of Pepe the Frog is in color, which shows him with green lips similar to how he was depicted in *Boy's Club 1* and *Boy's Club 2*.  (DSUF No. 5).  He is shown as having one dot in all but two panels, where he is shown with one half of a dot in each eye in one panel and multiple lines through each eye in another.  (*Id.*).  He appears in 25 of the comic's 44 pages.  (*Id.*).

On June 30, 2016, Plaintiff published in print *Boy's Club Collective Edition*, a compilation of the prior volumes.  (PSUF No. 9; DSUF No. 6).  Only two drawings of Pepe the Frog are in color, which show him with green lips.  (DSUF No. 6).  He is sometimes shown as having one dot, two dots, three dots, or lines in each eye.  (*Id.*).  He appears in 86 of the comic's 180 pages.  (*Id.*).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 18-1830-MWF (JPRx)                Date:  May 16, 2019
Title:      Matt Furie v. Infowars, LLC, et al.

Below are some depictions of Pepe the Frog in *Boy's Club*:



(Furie Opp. at 4).

Plaintiff described the character as a "chill frog dude" who has a lackadaisical attitude and enjoys spending time with his animal roommates.  (PSUF No. 10).  Plaintiff stated, for example, that Pepe the Frog likes "pop," "pizza," and "talking on his cell," and his signature catch phrase is "feels good man."  (*Id.* Nos. 12–13; DSUF No. 8.  Plaintiff described the comics as "celebrat[ing] the lifestyle of 20-something bros, capturing their lives full of junk food, catchphrases, and bodily fluids with horrifying and hilarious accuracy."  (PSUF No. 11).

On September 1, 2017, Plaintiff obtained copyright registrations for the various *Boy's Club* comics.  (*Id.* Nos. 25–31).

### B.     The Rise in Popularity of Pepe the Frog

By 2008, Pepe the Frog became a widespread internet meme, appearing throughout social media, online message boards, and other media sources.  (*Id.* No. 14).  He was commonly depicted with his "feels good man" catchphrase.  (*Id.* No. 15).  By 2010, the "meme phenomenon was kind of peaking for Pepe the Frog."  (DSUF No. 9).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 18-1830-MWF (JPRx)                  Date:  May 16, 2019
Title:      Matt Furie v. Infowars, LLC, et al.

One such meme was created by an anonymous user on August 17, 2009, in an online forum:



(Plaintiff's Response to Defendants' Additional Statement of Uncontroverted Facts ("DSAUF") No. 3 (Docket No. 108)).

In an online interview in August 2010, Plaintiff was asked, "How about the people that actually crop out Pepe's face and use it, how do you feel about people remixing your work?"  (DSUF No. 18).  Plaintiff responded, "I don't really mind . . . I was like it doesn't look the greatest but I don't care."  (*Id.*).  And when asked if he considered himself to be a "meme creator," Plaintiff answered that he thought that Pepe the Frog "took a life of its own" and that "it's kind of an interesting phenomenon that out of anything else in the comic took off."  (*Id.*).  Once Pepe the Frog became a meme, Plaintiff started to receive examples of works featuring the character, such as shirts, and did not "feel any particular happiness or unhappiness about it."  (*Id.* No. 11).  Rather, Plaintiff "was just kind of witnessing it as a phenomenon."  (*Id.*).

By 2014, famous celebrities such as Katy Perry and Nicki Minaj began publishing memes featuring Pepe the Frog and users of online message boards began posting thousands of works featuring Pepe the Frog and calling them "rare Pepes."  (*Id.* No. 12).  In 2015, he was the most reblogged meme on Tumblr.  (PSUF No. 16).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 18-1830-MWF (JPRx)                    Date:  May 16, 2019
Title:      Matt Furie v. Infowars, LLC, et al.

Plaintiff stated that Pepe the Frog's popularity as an internet meme eventually turned into a financial windfall for him.  (DSUF No. 24).

The parties dispute the meaning of Plaintiff's statements related to Pepe the Frog that were made in various interviews between April 2015 and September 2016.  (*Id.* Nos. 19–23; PSUF No. 37–40).  Plaintiff believes that his statements made in interviews were sarcastic and a joke or displayed pride for Pepe the Frog, while Defendants believe these public statements showed abandonment of Plaintiff's copyrights.

On December 20, 2016, Plaintiff created his own visual work called "Pepe in Blue Shirt," for which he obtained a copyright registration on September 1, 2017.  (*See* PSUF No. 32; DSUF No. 7).  The image is reproduced further below.

## C.    The Alleged Misappropriation of Pepe the Frog

Plaintiff asserts that, beginning in 2015, white nationalists and members of the "alt-right" began associating images of Pepe the Frog with white supremacist language and symbols, Nazi symbols, and other offensive imagery.  (PSUF No. 21; *see* DSUF No. 14).  Throughout 2015 and 2016, other third parties continued to use Pepe the Frog in images depicting the character as or with then-Presidential candidate Donald J. Trump alongside other conservative political figures.  (*Id.* No. 15; *see* PSUF No. 22). Around September 2016, news media began referring to Pepe the Frog as a "white nationalist symbol."  (DSUF No. 15).

In January 2017, non-party Jon Allen created the first Make America Great Again ("MAGA") poster.  (*Id.* No. 42; PSUF No. 43).  The MAGA poster is a collage of several politically significant figures during the 2016 presidential election season. (DSUF No. 43).  Pepe the Frog is featured in upper left corner.  (PSUF No. 44).

The MAGA poster is reproduced below:

CIVIL MINUTES—GENERAL                                                      6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 18-1830-MWF (JPRx)**                    **Date:  May 16, 2019**
Title:       Matt Furie v. Infowars, LLC, et al.



(Furie Mot. at 6).

In creating the MAGA poster, Mr. Allen used an image of Pepe the Frog that he found through a Google image search as his reference point.  (PSUF No. 45; DSUF No. 44).  That image was not drawn by Plaintiff.  (DSUF No. 44).  Mr. Allen was aware of Pepe the Frog as a meme but was not aware of Plaintiff's existence.  (*Id.* No. 45).  Prior to Pepe the Frog's use in 2016 in the MAGA posters, Mr. Allen had not seen the character used for political purposes or associated with political figures.  (*Id.* No. 57).

Mr. Allen then offered the MAGA poster to FSS to sell on its online stores, located at "www.infowarsstore.com" and "www.infowarsshop.com."  (PSUF No. 47).  FSS is the operating business for Infowars.  (*Id.* No. 48).  FSS also promoted the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 18-1830-MWF (JPRx)                Date:  May 16, 2019

Title:      Matt Furie v. Infowars, LLC, et al.

MAGA posters on *The Alex Jones Show* and several of FSS's customers commented on Pepe the Frog's inclusion.  (*Id.* Nos. 52–53).  Gross revenues from sales of the MAGA poster totaled $31,407.44.  (*Id.* No. 55; DSUF No. 68).

Plaintiff did not enter into any written license agreement with either Defendants or Mr. Allen for the use of the image or character of Pepe the Frog.  (PSUF No. 56). Plaintiff neither offered an express license to Defendants nor ever contacted, or attempted to contact, Defendants for a license.  (*Id.* Nos. 57, 60).  Plaintiff also never negotiated with Defendants for the rights to use the image of Pepe the Frog in the MAGA poster.  (*Id.* No. 64).  Plaintiff has in fact never communicated with Defendants in any way.  (*Id.* Nos. 59, 63).

The parties dispute whether the alleged misappropriation of Pepe the Frog by far-right entities and Defendants harmed Plaintiff's ability to license the character.  (*Id.* No. 24; DSUF No. 28).

**D.     Other Relevant Facts**

The character El Sapo Pepe is an Argentinian anthropomorphic frog that has existed since at least 1988, and shows featuring El Sapo Pepe were broadcast in Argentina and other "Central American" (presumably Latin American) countries since at least that time.  (DSUF No. 69).

Below is a side-by-side comparison of Pepe the Frog and El Sapo Pepe:

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

<u>CIVIL MINUTES—GENERAL</u>

**Case No.  CV 18-1830-MWF (JPRx)**          **Date:  May 16, 2019**

Title:      Matt Furie v. Infowars, LLC, et al.

 

(Furie Mot. at 18).

In the summer of 2004, Plaintiff traveled to Tijuana and San Felipe, Mexico. (*Id.* No. 70).  Apart from this trip, Plaintiff never visited any Latin American country prior to creating Pepe the Frog.  (PSUF No. 82).

