**IN THE UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MATT FURIE,<br><br>Plaintiff,<br><br>vs.<br><br>INFOWARS, LLC; FREE SPEECH SYSTEMS, LLC,<br><br>Defendants. | Case No. 2:18-cv-01830-MWF-JPR<br><br>**DECLARATION OF ALEX J. SHEPARD IN SUPPORT OF REPORT RE: NON-DISCLOSURE OF EXHIBITS TO OPPOSITION TO PLAINTIFF MATT FURIE'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |

I, Alex J. Shepard, declare:

1. I am over 18 years of age and have never been convicted of a crime involving fraud or dishonesty.

2. I am employed as an Associate for Randazza Legal Group, PLLC, and I am counsel for Defendants in this matter.

3. I have first-hand knowledge of the facts set forth herein, and if called as a witness, could and would testify competently thereto.

4. As part of my investigation in preparing memoranda to be used for Defendants' Motion for Summary Judgment (the "Motion"), I accessed the web pages from which screen shots comprising **Exhibits 10-13, 15-21, 26-27, 37, and 43** to the Motion were taken.

5. **Exhibit 10** to the Motion is a screenshot of the <knowyourmeme.com> page for "Pepe the Frog." Counsel for Defendants produced a version of this screenshot to counsel for Mr. Furie during the course of discovery, bearing Bates nos. FSS000186-221. I instructed one of RLG's paralegals, Heather Ebert, to print out an

1 updated screenshot of the page on April 8, 2019 to ensure proper authentication of the
2 web page and to ensure that all its formatting was retained.

3       6.      In preparing to file the Motion, on or about April 5, 2019 I searched the
4 internet for a copy of the 2016 Hillary Clinton presidential campaign's "explainer"
5 regarding how Pepe the Frog had allegedly become a hate symbol. I was unable to
6 locate an original copy of the "explainer," and instead chose to use the article found at
7 **<u>Exhibit 11</u>** to the Motion to summarize it. Neither I, nor anyone else at RLG, had
8 accessed this article before April 5, 2019. It was my understanding that Mr. Furie was
9 already aware of the Clinton campaign's "explainer," as the Second Amended
10 Complaint refers to the "explainer." (*See* Doc. No. 47 at ¶ 44.)

11 **<u>Exhibit 12</u>** to the Motion is a screenshot of an Instagram post by Donald Trump Jr.
12 containing the "The Deplorables" image featuring Pepe the Frog. I accessed this post
13 on or about April 5, 2019 upon discovering that RLG's files did not have a screenshot
14 of the Instagram post itself. I instructed Ms. Ebert to take a screenshot of the post so
15 that it could be properly authenticated. I did not think any earlier disclosure of this
16 post was necessary; Mr. Furie was clearly aware of it, as evidenced by his Second
17 Amended Complaint containing the "The Deplorables" images and stating that Donald
18 Trump Jr. posted this image on his Instagram account. (*See* Doc. No. 47 at ¶ 43.)

**Exhibit 12** to Motion:




Second Amended Complaint:




- 3 -
Declaration of Alex J. Shepard
2:18-cv-01830-MWF-JPR

7. **Exhibit 13** to the Motion is a screenshot of a Youtube video showing a clip from an episode of the television series "Family Guy" depicting Pepe the Frog. David Jones referred to this episode of "Family Guy" during his deposition, thus letting Mr. Furie know of its existence during discovery. (*See* Doc. No. 102-4 at 50:21-51:5.) Thus, this is hardly the stuff of surprise or prejudice. Literally millions of people saw it, presumably including the Plaintiff. The episode aired December 9, 2018, and RLG became aware of it on or about December 20, 2018. As of December 20, RLG considered using it as part of Defendants' Motion.

8. **Exhibit 15** to the Motion is a screenshot of a "Q&A" with Mr. Furie on the web site <knowyourmeme.com>. Counsel for Defendants produced a version of this screenshot to counsel for Mr. Furie during the course of discovery, bearing Bates nos. FSS000319-327. I instructed Ms. Ebert, to print out an updated screenshot of the page on April 5, 2019 to ensure proper authentication of the web page and to ensure that all its formatting was retained.