## II.   **EVIDENTIARY OBJECTIONS**

Plaintiff objects to some of the evidence on which Defendants rely.  Specifically, Plaintiff points out that Defendants failed to identify or produce any of what is now included as Exhibits 2–12, 14–15, 17, and 18 to the Furie Opposition.  (Furie Reply at 5).  Defendants also failed to produce what is now included as Exhibits 10–13, 15–21, 26–27, 37, and 43 to the Infowars Motion.  (Infowars Opp. at 3–4).

As the Court noted in its Order re: Undisclosed Evidence, it takes seriously the parties' discovery obligations under Federal Rule of Civil Procedure 26.  (Docket No. 115).  Rule 37 provides that where a party fails to offer information as required by Rules 26(a) and 26(e), the party is not allowed to use that information as evidence on a motion unless the failure was substantially justified or harmless.  Fed. R. Civ. P. 37(c)(1).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 18-1830-MWF (JPRx)**                    **Date:  May 16, 2019**
Title:       Matt Furie v. Infowars, LLC, et al.

As to the exhibits attached to the Infowars Motion, Defendants contend that "[e]very single document [Plaintiff] seeks to exclude is a screenshot from a publicly-accessible web site, and none of them should be excluded."  (Infowars Reply at 4–5).  Defendants finally note that if Plaintiff "truly believes that he cannot fairly defend against this evidence, [Defendants are willing to] stipulate[] to him taking whatever additional discovery that they may reasonably seek under Fed. R. Civ. P. 56(d)."  (*Id.* at 7 n.6).  As to the exhibits attached to the Furie Opposition, Defendants explained at the hearing that they are also predominantly publicly available.

As indicated at the hearing, the Court is mainly concerned with the circumstance where a party has a document in his or its possession at the beginning of a case, where that document was likely going to be used at trial, and where the party withheld disclosure of that document.  That does not appear to be the case here.  In issuing this Order, the Court assumes that the submitted evidence will be admissible at trial.  However, as to the exhibits listed above, Defendants are **ORDERED** to submit a report on when each exhibit came into a Defendants' possession and when the intent was formed to use the exhibit as evidence.  The report shall be filed no later than **May 29, 2019.**

In ruling on the two motions, the Court relies only upon admissible evidence.  To the extent the Court relies upon evidence to which Plaintiff objects, the objections are **OVERRULED**.  To the extent the Court does not, the objections are **DENIED** *as moot*.

## III.  <u>LEGAL STANDARD</u>

In deciding a motion for summary judgment under Rule 56, the Court applies *Anderson*, *Celotex*, and their Ninth Circuit progeny. *Anderson*, 477 U.S. 242; *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 18-1830-MWF (JPRx)                    Date:  May 16, 2019
Title:      Matt Furie v. Infowars, LLC, et al.

The Ninth Circuit has defined the shifting burden of proof governing motions for summary judgment where the non-moving party bears the burden of proof at trial:

> The moving party initially bears the burden of proving the absence of a genuine issue of material fact.  Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case.  Where the moving party meets that burden, the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial.  This burden is not a light one.  The non-moving party must show more than the mere existence of a scintilla of evidence.  The non-moving party must do more than show there is some "metaphysical doubt" as to the material facts at issue.  In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor.

*Coomes v. Edmonds Sch. Dist. No. 15*, 816 F.3d 1255, 1259 n.2 (9th Cir. 2016) (quoting *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010)).  "A motion for summary judgment may not be defeated, however, by evidence that is 'merely colorable' or 'is not significantly probative.'"  *Anderson*, 477 U.S. at 249–50.

"When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'"  *C.A.R. Transp. Brokerage Co. v. Darden Restaurants, Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quoting *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992)).

## IV.  THE FURIE MOTION

Plaintiff argues that there are no genuine disputes of material fact to preclude summary judgment on Defendants' affirmative defenses for lack of copyright, invalid certificate of registration, abandonment or forfeiture, implied or explicit license, and de minimis use.  (Furie Mot. at 8–23).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 18-1830-MWF (JPRx)                    Date:  May 16, 2019

Title:      Matt Furie v. Infowars, LLC, et al.

### A.      Lack of Copyright

In their first affirmative defense, Defendants assert that Plaintiff does not have a valid copyright in Pepe the Frog because the character was allegedly copied from El Sapo Pepe.  (Affirmative Defenses to Amended Answers ¶¶ 1–4 (Docket Nos. 69–70)).

"[I]n order to establish that the plaintiff copied a preexisting work, a defendant must show that plaintiff had access to the prior work and that plaintiff's work is substantially similar to the prior work in both ideas and expression." *N. Coast Indus. v. Jason Maxwell, Inc.*, 972 F.2d 1031, 1033 (9th Cir. 1992) (concluding that there is no question had access to the copyrighted work and that the "issue of whether the manufacturer's geometric arrangement of color box, which was similar to but not identical to French design inspired by Mondrian, was copyrightable was for jury").

Here, Plaintiff argues that, during his deposition, he has "unequivocally denie[d] that El Sapo [Pepe] was an inspiration for Pepe the Frog in any way" and that "he had never heard of or seen El Sapo [Pepe] before this lawsuit."  (Furie Mot. at 17).  Plaintiff also argues that he could not "have been aware of an Argentine cartoon character when the uncontroverted evidence shows he never traveled to Argentina (or any Latin American country) prior to creating Pepe the Frog."  (*Id.* at 17–18).  Plaintiff therefore has met his initial burden to show his lack of access to El Sapo Pepe.  At the hearing, Plaintiff also reiterated these facts and added that Defendants have not provided any evidence that El Sapo Pepe even left Argentina and became famous in other countries.

In response, Defendants argues that the "timeline of Pepe the Frog's development casts doubt on [his] claim of originality."  (Furie Opp. at 9).  Defendants explain that Pepe the Frog "was a mostly formless blob in 2003" and then "took on significantly more frog-like features and a frog-like green skin tone" in 2006.  (*Id.*).  Defendants suggest that "[t]he only explanation for the change is [Plaintiff's] visit to Mexico, where Pepe the Toad was popular and [Plaintiff] was likely to have seen the character."  (*Id.*).  Defendants contend that the creation of Pepe the Frog when El Sapo Pepe "was ubiquitous in Latin America is suspect" and cannot be "just a big

---

CIVIL MINUTES—GENERAL                                      12

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 18-1830-MWF (JPRx)                    Date:  May 16, 2019

Title:       Matt Furie v. Infowars, LLC, et al.

coincidence."  (*Id.* at 9).  Defendants finally argue that Plaintiff's claim that he "had never heard of Pepe the Toad prior to this lawsuit" is "self-serving testimony" and that Plaintiff "perjured himself when he denied copying popular characters into his own artwork."  (*Id.* at 8).

At the hearing, Defendants also pointed to numerous other drawings by Plaintiff (*e.g.*, Big Bird from Sesame Street, Freddy Krueger, and Groot from Guardians of the Galaxy) to argue that he was interested in cartoon characters and could have seen El Sapo Pepe.  Defendants further added that Plaintiff's visit to Mexico was likely irrelevant so long as he had access to the Internet.

Defendants have pointed to no direct evidence to show that Plaintiff had access to El Sapo Pepe, apart from the fact that he traveled to Tijuana and San Felipe in the summer of 2004, if that can be called evidence of access.  Defendants did not submit evidence that shows featuring El Sapo Pepe were broadcast in Mexico in 2004.  Nor do Defendants offer any evidence to rebut Plaintiff's testimony that he was unaware of El Sapo Pepe prior to this action.

To the extent Defendants argue all that is required is that Plaintiff had access to the Internet, this argument is even more unsubstantiated than the one relating to Plaintiff's visit to Mexico in 2004.  Indeed, Nimmer's analysis is as follows:

> Regardless of previous definitions of the concept of "access," . . . [a court should] return[] to first principles in ruling that the existence of the plaintiff's copyrighted materials on the Internet, even on a public and user-friendly site, cannot by itself justify an inference that the defendant accessed those materials.

4 *Nimmer on Copyright* § 13.02[D] (2019) (quotation marks and citation omitted).