9. **Exhibit 16** to the Motion is a screenshot of a *Daily Dot* article. Counsel for Defendants produced a version of this screenshot to counsel for Mr. Furie during the course of discovery, bearing Bates nos. FSS000345-352. I instructed Ms. Ebert, to print out an updated screenshot of the page on April 5, 2019 to ensure proper authentication of the web page and to ensure that all its formatting was retained.

10. **Exhibit 17** to the Motion is a screenshot of a *Vice* article. Counsel for Defendants produced a version of this screenshot to counsel for Mr. Furie during the course of discovery, bearing Bates nos. FSS000328-338. I instructed Ms. Ebert, to print out an updated screenshot of the page on April 5, 2019 to ensure proper authentication of the web page and to ensure that all its formatting was retained.

11. **Exhibit 18** to the Motion is a screenshot of a "New York Magazine" article. Counsel for Defendants produced a version of this screenshot to counsel for Mr. Furie during the course of discovery, bearing Bates nos. FSS004945-4959. I

instructed Ms. Ebert, to print out an updated screenshot of the page on April 5, 2019 to ensure proper authentication of the web page and to ensure that all its formatting was retained.

12. **Exhibit 19** to the Motion is a screenshot of a *Daily Dot* article. Counsel for Defendants produced a version of this screenshot to counsel for Mr. Furie during the course of discovery, bearing Bates nos. FSS000254-258. I instructed Ms. Ebert, to print out an updated screenshot of the page on April 5, 2019 to ensure proper authentication of the web page and to ensure that all its formatting was retained.

13. **Exhibit 20** to the Motion is a screenshot of a *The Atlantic* article. Counsel for Defendants produced a version of this screenshot to counsel for Mr. Furie during the course of discovery, bearing Bates nos. FSS000339-344. I instructed Ms. Ebert, to print out an updated screenshot of the page on April 5, 2019 to ensure proper authentication of the web page and to ensure that all its formatting was retained.

14. **Exhibit 21** to the Motion is a screenshot of a Ben Garrison cartoon taken from Mr. Garrison's web site <grrrgraphics.com>. Counsel for Defendants produced this cartoon without additional commentary to counsel for Mr. Furie during the course of discovery, bearing Bates no. FSS000151. For purposes of properly authenticating the cartoon, I visited Mr. Garrison's web site on or about April 5, 2019 and instructed Ms. Ebert to take a screenshot of the cartoon as it appeared on the web site. Neither I, nor anyone else at RLG, had visited this web page prior to this date. RLG did not intend to use the version of this cartoon with Mr. Garrison's commentary prior to this date.

15. **Exhibit 26** to the Motion is a screenshot of a *GQ* article discussing the use of Pepe the Frog in the film "Good Time." I searched for this article in response to Mr. Furie producing the licensing agreement for use of Pepe the Frog in this film. I first accessed this web page on or about March 6, 2018 and intended to use it in the Motion as of this date. I did not think it necessary to disclose this screenshot to Mr.

1  Furie because, as the individual who entered into an agreement for use of Pepe the Frog
2  in this film, I assumed he was aware of how the character was depicted in it.

3      16.    **Exhibit 27** to the Motion is a screenshot of a Youtube video showing the
4  manner in which Pepe the Frog is depicted in the film "Good Time." I searched for
5  this video in response to Mr. Furie producing the licensing agreement for use of Pepe
6  the Frog in this film. I first accessed this web page on or about March 6, 2018 and
7  intended to use it in the Motion as of this date. I did not think it necessary to disclose
8  this screenshot to Mr. Furie because, as the individual who entered into an agreement
9  for use of Pepe the Frog in this film, I assumed he was aware of how the character was
10 depicted in it.

11     17.    **Exhibit 37** is an image of the poster that allegedly infringed Mr. Furie's
12 copyrights. Since the beginning of this case, Defendants were aware of this poster and
13 intended to refer to it throughout the case. While the poster was disclosed during the
14 course of discovery, I made the decision on or about April 5, 2019 to use a clean version
15 of the poster without a bates number as an exhibit to the Motion for the purpose of
16 allowing inspection of the original work without any alterations.