Defendants' arguments are speculative at best.  Summary judgment is therefore appropriate.  *See, e.g.*, *Media.net Advert. FZ-LLC v. NetSeer, Inc.*, 156 F. Supp. 3d 1052, 1068 (N.D. Cal. 2016) (concluding that the plaintiff "makes conclusory

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 18-1830-MWF (JPRx)                    Date:  May 16, 2019

Title:      Matt Furie v. Infowars, LLC, et al.

assertions that [the defendant] copied the HTML code from [its] search results pages and does not explain how [the defendant] had access to it").  Having concluded that there is no genuine dispute of material facts as to lack of access, the Court need not reach substantial similarity.

Accordingly, the Furie Motion is **GRANTED** as to the affirmative defense of lack of copyright.

## B.      Invalid Certificate of Registration

In their seventh affirmative defense, Defendants assert that Plaintiff does not have a valid certificate of registration over Pepe in Blue Shirt because he provided inaccurate information to the Copyright Office when applying for copyright registration.  (Affirmative Defenses to Amended Answers ¶¶ 42–43).

Under the Copyright Act, a certificate of registration satisfies statutory requirements and is valid unless (1) the applicant knowingly included inaccurate information and (2) the inaccuracy would have caused the Copyright Office to refuse registration.  17 U.S.C. § 411(b)(1).  Speculation about potential errors in a copyright application or unoriginality of the copyrighted work does not suffice to establish invalidity.  Indeed, "[s]imply stated, a misstatement or clerical error in the registration application, if unaccompanied by fraud, should neither invalidate the copyright nor render the registration certificate incapable of supporting an infringement action."  3 *Nimmer on Copyright* § 7.20[B][1] (2019).

Defendants argue that Plaintiff "lied to the Copyright Office by representing that he owned all material in 'Pepe in Blue Shirt'," when it was in fact a derivative work. (Furie Opp. at 9).  Defendants explain that Pepe in Blue Shirt is a "literal copy" of the 2009 "not good man" image that was created over six years by an anonymous user on www.bodybuilding.com.  (*Id.* at 8).  Defendants contend that because protection in derivative works extends "only to new material added by the author," the Copyright Office "would have rejected [his] application" for Pepe in Blue Shirt if Plaintiff had

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 18-1830-MWF (JPRx)                    Date:  May 16, 2019
Title:        Matt Furie v. Infowars, LLC, et al.

disclosed the "not good man" image.  (*Id.* at 11).  At the hearing, Defendants repeated these arguments.

Plaintiff disagrees and argues that he "himself drew and published a black-and-white version of [the 'not good man' image] in 2006, in *Boy's Club 1*."  (Furie Reply at 13).  Plaintiff offers the following comparison:





Mr. Furie's Pepe in *Boys Club* (2006)          *bodybuilding.com* "not good man" image (2009)          Mr. Furie's *Pepe in Blue Shirt* (2016)

(*Id.*).

According to Plaintiff, the "*bodybuilding.com* image was a copy of [his] own *Boys Club 1* image—just filled in with color, and with the addition of the 'not good man' caption."  (*Id.*).  The expression, eyes, puffy lips, disappointed face, and other features are otherwise identical.  (*Id.*).

Here, the basis of Defendants' invalid registration argument is that Plaintiff failed to disclose the "not good man" image as source material, even though Plaintiff had originally created and disclosed the black-and-white comic image.  But in general, the "failure to disclose that the registered work is derivative of an earlier, underlying

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 18-1830-MWF (JPRx)                    Date:  May 16, 2019
Title:      Matt Furie v. Infowars, LLC, et al.

work should occasion rejection of the registration certificate only if the claimant was for some reason ineligible to register the derivative work.  It is therefore unsustainable to allege that a certificate is invalid because it ***fails to disclose to the Copyright Office minor items containing pre-existing details***."  2 *Nimmer on Copyright* § 7.20[B][1] (emphasis added).

To overcome the presumption of validity, Defendants must produce evidence both that Plaintiff intended to provide the Copyright Office with inaccurate information in his copyright application and that the Copyright Office would not have issued the registration for Pepe in Blue Shirt had it received accurate information.  Defendants have simply presented evidence of neither.  Notwithstanding the fact that it is Plaintiff's burden to establish Defendants' liability for copyright infringement, Defendants may not avoid liability merely by suggesting that Plaintiff may have intended to defraud the Copyright Office.  That would "defeat[ ] the goals of summary judgment by according defendants a seemingly automatic defense based on fraud, even absent any showing on the subject."  *Id.*

Accordingly, the Furie Motion is **GRANTED** as to the affirmative defense of invalid copyright registration.

## C.     Abandonment or Forfeiture

In their third affirmative defense, Defendants assert that Plaintiff's public interview statements indicate that he abandoned or forfeited some or all of his copyrights in Pepe the Frog.  (Affirmative Defenses to Amended Answers ¶¶ 31–36). It appears that Defendants are not maintaining the affirmative defense of forfeiture because they neither addressed it in opposing summary judgment nor at the hearing. The Court therefore will address only the affirmative defense of abandonment.

In copyright, abandonment is "the intentional relinquishment of a known right with knowledge of its existence and the intent to relinquish it."  *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1026 (9th Cir. 2001) (discussing waiver and abandonment and concluding that the district court correctly "rejected [the] valid

---

**CIVIL MINUTES—GENERAL**                                    16

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 18-1830-MWF (JPRx)                    Date:  May 16, 2019

Title:       Matt Furie v. Infowars, LLC, et al.

affirmative defense[] of waiver").  But abandonment of copyright "occurs only if there is an intent by the copyright proprietor to surrender rights in his work."  *Id.* (citing 4 *Nimmer on Copyright* § 13.06.

Here, the parties dispute whether Plaintiff's public statements are sufficient evidence to indicate that he abandoned his copyright in Pepe the Frog.  Defendants argue that, between 2010 and 2016, Plaintiff made numerous statements to various media outlets that "he was happy about Pepe the Frog becoming a meme, that he was not bothered (and was in fact inspired) by rampant unauthorized use of the character, that he was aware of third parties making a profit off these unauthorized works but did nothing to stop them, and that he had lost control over the character."  (Furie Opp. at 17).

As one example, on April 12, 2015, Plaintiff gave an interview to *The Daily Dot*, where he was asked what he thought about "people profiting off of Pepe [the Frog]."  (Plaintiff's Objections and Responses to Defendants' First Set of Requests for Admission No. 4 (Docket No. 88-18)).  In response, Plaintiff provided the following answer:

> I believe in supporting people's decisions to profit off of Pepe in order to provide them with the most positive business experience possible.  I strive to be an advocate for Pepe in both love and enterprise and hope to help business people to have an empowering and joyful experience while making an ocean of profits as limitless as the universe.

(*Id.*).  According to Plaintiff, this statement was made "sarcastically."  (*Id.*).

In another interview with *New York Magazine* in September 2016, Plaintiff stated that he "realized that Pepe is beyond my control . . . He's like a kid, he grew up and now I have to set him free to live his life."  (*Id.* No. 3).  Plaintiff also stated, "I just sit back, relax and let the Pepes fall where they land, my friend!"  (*Id.*).

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 18-1830-MWF (JPRx)                    Date:  May 16, 2019
Title:       Matt Furie v. Infowars, LLC, et al.

In yet another interview with *The Atlantic* on September 13, 2016, Plaintiff
provided the following answers:

Q:  How do you feel about the way it's been adopted by the so-called alt-
right?

A:  My feelings are pretty neutral, this isn't the first time that Pepe has
been used in a negative, weird context.  I think it's just a reflection of the
world at large.  The internet is basically encompassing some kind of mass
consciousness, and Pepe, with his face, he's got these large, expressive
eyes with puffy eyelids and big rounded lips, I just think that people
reinvent him in all these different ways, it's kind of a blank slate.  It's just
out of my control, what people are doing with it, and my thoughts on it,
are more of amusement. . . .

Q:  Do you have any regrets about Pepe or not having more control over
his image?

A:  I don't have any regrets about anything.  I do my own thing, and if
anything, it's been kind of interesting to see all the evolutions of Pepe.
Yeah, no regrets.

(Furie Opp., Ex. 75 (Docket No. 96-6)).

Defendants argue that, after these public interviews and statements were made,
Plaintiff "attempted to counter this negativity with positive depictions of Pepe the Frog
and eventually 'killed' the character."  (*Id.* at 18).  Defendants specifically point to
Plaintiff's deposition testimony, as follows:

Q:  So you said you killed Pepe?

A:  Yes.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 18-1830-MWF (JPRx)                    Date:  May 16, 2019
Title:       Matt Furie v. Infowars, LLC, et al.