17     18.    **Exhibit 43** is an article on the publicly accessible web site <clarin.com>
18 discussing the character Pepe the Toad. I was made aware of this article on or about
19 August 31, 2018. RLG intended to use it in this case as of approximately August 31,
20 2018.

21     19.    As part of my investigation in preparing memoranda to be used for
22 Defendants' Opposition to Plaintiff Matt Furie's Motion for Partial Summary Judgment
23 (the "Opposition"), I accessed the web pages from which screen shots comprising
24 **Exhibits 2-12, 14-15, 17, and 18** to the Opposition were taken.

25     20.    During the course of my investigation into claims made in Mr. Furie's
26 Motion for Partial Summary Judgment, I concluded that Mr. Furie's claimed work
27 "Pepe in Blue Shirt" was a direct reproduction of the "not good man" image found at

1  **Exhibit 2** to the Opposition.  I learned this by reviewing the <knowyourmeme.com> page for "Feels Bad Man/Sad Frog," found at **Exhibit 3** to the Opposition.  I first visited these web pages on April 11, 2019.  Neither I, nor anyone else at RLG, had visited these pages prior to April 11.  RLG did not intend to use this web page prior to this date.

21.    Also, on April 11, 2019, I conducted additional research on how the "not good man" image was first created and the ubiquity with which it appeared online.  On this day, I visited the web pages from which the screen shots comprising **Exhibits 4-5, 8-9, 12, and 14** to the Opposition were taken.  Neither I, nor anyone else at RLG, had visited these pages prior to April 11.  RLG did not intend to use these web pages prior to this date.

22.    On April 15, 2019, I visited the web pages from which screen shots comprising **Exhibits 6 and 7** to the Opposition were taken.  I was aware of the contents of these web pages shortly after the start of discovery, but to ensure that they were properly authenticated I instructed Ms. Ebert to take screen shots of the individual web pages on which they appeared on April 15, 2019.  It is my understanding that Mr. Furie and his counsel must have known of the existence of these images prior to the close of discovery, as screenshots of them can be found in the <knowyourmeme.com> page for "Pepe the Frog" (Doc. No. 88-14 at 3), a version of which Defendants disclosed to Mr. Furie early in the discovery period bearing Bates nos. FSS000186-000221.  Additionally, Mr. Furie refers to these documents in his Second Amended Complaint.  (*See* Doc. No. 47 at ¶ 39.)

23.    While performing research for evidence to use in the Opposition, on either April 11 or 12, 2019, I conducted internet searches using the Google search engine for the terms "sad frog meme" and "feels bad man," and restricted search results to images appearing from August 17, 2009 to April 11, 2016.  I instructed Heather Ebert, a paralegal at RLG, to repeat these searches on April 15, 2019, screenshots of

which comprise **Exhibits 10 and 11** to the Opposition. Neither I, nor anyone else at RLG, had performed these searches prior to either April 11 or 12, 2019. RLG did not intend to use these web pages prior to this date.

24. I first visited the web page from which the screen shot comprising **Exhibit 15** to the Opposition was taken on April 11, 2019, though this was not part of the argument that "Pepe in Blue Shirt" is not Mr. Furie's original work, but rather an additional example of Pepe the Frog being used by third parties in different contexts. Neither I, nor anyone else at RLG, had previously visited this web page. RLG did not intend to use this web page prior to this date.

25. As part of my research regarding legal arguments to include in the Opposition, on either April 11 or 12, 2019 I visited the web page from which the screen shot comprising **Exhibit 17** to the Opposition was taken. Neither I, nor anyone else at RLG, had previously visited this page, at least in the context of this litigation. RLG did not intend to use this web page prior to this date.

26. As part of my research regarding arguments to include in the Opposition, on April 15, 2019 I visited the web pages from which the screen shots comprising **Exhibit 18** to the Opposition were taken. Neither I, nor anyone else at RLG, had previously visited these web pages. RLG did not intend to use this web page prior to this date.

I swear under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated: May 17, 2019

Respectfully submitted,

/s/ Alex J. Shepard
Alex J. Shepard