Q:  Is that accurate to say that?

A:  Yes.

Q:  In 2016?

A:  Yes. . . . I'm not sure what the time frame was.  But there were
associations with that character, Pepe, that were frustrating me.

Q:  Tell me about those.

A:  The attention in the public perception at that time became
complicated.  You know, the associations of Pepe got interwoven with
some kind of Neo-Nazi or Alt Right agenda.  He had become, in the eyes
of some, a mascot for hate groups.

(Infowars Mot, Ex. 9 at 60:12–61:3 (Docket No. 88-13)).

Defendants argue that Plaintiff's "numerous public statements encouraging
third-party use of Pepe the Frog . . . cumulatively tell the world that he consents to the
copying, modifying, and distributing of Pepe the Frog, even with commercial use of
the character."  (Furie Opp. at 20).

Plaintiff disagrees and contends that he "made clear public statements
confirming that he owned and would enforce his copyrights in Pepe."  (Furie Reply at
9).  Examples of public statements include the following: (1) Plaintiff's statement that
"Pepe the Frog is copyrighted by me" in an *esquire.com* article published on
September 28, 2016; (2) reports by *Motherboard* that Plaintiff "will aggressively
enforce his intellectual property, using legal action if necessary, to end the
misappropriation of Pepe the Frog," published on August 28, 2017; and (3) Plaintiff's
issued press release indicating that he has "expanded enforcement efforts to end the
misappropriation of Pepe by taking legal action against additional infringers,"
published on September 18, 2017.  (Furie Mot. at 13–14).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 18-1830-MWF (JPRx)                    Date:  May 16, 2019
Title:      Matt Furie v. Infowars, LLC, et al.

Contrary to Plaintiff's contention that there is no evidence of "clear, decisive conduct required to establish that [Plaintiff] intended to surrender his rights in Pepe," the Court concludes that there is a genuine dispute of material facts to preclude summary judgment on the affirmative defense of abandonment.  (*See id.* at 15).  As both parties recognize, whether Plaintiff abandoned his copyright turns on his intent as evidenced by how his public statements should be interpreted.  But on a motion for summary judgment, the Court can neither determine Plaintiff's credibility nor place weight on his competing public statements.  *See, e.g.*, *Conn v. City of Reno*, 591 F.3d 1081, 1098 (9th Cir. 2010) (concluding that "questions involving a person's state of mind are generally factual issues inappropriate for resolution by summary judgment" and that the court "may not make credibility determinations or weigh conflicting evidence"), *vacated*, 563 U.S. 915 (2011), *opinion reinstated in relevant part*, 658 F.3d 897 (9th Cir. 2011); *Banks v. Hayward*, 216 F.3d 1082, 1082 (9th Cir. 2000) ("Moreover, in evaluating a motion for summary judgment, the court may not make credibility determinations or weigh conflicting evidence.").

Both parties have simply presented conflicting public statements made by Plaintiff relating to his intent over his copyright.  Defendants point to public statements that suggest—or at least can be reasonably viewed as suggesting—Pepe the Frog was out of Plaintiff's control and was "killed" as a character.  Plaintiff points to other public statements where he reaffirmed his ownership over Pepe the Frog, suggesting no intent to abandon the character.  The dispute is therefore more appropriately left to the jury rather than determined by the Court on summary judgment.  *See Gray v. Virga*, No. 12-CV-3006-KJM, 2017 WL 117895, at *9 (E.D. Cal. Jan. 12, 2017) ("The disputes caused by the competing declarations cannot be resolved without credibility determinations, which are the function of the jury, not of a judge on a motion for summary judgment.").

The Court views as particularly persuasive *Marya v. Warner/Chappell Music, Inc.*, 131 F. Supp. 3d 975 (C.D. Cal. 2015), a case relied upon by both parties.  There, the district court considered a copyright infringement claim involving the song *Happy Birthday to You* and another song with the same melody called *Good Morning to All*.

---

CIVIL MINUTES—GENERAL                                               20

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 18-1830-MWF (JPRx)**                    **Date:  May 16, 2019**
Title:        Matt Furie v. Infowars, LLC, et al.

*Id.* at 979.  In analyzing whether certain overt acts constituted abandonment, the district court looked at the statements made in the following *TIME* magazine article:

> Because the tune of "Happy Birthday to You" sounds precisely like the tune of "Good Morning to All," Sam H. Harris, producer of As Thousands Cheer, last week found himself the defendant in a Federal plagiarism suit asking payment of $250 for each and every performance of the song. . . . Lyricist Patty Hill, who will share in the damages, if any, had no complaint to make on the use of the words because she long ago resigned herself to the fact that her ditty had become common property of the nation.

*Id.* at 992 (emphasis removed).

The district court noted that the "clear implication from the article is that [the author] told the *TIME* journalist that she had surrendered any claim she may have had to the *Happy Birthday* lyrics." *Id.* at 993.  The district court also noted that the public statement in the *TIME* magazine article, "if believed, is an overt act on which a reasonable fact finder could base a finding that [the author] abandoned her copyright interest in the lyrics." *Id.*  But importantly, the district court "cannot say that this evidence is sufficient to entitle [the plaintiffs] to a directed verdict at trial inasmuch as it is not a direct quote from [the author]," because the journalist "could have been paraphrasing something she said or relying on a secondary source to characterize her intentions." *Id.*  The district court thus denied the plaintiffs' motion for summary judgment on their affirmative defense of abandonment because, like here, "this article is at least sufficient to raise triable issues of fact as to whether [the author] abandoned her rights." *Id.*

Taking the evidence in the light most favorable to Defendants as the non-moving parties, it is evident that a genuine issue of material fact remains in dispute.  Whether Plaintiff's statements are "sarcastic" is something for the jury to decide.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 18-1830-MWF (JPRx)                    Date:  May 16, 2019

Title:       Matt Furie v. Infowars, LLC, et al.

At the hearing, Plaintiff also pointed out that Defendants have cited only one
case, *Melchizedek v. Holt*, 792 F. Supp. 2d 1042 (D. Ariz. 2011), in which
abandonment survived summary judgment.  Plaintiff then pointed out that the
statements made in *Melchizedek*—"I don't care about copyrights or any of that stuff,
that doesn't matter"; "But at the same time, personally I have never cared about the
copyrights"; and "Some people believe that I am protecting my copyrights and don't
understand that there are more important issues than copyrights"—directly related to
copyright ownership.  *See id.* at 1047–48, 1053.  Plaintiff argued that, in contrast to the
plaintiff's remarks in *Melchizedek*, his statements in the public interviews were not
related to copyright ownership.

The Court disagrees with Plaintiff.  The district court in *Melchizedek* recognized
that the "remark quoted above [relating to copyrights] does not specify which
copyrighted work or works that Plaintiff is discussing with his audience."  *Id.* at 1053.
The jury therefore could "reasonably interpret Plaintiff's remarks to constitute an overt
act indicative of his intent to abandon his copyright protection" or "insufficient to
constitute overt acts or do not even refer to the Copyrighted Work" at issue.  *Id.*  But
based upon these ambiguous remarks, like here, "it is a disputed question of fact as to
whether Plaintiff's intent was to abandon his copyright protection in these works."  *Id.*
at 1053–54.  Indeed, it is particularly appropriate for the jury to determine Plaintiff's
intent, whether he was "sarcastic" in making some of these public remarks, what he
meant when he said that he "killed" Pepe the Frog, and numerous other factual
disputes.

Accordingly, the Furie Motion is **DENIED** as to the affirmative defense of
abandonment.

### D.     Implied or Explicit License

In their fourth affirmative defense, Defendants assert that Plaintiff gave the
general public an "implied or explicit license" to use Pepe the Frog.  (Affirmative
Defenses to Amended Answers ¶¶ 37–39).  It is undisputed that there is no explicit
license.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 18-1830-MWF (JPRx)                    Date:  May 16, 2019

Title:      Matt Furie v. Infowars, LLC, et al.

The existence of an implied license is an affirmative defense to a claim of
copyright infringement and the burden of proof is ultimately on the party seeking to
avoid infringement liability.  *Worldwide Church of God v. Philadelphia Church of
God, Inc.*, 227 F.3d 1110, 1114 (9th Cir. 2000) (concluding that the "existence of a
license creates an affirmative defense to a claim of copyright infringement").  "[A]
nonexclusive license may be granted orally, or may even be implied from conduct."
*Effects Assocs., Inc. v. Cohen*, 908 F.2d 555, 556–58 (9th Cir. 1990) (quoting 3
*Nimmer* § 10.03[A] (1989)).

"[T]he Ninth Circuit [has] confirmed that whether an implied license exists is a
matter of contract law; as such, it is governed by state law . . . ."  *Interscope Records v.
Time Warner, Inc.*, No. 10-CV-1772-SVW (PJWx), 2010 WL 11505708, at *5 (C.D.
Cal. June 28, 2010) (citing *Foad Consulting Grp., Inc. v. Azzalino*, 270 F.3d 821, 827
(9th Cir. 2001)).  The party asserting the affirmative defense of an implied license
therefore must prove "the same elements necessary to evidence an express contract:
mutual assent or offer and acceptance, consideration, legal capacity and lawful subject
matter."  *Northstar Fin. Advisors Inc. v. Schwab Invs.*, 779 F.3d 1036, 1050–51 (9th
Cir. 2015) (citation omitted).

Here, Plaintiff argues that there was no implied license because "there was no
evidence of offer and acceptance or consideration between the parties," basic missing
contractual elements.  (Furie Mot. at 10).  As indicated above, Plaintiff has never
actually communicated to Defendants.  In opposition, Defendants point to numerous
public statements made by Plaintiff, as previously discussed.  (Furie Opp. at 17–20).

The Court disagrees with Defendants.  Those public statements cannot constitute
an offer made by Plaintiff because they did not "invite the performance of a specific
act without further communication and leave nothing for negotiation."  *See Donovan v.
RRL Corp.*, 26 Cal. 4th 261, 272, 109 Cal. Rptr. 2d 807 (2001) (concluding that while
there is a reasonable expectation on the part of consumers that an automobile dealer
intends an advertised price to constitute an offer, the offer can only be accepted by
actually paying it); *see also* 3 Nimmer on Copyright § 10.03[A][7] (2019) ("[A]n
implied license requires more than a general intent of the author regarding disposition

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 18-1830-MWF (JPRx)                  Date:  May 16, 2019**

Title:        Matt Furie v. Infowars, LLC, et al.

of his work. . . . [T]he terms—including identity of the licensee—should be reasonably clear.").  Moreover, to the extent Plaintiff's public statements can be viewed as an offer, Defendants do not explain why there is consideration for an implied license.

At the hearing, Defendants pointed out the fact that Creative Commons licenses exist and appeared to suggest that Plaintiff elected to employ such a license for Pepe the Frog.  But as pointed out by Plaintiff, a Creative Commons license, typically denoted by a CC within a circle logo, is a specific contractual arrangement in which an artist deliberately gives up certain rights in his or her work.  Here, there is no indication that Plaintiff entered into a Creative Commons license.  Nor does Pepe the Frog contain a Creative Commons designation as far as the Court can discern.

Accordingly, the Furie Motion is **GRANTED** as to the affirmative defense of implied license.

## E.    De Minimis Use

In their eighth affirmative defense, Defendants assert that their use of Pepe the Frog was de minimis.  (Affirmative Defenses to Amended Answers ¶ 44).

A "use is de minimis only if the average audience would not recognize the appropriation."  *See VMG Salsoul, LLC v. Ciccone*, 824 F.3d 871, 878 (9th Cir. 2016) (citing *Newton v. Diamond*, 388 F.3d 1189, 1193 (9th Cir. 2004)).

Similar to the affirmative defense of abandonment, the parties presented conflicting facts as to whether the use of Pepe the Frog in the MAGA poster is de minimis.  Plaintiff argues that the MAGA posters "contain enough of Pepe the Frog for the average audience to recognize the appropriation," since the posters depict Pepe the Frog's entire face, bulging eyes, eyelids, and lips.  (Furie Mot. at 23).  Plaintiff also points out that Mr. Allen "intentionally made Pepe recognizable" and multiple customers in fact "recognized Pepe in the MAGA [p]osters."  (*Id.*).  At the hearing, Plaintiff repeated these arguments.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 18-1830-MWF (JPRx)                     Date:  May 16, 2019
Title:        Matt Furie v. Infowars, LLC, et al.

Defendants, however, contend that there is a lack of similarity between Pepe the Frog and the MAGA poster.  (Furie Opp. at 12).  Defendants point out that, among other things, physical characteristics like being green, having bulging eyes, and a human-shaped body are not unique characteristics to Pepe the Frog and are common to cartoon frogs in general.  (*Id.* at 13).  Moreover, the MAGA poster does not feature Pepe the Frog's entire torso.  (*Id.* at 12).

Taking the evidence in the light most favorable to Defendants as the non-moving parties, it is clear that a genuine issue of material fact remains in dispute.  This affirmative defense is therefore more appropriately left to the jury to decide at trial rather than determined by the Court on summary judgment.

Accordingly, the Furie Motion is **DENIED** as to the affirmative defense of de minimis use.

## V.     THE INFOWARS MOTION

As an initial matter, Plaintiff argues that the Infowars Motion should be denied in part for failure to comply with Local Rule 7-3.  (Infowars Opp. at 2).  Plaintiff explains that in the initial email, Defendants represented that they "would bring a motion for summary judgment addressing ***solely*** the issues of fair use and lack of copyright because of alleged copying of the Argentinian character 'El Sapo Pepe'." (*Id.* (emphasis in original)).  But Defendants now brought three additional issues relating to Infowars' status as Defendant, abandonment or implied license, and statutory damages and attorneys' fees.  (*Id.*).

In opposition, Defendants contend that during a telephonic conference on March 15, 2019, they indicated that they "would also move for summary judgment on the issues of abandonment, implied license, and possibly statutory damages and attorneys' fees."  (Infowars Reply at 3–4; Declaration of Marc J. Randazza ("Randazza Decl.") ¶¶ 6–9 (Docket No. 102-2)).  Defendants, however, acknowledge that their basis for seeking summary judgment as to Infowars' status as a Defendant was not raised during the telephonic conference.  (Infowars Reply at 4).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 18-1830-MWF (JPRx)                    Date:  May 16, 2019
Title:        Matt Furie v. Infowars, LLC, et al.

Although it appears that the parties failed to meet and confer in strict compliance with Local Rule 7-3, it does not appear that Plaintiff has suffered prejudice as a result of this failure.  The Court, therefore, will proceed to the merits of the Infowars Motion. *See, e.g.*, *Reed v. Sandstone Props., L.P.*, No. 12-CV-5021-MMM (VBKx), 2013 WL 1344912, at *6 (C.D. Cal. Apr. 2, 2013) ("Because Reed suffered no real prejudice as a result of the late conference, however, the court elects to consider the motion on the merits.").  Both parties' counsel, however, are warned to scrupulously comply with all Local Rules in the future.

Turning to the merits of the Infowars Motion, Defendants argue that (1) Infowars did not engage in any alleged misconduct; (2) the MAGA poster's use of Pepe the Frog was fair use; (3) Plaintiff abandoned his copyright in Pepe the Frog and/or granted an implied license to the general public; and (4) Plaintiff cannot seek statutory damages and attorneys' fees.  (Infowars Mot. at 9–24).

### A.    Infowars as a Defendant

Defendants argue that there is no evidence to suggest that Infowars "engaged in any conduct alleged."  (Infowars Mot. at 9).  Infowars "is an intellectual property holding company that does no business of any kind and does not operate any web sites."  (*Id.*).  Rather, FSS operates the business at www.infowars.com and other related websites, purchased copies of the MAGA posters from Mr. Allen, and the purchase orders and checks sent to Mr. Allen came from FSS.  (*Id.*).

The Court disagrees that there is no evidence to suggest that Infowars was incorrectly named as a Defendant.  Alex Jones, the manager of Infowars, publicly displayed and advertised the MAGA posters for sale.  (Infowars Opp. at 4).  The websites on which the MAGA posters were advertised—www.infowars.com and www.prisonplanet.com—listed Infowars as the owner and operator.  (*Id.*).  Defendants point out that "these are mistakes, as the sites are operated by FSS and Infowars has no involvement in the operation of the sites."  (Infowars Mot. at 9).  At best, this assertion creates a dispute of fact.  *See Larin Corp. v. Alltrade, Inc.*, No. 06-EDCV-1394-ODW (OPx), 2008 WL 11338579, at *3 (C.D. Cal. Feb. 13, 2008) (denying summary

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 18-1830-MWF (JPRx)                    Date:  May 16, 2019
Title:       Matt Furie v. Infowars, LLC, et al.

judgment where the plaintiff "has named both Alltrade, Inc. and Alltrade Tools LLC as defendants because it is difficult to discern which party is in fact the proper defendant responsible for the alleged wrongdoing" and finding that Alltrade, Inc. has not "present[ed] definitive evidence to show that it is not so intertwined with Alltrade Tools LLC").

Accordingly, the Infowars Motion is **DENIED** to the extent it seeks dismissal of Infowars as a Defendant.

## B.     Fair Use

The doctrine of fair use is a common law doctrine of judicial creation that has been codified as follows:

> [T]he fair use of a copyrighted work, including such use by reproduction in copies or phonorecords or by any other means specified by that section, for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright.  In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include—
>
> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
>
> (2) the nature of the copyrighted work;
>
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
>
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 18-1830-MWF (JPRx)**                **Date:  May 16, 2019**

Title:       Matt Furie v. Infowars, LLC, et al.

17 U.S.C. § 107.

When Congress incorporated the doctrine of fair use into the Copyright Act, it
intended to restate the judicial doctrine but "not to change, narrow, or enlarge it in any
way."  H.R. Rep. No. 94–1476, at 66 (1976) (hereinafter "House Report"); S. Rep.
No. 94–473, at 62 (1975) (hereinafter "Senate Report").  Supreme Court precedent and
the legislative history also make clear that fair use analysis is not appropriately
conducted through the use of bright line rules, but must be dealt with on a case by case
basis.  *Harper & Row Publishers, Inc. v. Nation Enter.*, 471 U.S. 539, 560 (1985)
(holding that publication of verbatim quotes from the "heart" of unpublished memoirs,
which was intended to supplant copyright holders commercially valuable right of first
publication, was not fair use); *Sony Corp. of America v. Universal City Studios, Inc.*,
464 U.S. 417, 448 & n. 31 (1984) (holding that sale of home video recording
equipment was not contributory infringement where there were substantial non-
infringing uses of the equipment); House Report at 65–66; Senate Report at 62.

Further, the four statutory factors should not be treated in isolation.  "All [the
factors] are to be explored, and the results weighed together, in light of the purposes of
copyright."  *Campbell v. Acuff-Rose Music, Inc.* 510 U.S. 569, 578 (1994) (holding
that commercial character of song parody did not create presumption against fair use).
The four statutory factors must be balanced "in light of the objectives of copyright law,
rather than view[ed] as definitive or determinative tests."  *Kelly v. Arriba Soft Corp.*,
336 F.3d 811, 818 (9th Cir. 2002).

"Fair use is a mixed question of law and fact."  *Harper & Row Publishers*, 471
U.S. at 560; *see Fisher v. Dees*, 794 F.2d 432, 436 (9th Cir. 1986) (concluding that
only where "[n]o material historical facts are at issue in th[e] case," a court may rule on
fair use "without usurping the function of the jury"); *Oracle Am., Inc. v. Google LLC*,
886 F.3d 1179, 1195 (Fed. Cir. 2018) (concluding that where "there are no disputed
material historical facts, fair use can be decided by the court alone" and that "disputed
historical facts represent questions for the jury") (citing *Fisher*).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 18-1830-MWF (JPRx)                    Date:  May 16, 2019
Title:        Matt Furie v. Infowars, LLC, et al.

       As an initial matter, Defendants appeared to suggest at the hearing that crafting a jury instruction on fair use to adequately explain the affirmative defense would be difficult if not impossible.  The Court disagrees and notes that the Ninth Circuit model jury instruction on fair use reads as follows:

> One who is not the owner of the copyright may use the copyrighted work in a reasonable way under the circumstances without the consent of the copyright owner if it would advance the public interest.  Such use of a copyrighted work is called a fair use.  The owner of a copyright cannot prevent others from making a fair use of the owner's copyrighted work.
>
> Defendant contends that defendant made fair use of the copyrighted work for the purpose of [criticism] [comment] [news reporting] [teaching] [scholarship] [research] [*other purpose alleged*].  The defendant has the burden of proving this defense by a preponderance of the evidence.
>
> In determining whether the use made of the work was fair, you should consider the following factors:
>
> (1) the purpose and character of the use, including whether the use is of a commercial nature or is for nonprofit educational purposes;
>
> (2) the nature of the copyrighted work;
>
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole;
>
> (4) the effect of the use upon the potential market for or value of the copyrighted work; and
>
> [(5)] [*insert any other factor that bears on the issue of fair use*].

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 18-1830-MWF (JPRx)                    Date:  May 16, 2019
Title:       Matt Furie v. Infowars, LLC, et al.

If you find that the defendant has proved by a preponderance of the
evidence that the defendant made a fair use of the plaintiff's work, your
verdict should be for the defendant.

Ninth Circuit Model Jury Instruction 17.22 (emphasis in original).

The model jury instruction also provides a relatively detailed discussion of each
of the four main factors and additional factor(s) that may be relevant.

### 1.      Purpose and character of use

The "central purpose" of the first factor is to determine "to what extent the new
work is transformative." *Campbell*, 510 U.S. at 579 (noting that the inquiry is
"whether the new work merely supersede[s] the objects of the original creation, or
instead adds something new, with a further purpose or different character").  The Ninth
Circuit has adopted a two-step analysis of this first prong.  First, courts ask whether the
use of the work is commercial in nature.  Second, they ask whether such use is
transformative.  *Kelly*, 336 F.3d at 818–19.  "A use is considered transformative only
where a defendant changes a plaintiff's copyrighted work or uses the plaintiff's
copyrighted work in a different context such that the plaintiff's work is transformed
into a new creation."  *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d at 1164 (quoting
*Wall Data Inc. v. L.A. County Sheriff's Dep't*, 447 F.3d 769, 778 (9th Cir. 2006).  "The
more transformative the new work, the less important the other factors, including
commercialism, become."  *Kelly*, 336 F.3d at 818.

Here, there is no doubt that Defendants' use of Pepe the Frog in the MAGA
posters is commercial in nature.  The Ninth Circuit has explained that commercial use
provides only slight weight against finding fair use where the use is not "highly
exploitative" and intended to "save the expense of purchasing authorized copies."
*Kelly*, 336 F.3d at 818 (use of low-resolution copies in a commercial search engine was
incidental and less exploitative in nature than more traditional types of commercial
use); *A&M Records*, 239 F.3d at 1015 ("[C]ommercial use is demonstrated by a

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 18-1830-MWF (JPRx)                    Date:  May 16, 2019
Title:        Matt Furie v. Infowars, LLC, et al.

showing that repeated and exploitative unauthorized copies of copyrighted works were made to save the expense of purchasing authorized copies.").

Defendants then argue that the depiction of Pepe the Frog in the MAGA poster is transformative in two aspects, physically and contextually.  (Infowars Mot. at 11).

As to physical differences, Defendants note that Mr. Allen used an image of Pepe the Frog drawn by a third party, rather than one drawn by Plaintiff.  (*Id.*).  Mr. Allen also made "alterations to the shading, the shape of the mouth, the pupils, and the texture to make it look more naturalistic."  (*Id.* (internal quotation marks omitted); Infowars Reply at 10).  Moreover, Mr. Allen only used Pepe the Frog's face, "not the entire body."  (Infowars Mot. at 11).

In opposition, Plaintiff argues that minor physical alterations are insufficient to be transformative because the image of Pepe the Frog in the MAGA poster was "instantly recognizable" and was in fact recognized by Defendants' employees and customers.  (Infowars. Opp. at 10).  Plaintiff provides the following side-by-side comparison:

  

(*Id.* at 11).

As to contextual differences, Defendants argue that "Pepe the Frog is only one of 12 faces in the MAGA [p]oster, and is one of the least prominent figures in it, taking up only a small percentage of the total poster."  (Infowars Mot. at 13).  Defendants note that Pepe the Frog is depicted as one of many "political figures and alternative

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 18-1830-MWF (JPRx)                    Date:  May 16, 2019
Title:        Matt Furie v. Infowars, LLC, et al.

media members," far removed from his original context in the comics.  (*Id.*; Infowars Reply at 11).  At the hearing, Defendants reaffirmed the highly transformative nature of Pepe the Frog because their use was complementary to Plaintiff's use of the original character.

In opposition, Plaintiff correctly notes that in order to be transformative, "the use of some elements of a prior author's composition to create a new one that, at least in part, ***comments on that author's works***."  (Infowars Opp. at 11 (citing *Monge v. Maya Magazines, Inc.*, 688 F.3d 1164, 1175 (9th Cir. 2012)) (emphasis added)).  Plaintiff then argues that Pepe the Frog's depiction as a commentary on politics undercuts Defendants' own argument that there is contextual transformation.  (*Id.* at 11–12).  In other words, the MAGA posters are not commentaries on Pepe the Frog himself.  (*Id.* at 11).

In response, Defendants argue that Mr. Allen included Pepe the Frog in the MAGA poster to, among other things, "symbolize the sharing of memes during the 2016 presidential election" and "express the ridiculousness . . . that a cartoon frog had become a hate symbol."  (Infowars Reply at 10–11).  For support, Defendants cite to Mr. Allen's deposition testimony.  (*Id.* at 11).

At the hearing, Plaintiff argued that testimony from Defendants' own representatives indicate that the decision to sell the MAGA poster was purely driven by profit, supporting a finding that Defendants' use of the work is commercial in nature. The Court agrees that Defendants' ***subjective*** belief has some relevance, but is not entirely convinced that such a subjective belief is dispositive.  Indeed, Nimmer's analysis is as follows:

> Commentators champion additional factors as part of the fair use calculus . . . and that fair use should be found for types of use that engender market failure.  One frequent factor recognized by courts relevant to the "character" of the use is the propriety of the defendant's conduct.  Characterizing the fair use doctrine as "equitable," it has been held that defendant's unjustified denial of its use of the plaintiff's work is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 18-1830-MWF (JPRx)                    Date:  May 16, 2019

Title:      Matt Furie v. Infowars, LLC, et al.

a factor militating against permitting defendant to claim a fair use defense.
. . . [But case law] betokens that an inquiry into defendant's state of mind
does not necessarily belong in the fair use calculus.

See 4 *Nimmer on Copyright* § 13.05[A][1][d] (2019) (citations omitted).

Regardless, the Court concludes that, at minimum, there are disputed issues of
fact precluding summary judgment as to whether the MAGA poster's use of Pepe the
Frog was physically and contextually transformative.  The parties have presented
widely conflicting evidence on the fair use defense that requires the Court to weigh
credibility and resolve factual disputes.  And as already discussed, these factual
disputes and credibility determination are more appropriately left to the jury rather than
determined by the Court on summary judgment.

Accordingly, because of numerous factual disputes as to physical and contextual
transformative nature of Pepe the Frog, this factor does not weigh in favor of a finding
of fair use *as a matter of law*; the jury may conclude that the factor does favor fair use.

## 2.      Nature of the copyrighted work

The second factor acknowledges that "some works are closer to the core of
intended copyright protection than others, with the consequence that fair use is more
difficult to establish when the former works are copied."  *Campbell*, 510 U.S. at 586.
"Works that are creative in nature are closer to the core of intended copyright
protection than are more fact-based works."  *Kelly*, 336 F.3d at 820 (quoting *A&M
Records*, 239 F.3d at 1016).

Defendants argue that the nature of Pepe the Frog is "somewhat unique,"
because the character "took on a life of its own" when it became a meme.  (Infowars
Mot. at 14).  Defendants argue that the "meme-ification of the character" was
widespread and far different than how Pepe the Frog was depicted in the comics,
weighing in favor of a finding of fair use.  (*Id.*).  At the hearing, Defendants reiterated

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 18-1830-MWF (JPRx)                    Date:  May 16, 2019

Title:      Matt Furie v. Infowars, LLC, et al.

that the nature of Pepe the Frog changed dramatically once the character became "meme-fied" and numerous third parties began using the character.

    The Court disagrees because Defendants have not pointed to any authority for the proposition that "meme-ification" of an image or character destroys or diminishes the original author's copyright interest.  (*See* Infowars Opp. at 13).  Indeed, Plaintiff's original creation and depiction of Pepe the Frog and subsequent creation of Pepe in Blue Shirt are creative works that fall within the core of copyright protection, as discussed above.  Indeed, "[n]o matter how popular a character may become, the copyright owner is entitled to guard against the unauthorized commercial exploitation of that character."  *See United Feature Syndicate, Inc. v. Koons*, 817 F. Supp. 370, 380–81 (S.D.N.Y. 1993) (concluding that since Odie, Garfield's canine companion, is "a fictional, imaginative work, the second factor strongly militates against finding the Koons' use of that character in his sculpture constituted a fair use").

    But because this factor has been described as "not . . . terribly significant in the overall fair use balancing," it carries little weight.  *See Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 803 (9th Cir. 2003) (noting that "Mattel's copyrighted Barbie figure and face can fairly be said to be a creative work," but concluding that parodies, like the defendant's allegedly infringing works, "almost invariably copy publicly known, expressive works") (citations omitted).

    Accordingly, this factor marginally weighs against a finding of fair use as a matter of law.

### 3.      Amount and substantiality of the portion used

    Under the third factor, the Court evaluates the amount of the work used.  The Supreme Court in *Campbell* explained that the third factor inquires as to whether the "amount and substantiality of the portion used in relation to the copyrighted work as a whole . . . [is] reasonable in relation to the purpose of the copying."  510 U.S. at 586–87.  The attention "turns to the persuasiveness of a parodist's justification for the particular copying done, and the enquiry will harken back to the first of the statutory

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 18-1830-MWF (JPRx)                    Date:  May 16, 2019

Title:      Matt Furie v. Infowars, LLC, et al.

factors, for, as in prior cases, we recognize that the extent of permissible copying varies with the purpose and character of the use."  *Id.*

Defendants offer the same arguments they offer in connection with the purpose and character factor.  Specifically, Defendants note that "the use of a single depiction of Pepe, dissimilar from the vast majority of drawings [Plaintiff] made of the character," and the use of "a third party's drawing as a reference" were "necessary for the authorial purpose of the MAGA [p]oster."  (Infowars Mot. at 16–17; *see* Infowars Reply at 14–15).  And like before, Defendants also note that Mr. Allen "included Pepe in the MAGA [p]oster to comment on the use of memes in the 2016 presidential election and the prominent role that the Pepe meme played during that election," as well as to comment on the "absurdity of the 2016 election, particularly the absurdity that a cartoon frog played such a prominent role . . . ."  (*Id.* at 16).

For the reasons already discussed, the Court concludes that there are numerous disputed issues of fact that preclude the use of this factor to grant summary judgment.

### 4.    Effect of use on the market

The fourth factor is the "effect of the use upon the potential market for or value of the copyrighted work."  17 U.S.C. § 107(4).  The Supreme Court has stated that this factor is "the single most important element of fair use."  *Harper & Rowe Publishers*, 471 U.S. at 566.  "Fair use, when properly applied, is limited to copying by others which does not materially impair the marketability of the work which is copied."  *Id*. at 566–67 (quoting 1 *Nimmer on Copyright* § 1.10[D]).

As with other factors, the Court concludes that the parties have presented conflicting evidence that raises disputed issues of facts to preclude summary judgment.

For instance, Defendants point to the fact that Pepe the Frog and the MAGA posters are not market substitutes, and that, if anything, Pepe the Frog's "association with political conservatives skyrocketed" its popularity.  (Infowars Mot. at 17–19).  Defendants also point out that "it does not appear that there was any sort of delayed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 18-1830-MWF (JPRx)                    Date:  May 16, 2019
Title:      Matt Furie v. Infowars, LLC, et al.

negative impact on [Plaintiff's] licensing market caused by this rightwing affiliation, either, since [he] was recently able to secure an equally lucrative licensing agreement with another company for Pepe the Frog."  (Infowars Mot. at 18, Ex. 1).

Plaintiff contends that he "has an active practice of licensing Pepe for use in derivative works," suggesting that there is "a market for posters featuring his work." (Infowars Opp. at 15–16).  Plaintiff also argues that Pepe the Frog's association with the MAGA posters "harms the market for derivative works" and that connection is something Plaintiff "specifically does not approve of."  (*Id.* at 16).  For support, Plaintiff points to his and Mr. Jones' deposition testimonies.

Accordingly, this factor does not weigh in favor of finding of fair use as a matter of law, but it also does not necessarily weigh against a finding of fair use.  *See, e.g.*, *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 530 (9th Cir. 2008) (recognizing that "it is well established that a court can resolve the issue of fair use on a motion for summary judgment when no material facts are in dispute" and concluding that the conflicting allegations and evidence "do not support a finding of fair use").

Weighing the four factors together, the Court cannot conclude as a matter of law, especially in light of numerous conflicting factual disputes, that Defendants are entitled to summary judgment on their defense of fair use.

Stepping back from the factors, the argument at the hearing by counsel for Defendants was, essentially, that controversial defendants should not have their defense of fair use decided by the jury; *i.e.*, there must be some sort of First Amendment overlay on copyright law to protect political speech.  By analogy, counsel was arguing for the creation for copyright law of something like *New York Times Co. v. Sullivan* for the law of defamation.  That simply is not the law as this Court understands it.

Accordingly, the Infowars Motion is **DENIED** to the extent it seeks summary judgment on fair use.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 18-1830-MWF (JPRx)                    Date:  May 16, 2019

Title:        Matt Furie v. Infowars, LLC, et al.

### C.      Abandonment and Implied License

Defendants argue that the public statements made by Plaintiff showed a clear intention to abandon Pepe the Frog, and even if there is no abandonment, Plaintiff's "knowledge and acquiescence of the global use of Pepe the Frog constitutes an implied license." (Infowars. Mot. at 20–23; *see* Reply at 20–21).  Defendants' arguments are identical to the ones they raised in opposing the Furie Motion.

As to the affirmative defense of abandonment, the Court cannot conclude as a matter of law that Defendants are entitled to summary judgment for the reasons already discussed.  *See supra*.  It is evident that a genuine issue of material fact remains in dispute as to what Plaintiff's intention was when he made various public statements.  As to the affirmative defense of an implied license, Defendants do not explain why Plaintiff's public statements constitute an offer that is supported by consideration.

Accordingly, the Infowars Motion is **DENIED** to the extent it seeks summary judgment on the affirmative defenses of abandonment and implied license.

### D.      Statutory Damages and Attorneys' Fees

Defendants argue that Plaintiff is precluded from seeking statutory damages and attorneys' fees under 17 U.S.C. § 412.  (Infowars Mot. at 23).  Here, both parties agree on the law.  (*Id.*; Infowars Opp. at 24 ("As to statutory damages, Infowars has the law right . . . .").

Section 412(2) provides that, in order to recover statutory damages, the copyrighted work must have been registered prior to commencement of the infringement, unless the registration is made within three months after first publication of the work.  17 U.S.C. § 412(2).  Where a defendant commits some infringing acts before registration, and others after, the availability of statutory damages and attorneys' fees turns on whether there is a "legally significant difference between [the infringer's] pre and post-registration infringement."  *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 701 (9th Cir. 2008).

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 18-1830-MWF (JPRx)                    Date:  May 16, 2019

Title:       Matt Furie v. Infowars, LLC, et al.

Defendants point out that Plaintiff created Pepe the Frog in 2003; his latest date of first publication is December 20, 2016; and he did not seek registration until September 2017 at the earliest.  (Infowars Mot. at 23).  Defendants then argue that because the alleged infringement did not commence until April 23, 2017, Plaintiff "sought registration more than 3 months after even the latest initial publication of his alleged works."  (*Id.* at 24).

In response, Plaintiff argues that Defendants are incorrect that there is a legally significant difference between pre- and post-registration infringement.  Plaintiff explains that, pre-registration, Defendants "sold a first version of the MAGA [p]oster for $17.76."  (Infowars Opp. at 24).  Post-registration, Defendants then "sold a new 'Limited edition MAGA poster,' which it expressly marketed as infringing, which it advertised as now including Alex Jones's autograph, and for which it charged $29.95."  (*Id.*).  Plaintiff finally argues that, at a minimum, "whether the pre- and post-registration MAGA Posters are sufficiently different is a disputed issue of fact."  (*Id.* at 25).  The Court disagrees.

As an initial matter, some of Plaintiff's contentions are incorrect.  For instance, both the pre- and post-registration versions of the MAGA poster were advertised as "limited edition."  In addition, Plaintiff's contention that the post-registration poster was "expressly marketed as infringing" based on the language that Defendants will "be forced to take it down forever" is misleading.  The actual description of the post-registration poster is as follows:

> Limited edition MAGA poster by renowned artist and patriot Jon Allen exclusively available through Infowars.  There's only a few hundred left on this final run – **we'll be forced to take it down forever when we run out, so make sure you get this collectible poster today**!

(Docket No. 96-17 (emphasis in original)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 18-1830-MWF (JPRx)                **Date:** May 16, 2019
Title:        Matt Furie v. Infowars, LLC, et al.

Finally, the post-registration poster was also not advertised as including Alex Jones' autograph. Nor is there any evidence that Alex Jones ever signed any copies of the poster. Indeed, David Jones testified as follows:

Q: How many – how many poster – how many MAGA posters do you still have left?

A: I think we have like 270.

Q: And where are those posters located?

A: They're in the warehouse sequestered in our quarantine area.

Q: Where is the warehouse?

A: It's about a half a mile from here over on Stassney.

Q: Are any of those posters signed by Alex Jones?

A: ***I don't think so. I don't think he signed any of them.***

(Infowars Reply, Ex. 4 at 104:4-16 (Docket No. 102-4) (emphasis added)).

Here, it appears that Plaintiff has pointed only to a difference in price, from $17.76 to $29.95. The pre- and post-registration posters are otherwise identical. But based solely on the difference in price, the Court concludes that Plaintiff has failed to show a legally significant difference between the pre- and post-registration posters.

Indeed, even where there are differences between pre- and post-registration works, other district courts have concluded that there is no legally significant difference. *See, e.g.*, *New Name, Inc. v. The Walt Disney Co.*, No. 07-CV-5034-PA (RZx), 2008 WL 5587487, at *5 (C.D. Cal. July 23, 2008) (concluding that where "the same allegedly infringing design applied to two products that differ only with respect to an emblem on the sleeve of a t-shirt" did not "commence a new infringement under

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 18-1830-MWF (JPRx)**                    **Date:  May 16, 2019**

Title:        Matt Furie v. Infowars, LLC, et al.

§ 412); *Dyer v. Napier*, No. CIV A 06-0011, 2006 WL 680551, at *4 (D. Ariz. Mar.16, 2006) (holding that post-registration customizing of an allegedly infringing sculpture by changing its size, surface texture, pedestals size, and defendants' copies "were sold for varying prices" did not commence a new infringement under § 412); *City of Carlsbad v. Shah*, 850 F. Supp. 2d 1087, 1103 (S.D. Cal. 2012) (finding that defendant's use of logo on various web sites, business cards, letterheads, t-shirts, and hats "arose out of [the defendant's] initial infringement and any post-registration conduct is therefore traceable to [the defendant's] pre-registration conduct" precluding statutory damages).

At the hearing, Plaintiff argued that there are significant factual disputes that it would be inappropriate to resolve against him.  Plaintiff pointed to disputes about the number of posters, how they were advertised, and Alex Jones' comment on his show that he would sign the posters.  But these are not disputes of material facts and, as noted above, numerous other district courts have concluded no legally significant difference between pre-and post-registration works even where there are differences. More significantly, Defendants' post-registration infringement (*i.e.*, continued sales the MAGA poster) is directly traceable to their pre-registration conduct (*i.e.*, sales of the same MAGA poster).

As the Ninth Circuit has explained, each separate act of infringement of the same kind, like here, does not mark the "commencement" of a new infringement within the meaning of § 412; rather, the infringement is part of an ongoing, continuing infringement.  *Derek Andrew*, 528 F.3d at 701.

Accordingly, the Infowars Motion is **GRANTED** to the extent it seeks summary judgment on Plaintiff's claim for statutory damages and attorneys' fees.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 18-1830-MWF (JPRx)                **Date:** May 16, 2019

Title:         Matt Furie v. Infowars, LLC, et al.

## VI.    **CONCLUSION**

The Furie Motion and Infowars Motion are both **GRANTED** *in part* and **DENIED** *in part*.

As discussed above, by **May 29, 2019**, Defendants are **ORDERED** to report when they came into possession of Exhibits 2–12, 14–15, 17, and 18 to the Furie Opposition and Exhibits 10–13, 15–21, 26–27, 37, and 43 to the Infowars Motion, and when they formed the intention to use these exhibits as evidence in this action.

As it did at the hearing, the Court commends counsel on the efforts that they put into the briefing and oral argument on the two motions.

IT IS SO ORDERED.